**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


**YELLOW PAGES PHOTOS, INC.,**

     **PLAINTIFF,**

**v.**                                     **CASE NO.: 8:12-cv-755-RAL-TBM**

**ZIPLOCAL, LP, YELLOW PAGES GROUP,**
**LLC, AND YELLOW MEDIA INC.,**

     **DEFENDANTS.**
_____/


**PLAINTIFF YELLOW PAGES PHOTOS, INC.'S RESPONSE IN OPPOSITION TO**
**DEFENDANT YELLOW PAGES GROUP, LLC'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**
**OR FOR A MORE DEFINITE STATEMENT**

**I.**     **INTRODUCTION**

Defendant Yellow Pages Group, LLC's ("YPG's") contacts with Florida are extensive.  YPG's co-Defendant Ziplocal, LP ("Ziplocal") is an independent telephone directory publisher with directories in 46 states, including 20 print directories covering 109 cities in Florida and online directories containing Florida listings that are accessible in Florida.  YPG is an outsourcing service provider that provides manufacturing, publishing, and distribution services to Ziplocal, including the creation, production, and publication of advertisements for Ziplocal's Florida print and online directories.  YPG and Ziplocal are not arms length parties as YPG would lead the Court to believe in its Motion.  They are related parties, commonly owned by Defendant Yellow Media, working in tandem.  YPG's claim that it has no contacts with Florida is simply false.

The exercise of personal jurisdiction by this Court over YPG in this case is entirely proper.  First, the Complaint alleges more than sufficient facts to establish personal jurisdiction over YPG.  These allegations, which YPG pretends do not exist, are set forth in their entirety in Section III.A.1. of this Response, and establish at the very least a prima facie case of specific jurisdiction, if not general jurisdiction, over YPG.  Second, these jurisdictional allegations are uncontroverted by YPG.  The brief, conclusory declaration submitted by YPG in support of its Motion barely supports the exaggerated factual assertions in its Motion, much less sufficiently challenges the pertinent allegations in the Complaint.  Third, to the extent YPG has mounted any challenge to the prima facie case of personal jurisdiction made by Plaintiff Yellow Pages Photos, Inc. ("Plaintiff"), Plaintiff's counter-declarations and other evidence submitted with this Response demonstrate that the requirements of Florida's long-arm statute have been satisfied.  Finally, given YPG's extensive contacts with Florida, that YPG has been on notice of Plaintiff's concerns addressed in its Complaint since the beginning of 2011, and that infringing advertisements containing Plaintiff's copyrighted photographs have been created, published, and distributed by YPG since then in Florida and elsewhere, the exercise of jurisdiction over YPG in this case comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice.  It should come as no surprise to YPG that it has been haled into court in Florida.  It purposefully directed its activities towards residents of Florida, and this dispute arises directly from such actions.  YPG's Motion should be denied.

To the extent, though, that the Court may be inclined to grant YPG's Motion, Plaintiff requests that it first be permitted to take limited jurisdictional discovery to explore and test

YPG's assertions that are not verifiable by public information, including the exact nature and terms of YPG's relationship and interaction with Ziplocal and Yellow Media, the extent of YPG's contacts with Florida, YPG's knowledge of Plaintiff and Plaintiff's copyrighted photographs, and YPG's knowledge of its use and infringement of the copyrights in Plaintiff's photographs.

With respect to YPG's claim that Plaintiff's Complaint is a "shotgun pleading," YPG misconstrues and misuses the term. The Complaint comports with the "short and plain statement" requirements of Fed.R.Civ.P. 8(a) and formal requirements of 11th Circuit decisions. It is far from a "shotgun pleading."

