# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**YELLOW PAGES PHOTOS, INC.,**

      **PLAINTIFF,**

**v.**                                                  **CASE NO.: 8:12-cv-755-RAL-TBM**

**ZIPLOCAL, LP, YELLOW PAGES GROUP,**
**LLC,  AND YELLOW MEDIA INC.,**

      **DEFENDANTS.**
_____/

### PLAINTIFF YELLOW PAGES PHOTOS, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT YELLOW MEDIA INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR FOR A MORE DEFINITE STATEMENT

The exercise of personal jurisdiction over Defendant Yellow Media Inc. ("Yellow Media") is appropriate under the Florida and federal long-arm provisions and United States Constitution.  As explained in Plaintiff Yellow Pages Photos, Inc.'s ("Plaintiff's") Complaint (Dkt. 1) and Response to Defendant Yellow Pages Group, LLC's ("YPG's") Motion to Dismiss (Dkt. 20), Defendant Ziplocal, LP ("Ziplocal") is an independent telephone directory publisher and former licensee of Plaintiff's copyrighted photographic images.  YPG is an outsourcing provider to Ziplocal.  Ziplocal transferred Plaintiff's photographs to YPG in breach of Ziplocal's license agreement with Plaintiff, thereby terminating Ziplocal's license to further use the photographs.  YPG never had a license to use the photographs.  YPG and Ziplocal are infringing the copyrights in Plaintiff's photographs through their continued unlicensed use of them.  Yellow Media is a Canadian corporation that wholly owns YPG and

owns a 35% stake in Ziplocal.  Plaintiff asserts that Yellow Media is vicariously liable for its subsidiaries' infringement.[1]

Despite Yellow Media's relationship with YPG and Ziplocal, Yellow Media argues in its Motion to Dismiss that this Court lacks personal jurisdiction over it.  The exercise of personal jurisdiction over Yellow Media in this case is, however, entirely proper.  Yellow Media claims Plaintiff did not plead a sufficient basis to establish personal jurisdiction because neither its control of YPG, nor its stake in Ziplocal is sufficient to confer jurisdiction.  This is incorrect.  As explained below, YPG is a wholly owned subsidiary of Yellow Media, acting as Yellow Media's agent in the United States.  In fact, Yellow Media and YPG hold themselves out to the public as one and the same, and Yellow Media publicly claims it controls YPG.  Given these facts, if there is jurisdiction over YPG in Florida, there is likewise jurisdiction over Yellow Media.

Plaintiff's Complaint asserts facts sufficient to demonstrate personal jurisdiction by alleging the relationship between Yellow Media and YPG and Yellow Media's control of YPG.  Critically, although Yellow Media argues that the Court does not have personal jurisdiction over it, Yellow Media completely fails to controvert the key jurisdictional allegations in the Complaint.  Yellow Media's conclusory declarations barely support the exaggerated factual assertions in its Motion, much less sufficiently challenge the pertinent allegations in the Complaint.  Notably, Yellow Media's declarations make statements about Yellow Media's lack of direct contacts with Florida, but never once dispute Yellow Media's

---

[1] Yellow Media attempts to confuse the issues with arguments that Yellow Media is neither directly nor contributorily infringing.  The Complaint only asserts a claim for vicarious liability against Yellow Media.

relationship with YPG or Ziplocal or Yellow Media's control of YPG and Ziplocal.  Given Yellow Media's failure to controvert the relevant allegations in the Complaint, the burden never shifts back to Plaintiff, and personal jurisdiction has been demonstrated.  However, even if Yellow Media sufficiently questioned Plaintiff's jurisdictional allegations, the evidence submitted in this Response demonstrates personal jurisdiction over Yellow Media.

Moreover, even if the Court is still not inclined to find personal jurisdiction over Yellow Media based its relationship with YPG and Ziplocal and contacts with Florida, jurisdiction would still be proper under Fed. R. of Civ. Pro. 4(k)(2) because there is no question that Yellow Media is subject to jurisdiction in the United States generally.  Yellow Media's own public filings boast of its hundreds of millions of dollars in sales from its operations in the United States.  Given Yellow Media's assertion that this Court in Florida does not have jurisdiction, but failure to identify *any* other state in which jurisdiction would exist, the Court is entitled to use Rule 4(k)(2) to find personal jurisdiction in Florida.