To the extent YPG's complaint is directed to the specificity of Plaintiff's allegations, Plaintiff has identified its infringed, copyrighted photographs by collection and copyright registration number rather than attach copies of more than 10,000 photographs to its Complaint. Not only are all the photographs on record at the United States Copyright Office, but Plaintiff will be required and is prepared to produce copies of each and every individual photograph with its initial disclosures. Critically, though, Plaintiff licensed its entire library of copyrighted photographs to YPG's sister company Ziplocal, and Ziplocal certainly knows which they are. YPG and Ziplocal's shell game as to who knows what is unconvincing.

Furthermore, both Ziplocal and its sister company YPG know exactly which photographs were transferred by Ziplocal to YPG. Plaintiff's Complaint is clear that the copyrights in any of Plaintiff's photographs that were copied and transferred from Ziplocal to YPG have been infringed. *See* Complaint ¶40. YPG is in a unique position to know the details of such copying and transfer between the two companies, acts to which Plaintiff was

not privy.  In addition, to the extent YPG has further reproduced, used, published, distributed, or displayed any such copyrighted photographs, it has engaged in further acts of copyright infringement.  Again, YPG is in a unique position to know what further use it has made of Plaintiff's photographs either internally, in Ziplocal's hundreds of directories and countless print and digital advertisements, and perhaps even for other companies, as the work product is in YPG's possession.

Plaintiff believes that the copyrights in all of its photographs have been infringed by YPG and has uncovered sufficient evidence of infringement to bring this suit, but the exact extent of the infringement and YPG's internal information that will reveal the same requires discovery from the Defendants.  YPG's attempt to turn discovery on its head by suggesting that Plaintiff must already know facts that will only be uncovered in discovery is both circular in its reasoning and indicative of YPG's intent to be obstructive in this case.  YPG's Motion should be denied.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff Yellow Pages Photos, Inc. licensed its copyrighted photographs to Defendant Ziplocal, LP, which is qualified and does business using the photographs in Florida.

Plaintiff is in the business of producing and licensing to publishers of telephone directories copyrighted photographs for use in creating, producing, and publishing advertisements.  Declaration of W. Trent Moore ("Moore Decl.") ¶6.  Plaintiff's library of photographs currently consists of more than 10,000 photographs divided into 185 collections of approximately 50 to 100 photographs each.  *Id*. at ¶7.  These collections of photographs are identified by descriptive headings and listed in paragraph 17 of Plaintiff's Complaint.  *Id*.

at ¶8; Complaint ¶17.  Plaintiff's photographs have been licensed over the years to directory publishers ranging from small companies with but a few books to larger companies such as AT&T and Verizon.  Moore Decl. ¶9.  The basis for the fee charged and terms imposed by Plaintiff for a license may differ from licensee to licensee based on various considerations. *Id*.  In order to control the dissemination of the photographs, Plaintiff's licenses generally restrict use to employees of the licensee and are non-transferable.  *Id*.

Plaintiff has licensed its entire library of copyrighted photographs to a company named "Phone Directories Company, LP," which today is known as "Ziplocal, LP," one of the defendants in this case.  Moore Decl. ¶10.   Pursuant to the terms of Plaintiff's license agreement with Ziplocal, neither the license nor the licensed photographs can be transferred to third parties, and use of the licensed photographs is limited to employees of Ziplocal.  *Id*. at ¶11, Exh. 1.  Further, pursuant to the terms of the agreement, upon Ziplocal's failure to comply with any term or condition of the agreement, Ziplocal's license to use the photographs terminates automatically and without notice, whereupon all copies of the photographs must be returned to Plaintiff and publishing of the photographs must cease.  *Id*. Ziplocal provides online listings, as well as print directories, in many states including Florida, and is qualified to do business in Florida.   Declaration of J. Todd Timmerman ("Timmerman Decl.") ¶¶4-7, Exhs. 1-4.