To the extent, though, the Court still questions personal jurisdiction over Yellow Media, Plaintiff requests that it first be permitted to take limited jurisdictional discovery to explore and test Yellow Media's assertions that are not verifiable by public information, including the exact nature and terms of Yellow Media's relationship with YPG, the extent of Yellow Media's contacts with the United States, including Florida, and Yellow Media's knowledge of Plaintiff and Plaintiff's copyrighted photographs.

Finally, with respect to Yellow Media's claim that Plaintiff's Complaint is a "shotgun pleading," Yellow Media misconstrues and misuses the term.  Plaintiff's Complaint comports with the "short and plain statement" requirements of Federal Rule of Civil Procedure 8 and

formal requirements of Eleventh Circuit decisions.   It is far from a "shotgun pleading." Yellow Media's Motion to Dismiss should be denied.

## I.   ARGUMENT

The determination of personal jurisdiction over a non-resident defendant requires a two-part analysis.  *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).   First, the Court must examine the jurisdictional issue under Florida's long-arm statute.  *Sculptchair*, 94 F.3d at 626.   Second, if the Court determines the long-arm statute is satisfied, it must determine whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and "traditional notions of fair play and substantial justice."  *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). [2]

"The reach of the Florida long-arm statute is a question of Florida law." *Jackson-Bear*, 2011 WL 1232985, at *2 (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).   Federal courts are required to construe Florida's long-arm statute "as would the Florida Supreme Court."  *Cable/Home*, 902 F.2d at 856 (quoting *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F. 2d 889, 890-91 (11th Cir. 1983)).

---

[2] Plaintiff has sued Yellow Media for infringement under the United States Copyright Act, 17 U.S.C. § 101 *et seq*.  "When subject matter jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, the Court looks to the state long-arm statute to determine the existence of personal jurisdiction." *Jackson-Bear Group, Inc. v. Amirjazil*, 2011 WL 1232985, *2 (M.D. Fla. March 30, 2011) (citing *Sculptchair*, 94 F.3d at 626-27).   The claim against Yellow Media arises under the Copyright Act, which contains no service of process provision.   Therefore, both the Florida long-arm statute and due process concerns must be satisfied.

Florida's long-arm statute "bestows broad jurisdiction on Florida courts." *Execu-tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.,* 752 So.2d 582, 584 (Fla. 2000).

In a dispute as to personal jurisdiction, if the plaintiff establishes a prima facie case of personal jurisdiction through the allegations of its complaint, the defendant may challenge such allegations through declarations, documents, or other evidence. If the defendant raises a meritorious challenge, the burden shifts back to the plaintiff to prove jurisdiction. *Sculptchair,* 94 F.3d at 627 (quoting *Jet Charter Serv., Inc. v. Koeck,* 907 F.2d 1110, 1112 (11th Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 447 (1991)). The Court must accept the facts in the complaint as true, to the extent they are uncontroverted by the defendant's proof. *Cable/Home,* 902 F.2d at 855. If any discrepancies in the evidence exist, all reasonable inferences must be drawn in favor of the plaintiff. *Id.*

It is widely recognized that copyright infringement is a tort. *Cable/Home,* 902 F.2d at 856; *Smith v. Trans-Siberian Orchestra*, 2011 WL 824675, *4 (M.D. Fla. March 3, 2011). The pertinent portions of the Florida long-arm statute in this case are as follows:

> (1)     Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>  …
>
> (b)     Committing a tortious act within this state.
> …
>
> (f)     Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1.     The defendant was engaged in solicitation or service activities within this state; or

2.     Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(b) and (f).

As explained in Plaintiff's Response to YPG's Motion to Dismiss, "[The 11th Circuit has] held that § 48.193(b) of the Florida long-arm statute permits jurisdiction over the non-resident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999) (adopting broad interpretation of long-arm statute by Florida courts that permits personal jurisdiction over non-resident defendant alleged to have committed a tort causing injury in Florida)).  The 11th Circuit has also recognized that for personal jurisdiction to attach under the "tortious act" aspect of Florida's long-arm statute, the non-resident defendant must have committed a "'substantial aspect of the alleged tort in Florida' by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'"  *Cable/Home*, 902 F.2d at 857 (citations omitted).