**B.     Defendants Ziplocal, LP, Yellow Pages Group, LLC, and Yellow Media Inc. are related companies.**

Defendant Yellow Media, Inc. is a Canadian corporation that is publicly traded on the Toronto Stock Exchange.  Timmerman Decl. ¶8, Exh. 5 at 38 and 61.  Yellow Media claims as a "subsidiary" Defendant Yellow Pages Group, LLC.  *Id*. at 20 and 106.  Yellow Media

and YPG publicly report as consolidated entities.  *Id*. at 61, 63, and 106.  According to their

Annual Report for the year ended December 31, 2011:

> Subsidiaries that are directly controlled by Yellow Media Inc. or indirectly controlled by other consolidated subsidiaries are fully consolidated. *Subsidiaries are all entities over which Yellow Media Inc. exercises control.*
>
> *Control is defined as the power to govern, directly or indirectly, the financial and operating policies of an entity so as to obtain economic benefit from its activities.  This situation generally implies directly or indirectly holding more than 50% of the voting rights.*  The existence and effect of potential voting rights that are exercisable or convertible are taken into account in the assessment of control.

(emphasis added).  *Id*. at 63.

Yellow Media also owns a 35% interest in Ziplocal.  *Id*. at 79.  Yellow Media claims

Ziplocal as an "associate," which according to its 2011 Annual Report:

> Associates are all entities in which Yellow Media Inc. exercises *a significant influence over the entity's management and operating and financial policy,* without exercising control, and generally implies holding 20% to 50% of the voting rights.

(emphasis added).  *Id*. at 63 and 79.  This interest was acquired on April 15, 2010, when

Yellow Media contributed its interest in a company named YPG Directories LLC, publisher

of Your Community PhoneBook, in exchange for a 35% interest in a new entity resulting

from the business combination of YPG Directories and Ziplocal, LP.  *Id*. at ¶9-12, Exh. 6 at

28 and Exhs. 7-9.  Later, on November 1, 2010, YPG entered into an outsourcing agreement

with Ziplocal, under which YPG provides publishing, manufacturing, and distribution

services to Ziplocal.  *Id*., Exh. 6 at 29.  Ziplocal has continued to publish at least some of

these directories under the Ziplocal brand, including some in Florida (which note that they

were formerly Your Community PhoneBook directories).  Moore Decl. ¶¶14-16, Exhs. 5 and

6.  Ziplocal has directories in 46 states, including 20 print directories covering 109 cities in Florida and online directories containing Florida listings that are accessible in Florida. Timmerman Decl. ¶¶4-6, Exhs. 1-3.

Defendants Yellow Media and YPG present themselves not only in securities filings, but in other public statements in a unified manner.  For instance, in a March 30, 2010 press release by Yellow Media and YPG, (1) both companies are referred to as "YPG," (2) "YPG's" contribution of its Your Community PhoneBook directories to Ziplocal is announced, (3) a partnership in the United States between "YPG" and Ziplocal is mentioned, and (4) it is stated that "YPG will continue to fully own and operate its information technology platform and centers of excellence located in Blue Bell, Pennsylvania and Indianapolis, Indiana."  *Id*. at ¶10, Exh. 7.  In another example, Yellow Media, YPG, and other subsidiaries of Yellow Media appear to share a website at www.ypg.com, where under the "Contact Us" section phone numbers for "Yellow Pages Group" and "Canpages" are listed followed by a section "Our Office Locations" in Canada and the United States, which includes YPG's two locations in Blue Bell, Pennsylvania and Indianapolis, Indiana.  *Id*. at ¶¶13-14, Exhs. 10-11.

**C.**     **YPG has been on notice of Plaintiff's concerns addressed in its Complaint since early 2011, but has continued publishing infringing advertisements in Florida and elsewhere.**