Plaintiff established in its Response and Sur-Reply to YPG's Motion to Dismiss that the Court has personal jurisdiction over YPG.  (Dkt. 20 & 35).  In terms of Yellow Media, generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there.  *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002).  However, if the subsidiary is merely an agent through which the parent company conducts business, then the subsidiary's business will be viewed as that of the parent."  *Id.*  When the affiliated domestic corporation "manifests no separate

corporate interests of its own and functions solely to achieve the purpose of the dominant corporation," the court may extend jurisdiction to any foreign corporation.  *Id.* at 1273.  In determining whether the subsidiary is essentially an agent, the court will look at the amount of control over the subsidiary by the parent.  *Al-Babtain v. Banoub*, 2008 WL 3982880, *5 (M.D. Fla. Aug. 26, 2008).  A subsidiary has been found to be a mere instrumentality of the parent for jurisdictional purposes, based on evidence of their financial, administrative, and practical connections.  *American Color Graphics, Inc. v. Brooks Pharm., Inc.*, 2007 WL 3202748, *3 (M.D. Fla. Oct. 29, 2007).

> **A.** **Plaintiff has plead sufficient material facts to establish a prima facie case of personal jurisdiction over Yellow Media, which Yellow Media has failed to rebut by declaration or otherwise.**

Plaintiff alleges the following in its Complaint, establishing a prima facie case of personal jurisdiction over Yellow Media:

> 1.      …Plaintiff is in the business of producing and licensing to publishers of telephone directories copyrighted images for use in creating, producing, and publishing advertisements.  Defendant Ziplocal is an independent telephone directory publisher and a licensee of Plaintiff.  Defendant YPG is an outsourcing provider that, among other services, creates and produces advertisements for Ziplocal.  Defendant Ziplocal breached its license agreement with Plaintiff by, among other things, transferring the images it licensed from Plaintiff to YPG and permitting use of the images it licensed from Plaintiff by graphic design artists that are not employed by Ziplocal, thereby terminating its license.  Further, both Defendants are infringing Plaintiff's registered copyrights by reproducing, using, publishing, distributing, and displaying copyrighted images belonging to Plaintiff in the creation, production, and publication of advertisements, without license or permission from Plaintiff, in violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq*.  Yellow Media is the parent company of YPG, holds an interest in Ziplocal, and is vicariously liable for YPG's infringement.

> 2.      Plaintiff Yellow Pages Photos, Inc. is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Riverview, Florida.

…

5.      Defendant Yellow Media Inc. is a corporation organized and existing under the laws of Canada, with its principal place of business in Verdun, Quebec, Canada.

…

7.      Defendant YPG, among other services, creates and produces advertisements for Ziplocal for publication in Ziplocal's and such other companies' print and online telephone directories, including print directories that are distributed in the State of Florida and online directories that are targeted to the State of Florida.

8.      Both Ziplocal and YPG have committed acts of copyright infringement, as described herein, in the State of Florida and/or outside the State of Florida, causing injury to Plaintiff within the State of Florida.

9.      Yellow Media directly or indirectly controls YPG and holds an interest in Ziplocal.  Yellow Media further participates in, exercises control over, and receives a direct financial benefit from YPG's and Ziplocal's infringement.

10.     By virtue of Defendants' transaction of business in the State of Florida and commission of wrongful acts and causation of damages to Plaintiff, as described herein, Defendants have subjected themselves to personal jurisdiction in the State of Florida.

…

25.     Ziplocal has furnished CDs and/or electronic files including some or all of the Works and/or access to and use of some or all of the Works to YPG.

26.     YPG has accessed, reproduced, and used, and is accessing, reproducing, and using, some or all of the Works, with Ziplocal's permission and approval, to create and produce advertisements.

27.     YPG does not have any right, title, or interest in or to the Works, nor is it licensed to access, reproduce, use, publish, distribute, or display the Works in any manner.