On February 23, 2011, Plaintiff wrote to the Senior Vice President, General Counsel, and Secretary of Yellow Media, placing him on notice of it and its subsidiaries' suspected infringement of Plaintiff's copyrights.  Timmerman Decl. ¶15, Exh. 12.  Thereafter, Plaintiff received a response and both corresponded and spoke with Marie-Aude Gagnon Rousseau,

who identified herself as "Legal Counsel" for "Yellow Pages Group." *Id*. at ¶16, Exh. 13. Thereafter, Plaintiff was advised that Ms. Rousseau had left "Yellow Media Inc." and was re-directed to Treena Cooper, who was likewise identified as "Legal Counsel" for "Yellow Pages Group." *Id*. at ¶17, Exh. 14.   Given these contacts and discussions that ensued, it is disingenuous for YPG to now claim it was unaware of Plaintiff, its copyrighted photographs, or the issues raised in Plaintiff's Complaint.   Nevertheless, YPG and Ziplocal have continued publishing infringing advertisements in Florida and elsewhere.   Moore Decl. ¶¶12-16, Exhs. 2-6.

### III.   MEMORANDUM OF LAW

####    A.   Plaintiff has plead, and the facts of this case support a finding of, personal jurisdiction over YPG.

The determination of personal jurisdiction over a non-resident defendant requires a two-part analysis.  *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).   First, the Court must examine the jurisdictional issue under Florida's long-arm statute.  *Sculptchair*, 94 F.3d at 626.   Second, if the Court determines the long-arm statute is satisfied, it must determine whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and "traditional notions of fair play and substantial justice." *Id*. (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). [1]

---

[1] Plaintiff has sued YPG for infringement under the United States Copyright Act, 17 U.S.C. § 101 *et seq*.   "When subject matter jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, the Court looks to the state long-arm statute

"The reach of the Florida long-arm statute is a question of Florida law." *Jackson-Bear*, 2011 WL 1232985, at *2 (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).   Federal courts are required to construe Florida's long-arm statute "as would the Florida Supreme Court." *Cable/Home*, 902 F.2d at 856 (quoting *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F. 2d 889, 890-91 (11th Cir. 1983)). Florida's long-arm statute "bestows broad jurisdiction on Florida courts." *Execu-tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.,* 752 So.2d 582, 584 (Fla. 2000).

In a dispute as to personal jurisdiction, if the plaintiff establishes a prima facie case of personal jurisdiction through the allegations of its complaint, the defendant may challenge such allegations through declarations, documents, or other evidence.   If the defendant raises a meritorious challenge, the burden shifts back to the plaintiff to prove jurisdiction. *Sculptchair,* 94 F.3d at 627 (quoting *Jet Charter Serv., Inc. v. Koeck,* 907 F.2d 1110, 1112 (11th Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 447 (1991)).   The Court must accept the facts in the complaint as true, to the extent they are uncontroverted by the defendant's proof.   *Cable/Home,* 902 F.2d at 855.   If any discrepancies in the evidence exist, all reasonable inferences must be drawn in favor of the plaintiff.   *Id*.

It is widely recognized that copyright infringement is a tort.   *Cable/Home*, 902 F.2d at 856; *Smith v. Trans-Siberian Orchestra*, 2011 WL 824675, *4 (M.D. Fla. March 3, 2011). The pertinent portions of the Florida long-arm statute in this case are as follows:

---

to determine the existence of personal jurisdiction." *Jackson-Bear Group, Inc. v. Amirjazil*, 2011 WL 1232985, *2 (M.D. Fla. March 30, 2011) (citing *Sculptchair*, 94 F.3d at 626-27). The claim against YPG arises under the Copyright Act, which contains no service of process provision.   Therefore, both the Florida long-arm statute and due process concerns must be satisfied.

(1)      Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

…

(b)      Committing a tortious act within this state.

…

(f)      Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1.      The defendant was engaged in solicitation or service activities within this state; or

2.      Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(b) and (f).   "[The 11th Circuit has] held that § 48.193(b) of the Florida long-arm statute permits jurisdiction over the non-resident defendant who commits a tort outside of the state that causes injury inside the state."   *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999) (adopting broad interpretation of long-arm statute by Florida courts that permits personal jurisdiction over non-resident defendant alleged to have committed a tort causing injury in Florida)).   The 11th Circuit has also recognized that for personal jurisdiction to attach under the "tortious act" aspect of Florida's long-arm statute, the non-resident defendant must have committed a "'substantial aspect of the alleged tort in Florida' by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'" *Cable/Home*, 902 F.2d at 857 (citations omitted).