…

40.     To the extent YPG has engaged and is engaging in unlicensed access, reproduction, use, publication, distribution, and display of the Works, the same is likewise a direct infringement of Plaintiff's copyrights in the Works in violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq.*

41.     Yellow Media directly or indirectly controls YPG and holds an interest in Ziplocal.  Yellow Media participates in, exercises control over, and receives a direct financial benefit from YPG's and Ziplocal's infringement, and thus is vicariously liable for YPG's and Ziplocal's infringement.
…

43.     Defendants' infringement of Plaintiff's copyrights in the Works is causing irreparable injury to Plaintiff…

Yellow Media does not controvert any of these allegations in the single Declaration submitted from a Yellow Media employee, and therefore they must be taken as true for purposes of this Motion and Response.  *See Cable/Home*, 902 F.2d at 855.  Yellow Media's only submitted Declaration from a Yellow Media employee is that of Treena Cooper, Director of Legal Affairs for Yellow Media.  Interestingly, though, in emails received by Plaintiff from Ms. Cooper and her Assistant, the signature line does not contain "Yellow Media," but rather "Yellow Pages Group."  *See* Timmerman Decl. ¶4, Exh. 1.  Although Ms. Cooper's declaration makes general statements about Yellow Media's lack of direct contacts with Florida, she never states that Yellow Media is not affiliated with YPG or Ziplocal or that Yellow Media asserts no control over YPG or Ziplocal and does not participate in their businesses.  Moreover, while Ms. Cooper states that Yellow Media did not participate in the license agreement with Plaintiff and does not choose the companies or photographs used by Ziplocal, she never states that Yellow Media does not exercise control over YPG or Ziplocal or does not receive a direct financial benefit from YPG's or Ziplocal's businesses.  The uncontroverted allegations that 1) YPG has infringed Plaintiff's registered copyrights in its photographs; 2) Yellow Media is the parent company of YPG and holds an interest in Ziplocal; 3) Yellow Media controls YPG and Ziplocal; 4) Yellow Media participates in, exercises control over, and receives a direct financial benefit from YPG's and Ziplocal's

infringement, and thus is vicariously liable for YPG's and Ziplocal's infringement; 5) the infringing advertisements were distributed to consumers in Florida, and 6) Plaintiff has suffered injury in Florida where it resides, establish a prima facie case of personal jurisdiction under the subsections (1)(b) and (f) of the Florida long-arm statute. *See Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc.*, 1998 WL 1759759, *4-5 (M.D. Fla. Nov. 9, 1998) (finding alleged Oregon infringer with no ties to Florida other than shipments of infringing products to a Florida company that passed them on to consumers in Florida committed tort of copyright infringement in Florida, caused injury in Florida, and was subject to jurisdiction); *Meier,* 288 F.3d at 1272 (stating that when a subsidiary is merely an agent of the parent, the subsidiary's business will be viewed as that of the parent).

**B.      Even if Yellow Media has raised some question as to jurisdiction, Plaintiff has established that this Court has specific jurisdiction over Yellow Media.**

Nonetheless, Yellow Media argues that it has no connections with Florida that would permit this Court's exercise of long-arm jurisdiction and that Plaintiff's allegations of its direct or indirect control of YPG also are insufficient for jurisdiction.  This is incorrect.  It is well settled that regardless of whether Yellow Media has any direct contacts with Florida, its subsidiary's business will be considered that of Yellow Media if Yellow Media controls YPG such that YPG is essentially acting as an agent for Yellow Media in the United States. *Meier*, 288 F.3d at 1272.  The Complaint in fact asserts that Yellow Media controls YPG, and YPG never disputes the same.