    1.      **Plaintiff has plead sufficient material facts to establish a prima facie case of personal jurisdiction over YPG, which YPG has failed to challenge by declaration or otherwise.**

Plaintiff alleges the following in its Complaint, establishing a prima facie case of personal jurisdiction over YPG:

1.     …Plaintiff is in the business of producing and licensing to publishers of telephone directories copyrighted images for use in creating, producing, and publishing advertisements.  Defendant Ziplocal is an independent telephone directory publisher and a licensee of Plaintiff.  Defendant YPG is an outsourcing provider that, among other services, creates and produces advertisements for Ziplocal.  Defendant Ziplocal breached its license agreement with Plaintiff by, among other things, transferring the images it licensed from Plaintiff to YPG and permitting use of the images it licensed from Plaintiff by graphic design artists that are not employed by Ziplocal, thereby terminating its license.  Further, both Defendants are infringing Plaintiff's registered copyrights by reproducing, using, publishing, distributing, and displaying copyrighted images belonging to Plaintiff in the creation, production, and publication of advertisements, without license or permission from Plaintiff, in violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq.*  …

2.     Plaintiff Yellow Pages Photos, Inc. is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Riverview, Florida.
…

7.     Defendant YPG, among other services, creates and produces advertisements for Ziplocal for publication in Ziplocal's and such other companies' print and online telephone directories, including print directories that are distributed in the State of Florida and online directories that are targeted to the State of Florida.

8.     Both Ziplocal and YPG have committed acts of copyright infringement, as described herein, in the State of Florida and/or outside the State of Florida, causing injury to Plaintiff within the State of Florida.
…

25.    Ziplocal has furnished CDs and/or electronic files including some or all of the Works and/or access to and use of some or all of the Works to YPG.

26.     YPG has accessed, reproduced, and used, and is accessing, reproducing, and using, some or all of the Works, with Ziplocal's permission and approval, to create and produce advertisements.

27.     YPG does not have has any right, title, or interest in or to the Works, nor is it licensed to access, reproduce, use, publish, distribute, or display the Works in any manner.
…

40.     To the extent YPG has engaged and is engaging in unlicensed access, reproduction, use, publication, distribution, and display of the Works, the same is likewise a direct infringement of Plaintiff's copyrights in the Works in violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq*.
…

43.     Defendants' infringement of Plaintiff's copyrights in the Works is causing irreparable injury to Plaintiff…

YPG does not controvert any of these allegations in the single, brief Declaration it submits in support of its Motion, and therefore they must be taken as true for purposes of this Motion and Response. *See Cable/Home,* 902 F.2d at 855. The gist of YPG's Declaration is simply that if YPG has committed any act of copyright infringement as alleged in Plaintiff's Complaint, it did so unknowingly and outside of Florida. That is insufficient, though, to defeat jurisdiction under Florida's long-arm statute. The uncontroverted allegations that (1) YPG has infringed Plaintiff's registered copyrights in its photographs, (2) the infringing advertisements were distributed to consumers in Florida, and (3) Plaintiff has suffered injury in Florida where it resides, establish a prima facie case of personal jurisdiction under the subsections (1)(b) and (f) of the Florida long-arm statute. *See Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc.*, 1998 WL 1759759, *4-5 (M.D. Fla. Nov. 9, 1998) (finding alleged Oregon infringer with no ties to Florida other than shipments of infringing products to a Florida company that passed them on to consumers in Florida committed tort of copyright

infringement in Florida, caused injury in Florida, and was subject to jurisdiction under subsections (1)(b) and (f) of the Florida long-arm statute).