As Ms. Cooper admits, YPG is a wholly owned subsidiary of Yellow Media.  Ms. Cooper further admits, in regards to Canada, that Yellow Media "through its subsidiaries"

operates print and digital media and marketing solutions.  (Dkt. 32 at ¶3).  Although Ms. Cooper noticeably does not elaborate on the same, it appears that the same is true of its subsidiaries in the United States.  As described in Plaintiff's Response to YPG's Motion to Dismiss, Yellow Media and YPG publicly report as consolidated entities.  (Dkt. 20 at 6).  According to their Annual Report for the year ended December 31, 2011:

> Subsidiaries that are directly controlled by Yellow Media Inc. or indirectly controlled by other consolidated subsidiaries are fully consolidated. *Subsidiaries are all entities over which Yellow Media Inc. exercises control.*
>
> *Control is defined as the power to govern, directly or indirectly, the financial and operating policies of an entity so as to obtain economic benefit from its activities.  This situation generally implies directly or indirectly holding more than 50% of the voting rights.*  The existence and effect of potential voting rights that are exercisable or convertible are taken into account in the assessment of control.

(emphasis added).  *Id.*[3]  This filing therefore demonstrates that Yellow Media in fact controls YPG and further that its profits would flow up to Yellow Media.  Moreover, a State of Indiana business search for "Yellow Pages Group" pulls up information on Yellow Pages Group, LLC, but with an entity address in Quebec, Canada, the same address as Yellow Media.  *See* Timmerman Decl. ¶5, Exh. 2.

Not only do Yellow Media and YPG present themselves as unified in government filings, but also in other public statements.  For instance, in a March 30, 2010 press release by Yellow Media and YPG, 1) both companies are referred to as "YPG," 2) "YPG's" contribution of its Your Community PhoneBook directories to Ziplocal is announced, 3) a partnership in the United States between "YPG" and Ziplocal is mentioned, and 4) it is stated that "YPG will continue to fully own and operate its information technology platform and

---

[3] Yellow Media's stake in Ziplocal also is described in Plaintiff's Response (Dkt. 20 at 6).

centers of excellence located in Blue Bell, Pennsylvania and Indianapolis, Indiana." (Dkt. 20 at 7).  In another example, Yellow Media, YPG, and other subsidiaries appear to share a website at www.ypg.com where under the "Contact Us" section Yellow Media lists "Office Locations" in Canada and the United States, including YPG's two locations in Blue Bell, Pennsylvania and Indianapolis, Indiana.  *Id.*  This same website states under the "Company Profile" section on Yellow Media that it publishes print telephone directories "through YPG and Canpages."  *See* Timmerman Decl. ¶6, Exh. 3.  Moreover, the "Board of Directors" section of the website lists as a Board member of Yellow Media Marc P. Tellier, who appears to be the President and Chief Executive Officer of YPG.  *See id.* at ¶7, Exh. 4.

Not only do Yellow Media and YPG hold themselves out as one and the same, but Yellow Media controls YPG and receives the financial benefits of YPG.  YPG is essentially carrying out the business of Yellow Media in the United States.  This is only the evidence that Plaintiff has been able to uncover through publicly available information.  Presumably once the parties begin discovery, much more of the same will be revealed.  The evidence is already sufficient, though, to demonstrate that YPG is an agent of Yellow Media such that jurisdiction over YPG equates to jurisdiction over Yellow Media.  *Meier,* 288 F.3d at 1272; *Al-Babtain*, 2008 WL 3982880, *5.  Presuming the Court finds jurisdiction over YPG, whether it be general or specific, Yellow Media cannot escape jurisdiction in this Court.

      **C.**      **The exercise of personal jurisdiction over Yellow Media also comports with the Constitution's requirements of due process and "traditional notions of fair play and substantial justice."**

            **1.**      **Yellow Media, through its subsidiaries like YPG, has substantial connections with Florida such that it should reasonably anticipate being haled into court here.**

The next step in the Court's analysis is to determine whether the exercise of jurisdiction over Yellow Media satisfies the due process requirements of the Constitution. The non-resident defendant must have "minimum contacts" in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *International Shoe*, 326 U.S. at 316.  If the defendant has purposefully directed its activities to a forum and injury results from these activities, then the forum may exercise jurisdiction over the defendant. *Burger King*, 471 U.S. at 472.  The Court looks to the foreseeability that the non-resident's "conduct and connection with the forum state are such that it should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Burger King*, 471 U.S. at 474.  Jurisdiction may be constitutionally asserted over the non-resident defendant whenever it has by its own purposeful conduct created a "substantial connection" with the forum state. *Id.* at 475.  However, "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Id.*