> **2.      Even if YPG has raised some question as to jurisdiction, Plaintiff has established that this Court has specific jurisdiction over YPG.**

Nonetheless, YPG argues that is has no connections with Florida that would permit this Court's exercise of long-arm jurisdiction, suggesting that none of Plaintiff's photographs have been published by it or Ziplocal in Florida, nor would they have reason to know they would be.  While YPG concedes that pursuant to its agreement with Ziplocal it provides "publishing services" for Ziplocal's "print and digital products,"[2] YPG's own public statements reveal that the services it provides to Ziplocal are much broader, and include publishing, manufacturing, and distribution services.  Timmerman Decl. ¶9, Exh. 6 at 29. Further, Ziplocal does business in 46 states, including Florida.  *Id.* at ¶5, Exh. 2.  Within Florida, Ziplocal publishes 20 print directories covering 109 cities, in addition to providing online listings.  *Id.* at ¶¶5 and 6, Exhs. 2 and 3.  YPG claims to make such directories, not to mention publish and distribute them, which would include to Ziplocal customers in Florida. With this background, it is not credible for YPG to claim it lacks contacts with Florida. Indeed, infringing advertisements are appearing in Ziplocal directories in Florida, apparently created, published, and distributed by YPG. Moore Decl. ¶¶14-16, Exhs. 5 and 6.

"Specific jurisdiction" exists "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum…." *Helicopteros Nacionales, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d

---

[2] YPG gratuitously characterizes portions of its written agreement with Ziplocal (see Declaration of Michelle Meloy (Dkt. 13) at ¶¶9, 11, and 13), yet fails, without explanation, to produce the agreement in violation of best evidence rule (codified at Fed. R. Evid. 1001-1008).  Plaintiff objects to and moves to strike these unsupported statements.

404 (1984).  Although YPG's production work may have been undertaken outside of Florida, YPG has published and distributed infringing advertisements in Florida resulting in injury to Plaintiff in Florida.  Plaintiff's cause of action thus arises from and relates to YPG's actions in Florida, the publication and distribution of such advertisements in Florida being a substantial aspect and essential to the success of YPG's infringement of Plaintiff's copyrights.  *See Cable/Home*, 902 F.2d at 857; *Precision Software*, 1998 WL 1759759, *4-5. This Court has specific jurisdiction over YPG.

### 3.     YPG's contacts with Florida may even be sufficient to support a finding of general jurisdiction over YPG.

While Plaintiff has not made allegations in its Complaint directed to establishing general jurisdiction over YPG, the extent of YPG's contacts with Florida is notable.  As discussed above, YPG renders manufacturing, publishing, and distribution services for Ziplocal's print and digital products in Florida.  This consists of 20 print directories covering 109 cities in Florida and online directories containing Florida listings that are accessible in Florida.  Further, Ziplocal (over which the Court unquestionably has personal jurisdiction) and YPG are closely affiliated entities given their common ownership by Yellow Media.

"General jurisdiction" exists "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum…." *Helicopteros Nacionales*, 466 U.S. at 415, n. 9.  The "general jurisdiction" section of the Florida long-arm statute affords jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise…[and] whether or not the claim arises from that activity." Fla. Stat., § 48.193(2).  The activity of YPG in Florida could certainly be characterized

"substantial and not isolated."   Therefore, the Court could further find it has general jurisdiction over YPG.

      **B.**    **The exercise of personal jurisdiction over YPG in this case comports with the Constitution's requirements of due process and "traditional notions of fair play and substantial justice."**

          **1.**    **YPG has substantial connections with Florida such that it should reasonably anticipate being haled into court here.**

The next step in the Court's analysis is to determine whether the exercise of jurisdiction over YPG satisfies the due process requirements of the Constitution. The "constitutional touchstone" remains that the non-resident defendant must have "minimum contacts" in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *International Shoe*, 326 U.S. at 316. If the defendant has purposefully directed its activities to a forum and injury results from these activities, then the forum may exercise jurisdiction over the defendant. *Burger King*, 471 U.S. at 472. The Court looks to the foreseeability that the non-resident's "conduct and connection with the forum state are such that it should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Burger King*, 471 U.S. at 474. Jurisdiction may be constitutionally asserted over the non-resident defendant whenever it has by its own purposeful conduct created a "substantial connection" with the forum state. *Id.* at 475. However, "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Id*.