As detailed in Plaintiff's Response to YPG's Motion to Dismiss, the exercise of personal jurisdiction over YPG satisfies the constitutional requirements because YPG has substantial connections with Florida through its production, publication, and distribution activities in Florida for Ziplocal.  Because YPG is acting as agent for Yellow Media, YPG's business and actions are essentially those of Yellow Media. *Meier*, 288 F.3d at 1272 (stating that "the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary").  This analysis applies equally to whether minimum contacts exist.  If YPG has sufficient minimum contacts with

Florida, then so does Yellow Media.  *Id.* at 1275-76  (finding sufficient minimum contacts for parent when found for subsidiary).  As demonstrated in Plaintiff's previous Response, YPG does in have sufficient minimum contacts, and as a result, so does Yellow Media.

2.    **The Constitution will not be offended by the exercise of jurisdiction over Yellow Media.**

Jurisdiction must also be evaluated in light of several other factors to determine whether its exercise would comport with traditional notions of "fair play and substantial justice."  *International Shoe,* 326 U.S. at 320.  These factors include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).  Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise.  *Id.*

Again, Plaintiff's Response to YPG's Motion to Dismiss demonstrates that exercising jurisdiction over YPG would not offend the Constitution.  (Dkt. 20 at 17-18).  Therefore, as mentioned above, the same would be true of Yellow Media.  This is particularly true in this instance because, although Yellow Media would likely allege a high burden to defend itself in a foreign legal system, the burden of defending suit in the United States is not compelling because, as the Eleventh Circuit has stated, "modern methods of transportation and communication have ameliorated this sort of burden."  *Barrocos of Florida, Inc. v. Elmassian*, 2012 WL 1622988, *9 (S.D. Fla. May 9, 2012), *citing S.E.C. v. Carillo*, 115 F.3d 1540 (11th Cir. 1997).  Moreover, Plaintiff has an interest in obtaining relief for copyright infringement, and the United States certainly has an interest in upholding federal copyright

laws, "especially when a forum citizen has been harmed by the intentional tort of a non-resident defendant." *Id.*  This is in addition to the fact that Plaintiff is a small, privately-held Florida corporation with a single office in Riverview, Florida, while Yellow Media is a large public company with countless resources.   *Meier*, 288 F.3d at 1276 (finding personal jurisdiction and stating that "Plaintiffs are Utah residents with a combined annual salary of $37,833" while "the Sun Defendants operate multiple luxury resorts . . .").   Given all these factors, the Constitution would not be offended by the jurisdiction over Yellow Media.

> **D.**    **This Court has general jurisdiction over Yellow Media under the federal long-arm provisions of Fed. R. Civ. P. 4(k)(2).**

Even if the Court were inclined to agree with the jurisdictional arguments in Yellow Media's Motion, it may still exercise personal jurisdiction over Yellow Media pursuant to Fed. R. Civ. P. 4(k)(2).[4]   In cases where a defendant is not subject to jurisdiction in any state's courts of general jurisdiction, the federal long-arm provisions embodied in "Rule 4(k)(2) permits a court to aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must 'arise under federal law;' and (2) the exercise of jurisdiction must be 'consistent with the Constitution and laws of the United States.'"   *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

---

[4] Plaintiff did not allege Fed. R. Civ. P. 4(k)(2) as a basis for jurisdiction.  Regardless, this Court may fully consider whether Yellow Media is amenable to personal jurisdiction under Rule 4(k)(2), as "[f]ederal courts are entitled to apply the right body of law, whether the parties name it or not."   *Barrocos of Fla., Inc.,* 2012 WL 1622988, *6 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (finding jurisdiction under Rule 4(k)(2) even though parties did not raise it as basis for personal jurisdiction); *Graduate Mgmt. Admission Council v. Raju*, 241 F.Supp.2d 589, 596–97 (E.D. Va. 2003) (while plaintiff "has not asserted 4(k)(2) as a basis for jurisdiction," the "omission is not decisive" to "change the conclusion that there is jurisdiction    here    under    Rule    4(k)(2)'s    nationwide    contacts    analysis").