When addressing intentional torts such as copyright infringement, the "effects test" is used in cases of specific jurisdiction. *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210,

1221 n. 28 (11th Cir. 2009) (citing *Calder v. Jones,* 465 U.S. 783, 788-789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). The effects test requires that a defendant must have "(1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Id.*

YPG has established a substantial connection with Florida through its production, publication, and distribution activities in Florida for Ziplocal.  YPG knows it is creating and sending product into Florida.  It knows that print and online advertisements containing Florida addresses and phone numbers and Florida directories are bound for Florida. Therefore, YPG knows it has established a substantial connection with Florida and should in no way be surprised if it is haled into court in connection with products it directs to Florida.

Furthermore, YPG has knowingly infringed Plaintiff's copyrights.  Plaintiff notified Yellow Media of the issues raised in this case in early 2011, and it appears Yellow Media in turn notified YPG and directed members of the Yellow Media/YPG legal department to address the issues with Plaintiff.  Notwithstanding, infringing advertisements continue to appear in the directories YPG publishes and distributes to this day.

In addition, if YPG truly did not inquire of the source of photographs provided to it by Ziplocal, it acted with intentional disregard of Plaintiff's copyrights.  Photographs are indisputably the subject matter of copyright.  *See* 17 U.S.C. § 102(a)(5) (expressly recognizing pictoral works as subject matter of copyright).  YPG is obviously a sophisticated company, in the publishing industry, that should be aware that the use of photographs must be licensed.  Upon receipt of photographs for reproduction and use, YPG should have known to inquire as to the source, ownership, and license terms for the same.  It claims it did not.

An infringer acts as intentionally when it knowingly fails to engage in appropriate inquiries in disregard of third party rights as it does when it knows of such rights and knowingly disregards them, and should not be protected from jurisdiction in a particular forum simply because it chose not to know who the targeted copyright owner was or where they were located. Irrespective of whether YPG intentionally targeted Plaintiff or chose not to know who it was intentionally targeting, YPG committed the intentional tort of copyright infringement in Florida and caused injury to Plaintiff in Florida. YPG has substantial connections with Florida and should not be heard to complain of being haled into court in Florida for its infringement of the copyrights in Plaintiff's photographs.

### 2. The Constitution will not be offended by the exercise of jurisdiction over YPG.

Jurisdiction must also be evaluated in light of several other factors to determine whether its exercise would comport with traditional notions of "fair play and substantial justice." *International Shoe,* 326 U.S. at 320. These factors include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise. *Id.*

In this case, YPG seems to concede jurisdiction in only Indiana and Pennsylvania, which would require Plaintiff to travel to one of those forums. YPG is part of a large public company with operations in the United States and Canada. Plaintiff, on the other hand, is a small, privately-held Florida corporation with a single office in Riverview, Florida. Moore

Decl. ¶¶3 and 4.  The burden of litigating in Florida is comparatively much less on YPG than it would be on Plaintiff to litigate elsewhere.

Additionally, a Florida plaintiff injured by the intentional misconduct of a non-resident should not be required to travel to the non-resident's state of residence to obtain a remedy.  The Supreme Court in *Calder* made clear that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."  465 U.S. at 1487.

Finally, Florida has a strong interest in affording its residents a forum to obtain relief from intentional misconduct of non-residents causing injury in Florida.  *Sculptchair*, 94 F.3d at 632; *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008); *Smith v. Trans-Siberian Orchestra*, 2011 WL 824675, *5 (M.D. Fla. March 3, 2011).  The Constitution is not offended by Florida's assertion of its jurisdiction over such non-resident tortfeasors.  *Calder*, 465 U.S. at 791.  All of these factors weigh in favor of the Court exercising jurisdiction over YPG.