For Rule 4(k)(2) to apply, the Court must find that Yellow Media, a Canadian corporation, is not amenable to personal jurisdiction in *any* state's courts of general jurisdiction. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 (11th Cir. 2009). Yellow Media has argued that it is not subject to jurisdiction in Florida, but has not identified *any* state where it might be subject to personal jurisdiction. Therefore, the Court is authorized to assume that Yellow Media is not amenable to jurisdiction in the courts of any state and may proceed under Rule 4(k)(2), as "[a] district court is not required to analyze the laws of all fifty states to ascertain whether any state court of general jurisdiction has jurisdiction over the defendant; rather, '[i]f…the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).'" *Oldfield*, 558 F.3d at 1218 n. 22 (citations omitted).

First, Rule 4(k)(2) requires that Plaintiff's claims arise under federal law. *Consol. Dev. Corp .*, 216 F.3d at 1291. Plaintiff claims in this case that Yellow Media is "vicariously liable for YPG's and Ziplocal's infringement [under the Copyright Act]." *See* Complaint ¶41. Therefore, Plaintiff's claim against Yellow Media arises under federal law as required under Rule 4(k)(2) *See Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 2009 WL 5879033, at *1 (N.D. Fla. Mar. 31, 2009) ("Under federal copyright law, third party liability is available under theories of contributory infringement and vicarious liability.") (citing *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987)).

Second, Rule 4(k)(2) requires that the exercise of federal long-arm jurisdiction be "consistent with the United States Constitution and laws." "Jurisdiction 'consistent with the Constitution and laws of the United States' is that which comports with due process,"

*Consol. Dev. Corp.*, 216 F.3d at 1291, in other words where "the nonresident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield*, 558 F.3d at 1220.  The applicable forum for purposes of Rule 4(k)(2) is the United States as a whole.  *Id.*

In this case, Yellow Media's contacts with the United States are so extensive as to confer general jurisdiction over Yellow Media.   During the relevant time period of Defendants' infringement, Yellow Media has repeatedly stated in its Annual Reports that it "operates in the United States."  *See* Timmerman Decl. ¶¶8 and 9, Exh. 5 at 102 and Exh. 6 at 93.   Yellow Media advertises office locations in Indiana and Pennsylvania, *see* Timmerman Decl. ¶10, Exh. 7, and "operates Dealer.com, a leading provider of online marketing solutions in the United States."  *See* Timmerman Decl. ¶9, Exh. 6 at 64.  In the year 2010, Yellow Media included in its reported "Directories segment" the results of YPG and in its reported "Vertical Media segment" the results of Dealer.com, representing "$111,300,000 of revenues…for the year ended December 31, 2010 [that] were generated in the United States of America," explaining that "[r]evenues are attributed to countries based on the location of the customer."  *See* Timmerman Decl. ¶9, Exh. 6 at 99.  The Court has general jurisdiction over Yellow Media under the federal long-arm provisions of Rule 4(k)(2).

In addition, jurisdiction over Yellow Media is consistent with the Constitution and laws of the United States.  As explained above, the exercise of jurisdiction over Yellow Media in Florida comports with the Constitution's requirements of due process and "traditional notions of fair play and substantial justice."  Given that jurisdiction in Florida

comports with the Constitution, jurisdiction over Yellow Media anywhere in the United States would clearly be consistent with the Constitution as well as the laws of the United States.

### E.    Plaintiff's Complaint is not a "shotgun pleading."

The term "shotgun pleading" generally connotes one of two things: (1) pleadings where each count incorporates every previous allegation, or (2) pleadings that are so vague and ambiguous that a party cannot reasonably respond. *See, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1128-29 (11th Cir. 2001) (complaint containing 78 pages, 299 paragraphs, 139 subparagraphs, and 9 counts, each of which incorporated all previous allegations labeled a "shotgun pleading"); *Home Design Services, Inc. v. David Weekley Homes, LLC*, 2007 WL 1080001, *3 (M.D. Fla. April 9, 2007) (complaint containing "only one substantive paragraph" and making "no distinction between the conduct of the thirteen defendants" labeled a "shotgun pleading"); *Kaye Homes, Inc. v. Original Custom Homes Corp.*, 2007 WL 2407005, *1 (M.D. Fla. 2007) ("To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."). Plaintiff's Complaint is neither. Plaintiff's Complaint comports with the short and plain statement requirements of Fed.R.Civ.P. 8(a) and formal requirements of 11th Circuit decisions. It is not a "shotgun pleading."