### C.   Plaintiff's Complaint comports with the short and plain statement requirements of Fed.R.Civ.P. 8(a) and formal requirements of 11th Circuit decisions.  It is not a "shotgun pleading."

The term "shotgun pleading" generally connotes one of two things: (1) pleadings where each count incorporates every previous allegation, or (2) pleadings that are so vague and ambiguous that a party cannot reasonably respond.  *See, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1128-29 (11th Cir. 2001) (complaint containing 78 pages, 299 paragraphs, 139 subparagraphs, and 9 counts, each of which incorporated all previous allegations labeled a "shotgun pleading"); *Home Design Services, Inc. v. David Weekley Homes, LLC*, 2007 WL

1080001, *3 (M.D. Fla. April 9, 2007) (complaint containing "only one substantive paragraph" and making "no distinction between the conduct of the thirteen defendants" labeled a "shotgun pleading"); *Kaye Homes, Inc. v. Original Custom Homes Corp.*, 2007 WL 2407005, *1 (M.D. Fla. 2007) ("To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."). Plaintiff's Complaint is neither. It is not a shotgun complaint.

Plaintiff's Complaint recites a core of common jurisdictional and factual allegations and contains two counts, neither of which incorporates the allegations of the other. The works at issue are fairly specifically identified without attaching copies of more than 10,000 photographs to the Complaint that can be produced in initial disclosures and/or discovery. The differing acts of infringement of each of the Defendants are specifically identified. Plaintiff's Complaint is simply not a "shotgun pleading." It is neither vague, nor ambiguous. It is a "short and plain statement of the claim" comprised of "simple, concise, and direct" allegations as required by Fed. R. Civ. P. 8(a) and (d).

The only confusion here is that which YPG attempts to inject by feigning ignorance of its acts of infringement. Plaintiff believes that the copyrights in all of its photographs have been infringed by YPG and has uncovered sufficient evidence of infringement to bring this suit, but the exact extent of the infringement and YPG's internal information that will reveal the same requires discovery from the Defendants. The infringement was undertaken by Defendants, and the evidence of its extent is in their possession. YPG's suggestion that

Plaintiff can at this point know exactly what those files will reveal is misguided.   YPG's Motion should be denied.

## IV.   CONCLUSION

Plaintiff has plead, and the facts of this case support, this Court's exercise of personal jurisdiction over YPG, and Plaintiff's Complaint is not a "shotgun complaint" as claimed by YPG.   YPG's sister company Ziplocal was able to respond, and YPG is able as well.   YPG's Motion should be denied on all counts.   To the extent, though, that the Court may be inclined to grant YPG's Motion, Plaintiff requests that it first be permitted to take limited jurisdictional discovery to explore and test YPG's assertions that are not verifiable by public information, including the exact nature and terms of YPG's relationship and interaction with Ziplocal and Yellow Media, the extent of YPG's contacts with Florida, YPG's knowledge of Plaintiff and Plaintiff's copyrighted photographs, and YPG's knowledge of its use and infringement of the copyrights in Plaintiff's photographs.

Dated: May 30, 2012

/s/ J. Todd Timmerman
J. Todd Timmerman, Esquire, Trial Counsel
Florida Bar No. 0956058
ttimmerman@slk-law.com
Mindi M. Richter, Esquire
Florida Bar No. 0044827
mrichter@slk-law.com
Jason P. Stearns, Esquire
Florida Bar No. 0059550
jstearns@slk-law.com
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone No.: (813) 229-7600
Facsimile No.:  (813) 229-1660

Attorneys for Plaintiff, Yellow Pages Photos, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on  May 30, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic filing to all counsel of record.

/s/ J. Todd Timmerman
J. Todd Timmerman, Esquire

SLK_TAM: #1467930v1