Yellow Media's claimed confusion is unconvincing. Distilled, Plaintiff's claim against Yellow Media is simple:

- Plaintiff created, owns, and has registered the copyrights in photographs.

- Plaintiff licensed Ziplocal to use its entire library of photographs and provided them in electronic files to Ziplocal.

- Ziplocal transferred some or all of these electronic files containing Plaintiff's photographs to YPG for YPG's use in violation of Ziplocal's license agreement from Plaintiff, thereby terminating Ziplocal's license.

- The copyrights in each photograph copied into YPG's systems by Ziplocal and YPG were infringed by that unlicensed act.

- YPG has never been licensed to use any of Plaintiff's photographs.

- YPG and Ziplocal continue to reproduce, use, publish, distribute, and display Plaintiff's photographs in advertisements in violation of Plaintiff's copyrights.

- The copyrights in each photograph reproduced, used, published, distributed, and displayed by YPG or Ziplocal after the termination of Ziplocal's license were further infringed.

- Yellow Media participates in, exercises control over, and receives a direct financial benefit from YPG's and Ziplocal's infringement, and thus is vicariously liable for YPG's and Ziplocal's infringement.

Yellow Media claims it is confused as to what photographs Plaintiff is referencing in its Complaint.  The copyright registration numbers are listed, and the photographs covered by each registration were provided to the Library of Congress.  The information Yellow Media claims to be lacking is a matter of public record.  There is no need to attach copies of more than 10,000 photographs to a complaint.  They can be furnished in discovery.

Yellow Media further claims to be confused as to what photographs have been infringed.  The copyrights in each of Plaintiff's photographs its subsidiary Ziplocal transferred to its other subsidiary YPG were infringed, and the copyrights in each photograph Ziplocal and YPG reproduced, used, published, distributed, and displayed were further infringed.  Plaintiff believes that the copyrights in all of its photographs have been infringed by Ziplocal and YPG, and has uncovered sufficient evidence of infringement to bring this suit, but the exact extent of the infringement and Ziplocal's and YPG's internal information

that will reveal the same requires discovery from the Defendants.  The infringement was undertaken by Defendants, and the evidence of its extent is in their possession.  Yellow Media's suggestion that Plaintiff can at this point know exactly what those files will reveal is misguided and indicative only of expected discovery abuse by Defendants.

## II.     CONCLUSION

Yellow Media cannot avoid personal jurisdiction in Florida merely by hiding behind the technical fact that it is a separate entity with a listed address in Canada.  The reality is that Yellow Media operates in the United States, including specifically in Florida, through its subsidiaries.  As the Court has personal jurisdiction over YPG, it also has jurisdiction over Yellow Media.  Yellow Media's Motion should be denied on all counts.  To the extent though, that the Court finds remaining questions on personal jurisdiction over Yellow Media, Plaintiff requests that it first be permitted to take limited jurisdictional discovery to explore and test Yellow Media's assertions that are not verifiable by public information, including the exact nature and terms of Yellow Media's relationship with YPG, the extent of Yellow Media's contacts with the United States, including Florida, and Yellow Media's knowledge of Plaintiff and Plaintiff's copyrighted photographs.

Respectfully Submitted,

/s/ J. Todd Timmerman
J. Todd Timmerman, Esquire
Florida Bar No. 0956058
ttimmerman@slk-law.com
Mindi M. Richter, Esquire
Florida Bar No. 0044827
mrichter@slk-law.com
Jason P. Stearns, Esquire
Florida Bar No. 0059550
jstearns@slk-law.com
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone No.: (813) 229-7600
Facsimile No.: (813) 229-1660

Attorneys for Plaintiff, Yellow Pages Photos, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 20, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic filing to all counsel of record.

/s/ J. Todd Timmerman
J. Todd Timmerman, Esquire