**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

YELLOW PAGES PHOTOS, INC.,

      Plaintiff,

v.                                   CASE NO: 8:12-cv-755-T-26TBM

ZIPLOCAL, LP; YELLOW PAGES GROUP, LLC;
and YELLOW MEDIA INC.,

      Defendants.
_____/

**O R D E R**

Before the Court are two motions to dismiss based on lack of personal jurisdiction:

(1) Defendant Yellow Pages Group, LLC's Motion to Dismiss for Lack of Jurisdiction or

for a More Definite Statement, supporting memorandum, and the declaration of Michelle

Meloy (Dkts. 11, 12 & 13), Plaintiff's Response in Opposition and the declarations of W.

Trent Moore and J. Todd Timmerman (Dkts. 20, 21 & 22), Defendant's Reply and the

declaration of Michelle Meloy (Dkts. 33 & 34), and Plaintiff's Surreply (Dkt. 35), and (2)

Defendant Yellow Media, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or

for a More Definite Statement, supporting memorandum, and the declarations of

Jacqueline Lesser, Michelle Meloy, and Treena Cooper (Dkts. 28, 29, 30, 31 & 32), and

Plaintiff's Response in Opposition and the declaration of J. Todd Timmerman. (Dkts. 36

& 37).  After careful consideration of the allegations of the Amended Complaint (Dkt. 44),[1] the submissions of the parties, the applicable law, and the entire file, the Court concludes YPG's motion should be denied and Yellow Media's motion should be granted with leave for YPPI to replead.

## PARTIES

Plaintiff Yellow Pages Photos, Inc. (YPPI) is a Florida corporation that produces and licenses copyrighted photographic images to publishers of telephone directories to be used in the creation, production, and publication of advertisements.[2]  Defendant Ziplocal, LP (Ziplocal), a publisher of telephone directories, is one of YPPI's licensees of photographic images.[3]  Defendant Yellow Pages Group, LLC (YPG) is not a publisher, according to YPG, but rather is an outsourcing provider that makes advertisements[4] for

---

[1]   An Amended Complaint has been filed since the filings of the motions to dismiss at issue here.  See docket 44.  Pursuant to this Court's order of July 10, 2012, YPPI was allowed to file the amended complaint, which was amended to add allegations unrelated to the issues in the motions filed by the two Defendants other than Ziplocal. See docket 40.  For purposes of this order, the pertinent allegations of the amended complaint are the same as the complaint.

[2]   See docket 21, para. 6.  The library consists of over 10,000 photographs divided into collections of 50 to 100 photographs each, including "auto parts," "cities and skylines," " health & fitness," and "pizza."  See docket 21, paras. 7 & 8.

[3]   See docket 21, para. 10.  YPPI initially licensed its entire library to Phone Directories Company, LP, which is now known as Ziplocal.

[4]   See docket 13, para. 2; docket 34, para. 3.

Ziplocal pursuant to an outsourcing agreement dated November 1, 2010.[5]  Ziplocal and

YPG are Delaware corporations doing business in Utah, and Indiana and Pennsylvania,

respectively.[6]  Defendant Yellow Media, Inc. (Yellow Media) is a Canadian entity that

wholly owns YPG[7] and holds a 35% interest in Ziplocal.[8]

## PERTINENT ALLEGATIONS

In the two-count amended complaint, YPPI sues Ziplocal, first, for breach of the

licensing agreement concerning the copyrighted photographic images.  Ziplocal allegedly

breached the agreement by furnishing some or all of the images to YPG and permitting

YPG to reproduce and use the images in the creation and production of advertisements for

Ziplocal.  The breach terminated Ziplocal's license.  Ziplocal continued to publish the

telephone directories in print and online after YPPI terminated the agreement.  In the

second count, YPPI sues all Defendants for copyright infringement, stemming from their

access to and use of the copyrighted images.

The amended complaint specifically alleges that "Defendant YPG, among other

services, creates and produces advertisements for Ziplocal for publication in Ziplocal's

and such other companies' print and online telephone directories, including print

---

[5]   The outsourcing agreement was signed at YPG's and Ziplocal's offices in
Pennsylvania and Utah, respectively.  See docket 13, para. 9.

[6]   See docket 13, para. 3.

[7]   See docket 32, para. 5.

[8]   See docket 32, para. 7.

directories that are distributed in the State of Florida and online directories that are targeted to the State of Florida."[9]  It alleges that "YPG has accessed, reproduced, and used, and is accessing, reproducing, and using" some or all of the copyrighted images "to create and produce advertisements."[10]  The amended complaint further provides that YPG does not have any claim to the copyrighted images and is not licensed to access, reproduce or use the images.[11]

With respect to the intentional acts, the amended complaint states that Ziplocal and YPG "have committed acts of copyright infringement, . . . in the State of Florida and/or outside the State of Florida, causing injury to Plaintiff within the State of Florida."[12] Direct and contributory infringement is alleged against YPG through its engagement of "unlicensed access, reproduction, use, publication, distribution, and display" of the copyrighted images.[13]

With respect to Yellow Media, the amended complaint states that it "participates in, exercises control over, and receives a direct financial benefit from YPG's and Ziplocal's infringement."[14]  The complaint alleges that Yellow Media "directly or

---

[9]  See docket 44, para. 7.

[10]  See docket 44, para. 26.

[11]  See docket 44, para. 27.

[12]  See docket 44, para. 8.

[13]  See docket 44, para. 40.

[14]  See docket 44, para. 9.

indirectly" controls YPG and holds an interest in Ziplocal.[15]  In count II, Yellow Media is alleged to be "vicariously liable for YPG's and Ziplocal's infringement" as a result of its control over YPG, its part interest in Ziplocal, and its direct financial benefit from the infringement.[16]

## DECLARATIONS

### *YPG*

YPG submits the declarations of Michelle Meloy who has been the senior manager of YPG's advertisement services since 2008.[17]  Ms. Meloy attests that YPG conducts no business operations in Florida, possesses no agents or offices in Florida, and holds no personal or real property in Florida, nor engages in any of the general activities that would give rise to personal  jurisdiction.[18]  With respect to the allegations of this case, Ms. Meloy avers that the work done for Ziplocal is performed in Indiana and Pennsylvania and delivered to Ziplocal in Utah.[19]  Ms. Meloy further avers that neither the outsourcing agreement nor the images provided to YPG from Ziplocal in any way

---

[15]  See docket 44, para. 9.

[16]  See docket 44, para. 41.

[17]  See dockets 13, 31 & 34.

[18]  See docket 13, paras. 4, 5, 6, 7 & 8.

[19]  See docket 13, para. 10.

identify YPPI or any other source of authorship.[20]  Ms. Meloy claims that YPG had no notice of the source of the images until this lawsuit.[21]

YPPI counters that Ms. Meloy's own statements are somewhat conflicting with respect to whether YPG publishes the images from YPPI.  With respect to whether YPG publishes directories, Ms. Meloy avers that since March 2011, "YPG has provided defendant Ziplocal LP with publishing services for its print and digital products pursuant to an agreement between our companies."[22]  The outsourcing agreement itself provides that "YPG shall provide Ziplocal with the full-cycle publishing services detailed in the attached Schedule A."  A printout of excerpts of Yellow Media's 2010 Annual Report provides that under the three-year outsourcing agreement with Ziplocal beginning November 2010, "YPG will provide publishing, manufacturing and distribution services enabling Ziplocal to benefit from YPG's technology."  YPPI's submissions show that at least 20 print directories covering 109 cities in Florida and online directories containing Florida listings are accessible in Florida.[23]

With respect to YPG's notice of the infringement, YPPI counters that at the very least by February 23, 2011, YPG was alerted by a letter from counsel for YPPI that its

---

[20]  See docket 13, para. 12.

[21]  See docket 13, para. 12.

[22]  See docket 13, para. 9.

[23]  See docket 22, para. 4-6, Exhs. 1-3.

-6-

copyrighted photographs were appearing in "directories in the United States and Canada."[24]  Although the letter was addressed to Yellow Media in Canada, individuals associated with YPG, and also Yellow Media, were responding to the communications.[25]

### *Yellow Media*

Two of the declarations filed in support of Yellow Media's motion to dismiss are directed to the activities of YPG, not Yellow Media, in relation to the copyrighted photographs.[26]  The sole declaration filed by a representative of Yellow Media is that of Treena Cooper, the Director of Legal Affairs for Yellow Media.[27]  She avers that Yellow Media is a "leading digital company" in Canada and "operates print and digital media and marketing solutions" in Canada through its subsidiaries.[28]  Yellow Media has no customers, offices, agents, bank accounts, employees or representatives in Florida.[29]  Yellow Media owns 100% of the stock of YPG, and acquired a 35% stake in Ziplocal.[30]  Ms. Cooper avers that Yellow Media does not employ the staff of either YPG or Ziplocal,

---

[24]   See docket 22, para. 15, Exh. 12.

[25]   See docket 37, Exh. 1-7.

[26]   See dockets 30 (Declaration of Jacqueline M. Lesser, attorney for Yellow Media and YPG) & 31 (Declaration of Michelle Meloy, "Sr. Manager, Ad and Page services— U.S. Operations for YPG)."

[27]   See docket 32.

[28]   See docket 32, para. 3.

[29]   See docket 32, para. 4.

[30]   See docket 32, paras. 5 & 7.

and is not involved in choosing the companies from which Ziplocal obtains licenses.[31]

Ms. Cooper avers that Yellow Media was not contacted until 2012 about the subject

matter of this law suit.[32]

YPPI's counter-declarations of Mr. Timmerman, counsel for YPPI, provides

emails indicating Treena Cooper of Yellow Media knew of the alleged infringement as

early as March 2011.[33]  Additional attachments to the declaration show that Yellow

Media operates through its subsidiaries and operates in the United States, deriving a

substantial revenue from customers in the United States.  Many other attachments appear

to substantiate Yellow Media's involvement in the U.S. operation of its subsidiaries.

## PERSONAL JURISDICTION

Jurisdiction in this case is based on both federal question and diversity jurisdiction.

(Dkt. 1).  Because the copyright statute, 28 U.S.C. § 1338(a), is silent as to service of

process, the forum state's long-arm statute is applied to evaluate personal jurisdiction

over a nonresident defendant.  See Jackson-Bear Group, Inc. v. Amirjazil, 2011 WL

1232985, at *6-7 (M.D. Fla. 2011) (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d

623, 626-27 (11th Cir. 1996)).[34]  "A federal district court in Florida may exercise personal

---

[31]   See docket 32, paras. 9, 10 & 12.

[32]   See docket 32, para. 15.

[33]   See docket 37, Exh. I.

[34]   In diversity cases, the Court also applies the state's long-arm statute.  See Sun
Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030, 1033 (11th Cir. 1991).

jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008).

The allegations of the complaint must withstand a two-part analysis to establish personal jurisdiction over the defendants: (1) whether a factual basis exists under Florida's long-arm statute, section 48.193, Florida Statutes, and (2) whether constitutional minimum contacts and due process notions of fair play have been met. Sculptchair, 94 F.3d at 626-27; Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990); Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989). Florida's long-arm statute encompasses both specific and general jurisdiction,[35] with the proof of general personal jurisdiction "more difficult" based on the wide-ranging contacts unrelated to the cause of action.  See Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2002); Canale v. Rubin, 20 So.2d 463, 466 (Fla.Dist.Ct.App. 2009). Specific jurisdiction requires a showing of "connexity," or a causal connection between the defendant's contacts with the state and the cause of action.  Id. at 466 (citing Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002)).

---

[35]   See Goodyear Dunlop Tires Operations, S.A. v. Brown, — U.S. —, 131 S.Ct. 2846, 2853, 180 L.Ed.2d 796 (2011) (noting the difference between "specific" and "general" jurisdiction categories).

A review of the amended complaint reveals that Plaintiff's claim involves copyright infringement and therefore sounds in tort.[36] Cable/Home, 902 F.2d at 856; Smith v. Trans-Siberian Orchestra, 2011 WL 824675, at *4 (M.D. Fla. 2011).[37] Section 48.193 provides for long-arm jurisdiction for various torts, including those committed outside the state that cause injury within the state.    Licciardello, 544 F.3d at 1283.[38] Specifically, section 48.193 provides in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause arising from the doing of any of the following acts:

---

[36] The complaint also contains a count for breach of contract against only Defendant Ziplocal.

[37] For purposes of determining personal jurisdiction, courts have generally held that the tort of copyright infringement is an intentional one. See Bangor Punta Operations v. Universal Marine Co., 543 F.2d 1107, 1109 (11th Cir. 1976) (noting that misappropriation of advertising materials constitutes trademark violation and is considered tort of unfair competition and breach of common law copyright is tort); Edwards v. Trade Publ'g Ltd., 2010 WL 5416190, at *6 (M.D. Fla. 2011), approved in part, 2010 WL 5459549 (M.D. Fla. Aug. 20, 2011) (adopting report and recommendation on issue of personal jurisdiction).

[38] See, e.g., Barrocos of Fla., Inc. v. Elmassian, 2012 WL 1622988, at *4 (S.D. Fla. 2012) (recognizing in copyright infringement case that tortious conduct committed outside Florida could cause harm in Florida; however, although ultimate injury occurred in Florida from sale of infringing pieces to consumers in Florida, court declined to find personal jurisdiction under § 48.193(1)(b) because too tenuous under facts of case); Foreign Imported Prod. & Publ'g, Inc. v. Grupo Indus. Hotelero, S.A., 2008 WL 4724495 (S.D. Fla. 2008) (citing Licciardello and holding that copyright infringement occurring on a website accessible in Florida falls within jurisdiction of 48.193(1)(b)).

> (b) Committing a tortious act within this state.
>
> . . . .
>
> (f) Causing injury to persons within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
>> 1. The defendant was engaged in solicitation or service activities within this state; or
>>
>> 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within the state in the ordinary course of commerce, trade, or use.

The plaintiff must establish that the tortious activities in Florida "w[ere] essential to the success of the tort" and therefore a "substantial aspect of the alleged tort" was committed in Florida.  Cable/Home, 902 F.2d at 857 (citations omitted).

After it is determined that personal jurisdiction exists under the long-arm statute, the constitutional due process considerations must be analyzed.  The Eleventh Circuit has applied the Calder[39] "effects test" in a trademark infringement case.  Licciardello.  The "effects test" as defined by the Ninth Circuit requires "a tort that was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state."  Licciardello, 544 F.3d at 1286 (citing Ziegler v. Indian River Cnty., 64 F.3d 470, 474 (9th Cir. 1995); Oldfield v. Pueblo de Bahia Lora, S.A., 588 F.3d 1210, 1220 n. 28 (11th Cir. 2009)).  In another case involving the sale of a

---

[39]  See Calder v. Jones, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

marine insurance policy, however, the Eleventh Circuit applied both the Calder effects test as well as the "stream of commerce" test.  See Ruiz de Molina v. Merritt & Furman Ins. Agency, 207 F.3d 1351, 1357-58 (11th Cir. 2000) (setting forth and applying the "stream of commerce" test in a fraud case involving a marine insurance contract placed in the stream of commerce where Michigan insurance brokers knew that insurance policy was being procured for boat anchored in Alabama and owned by Alabama resident).  Thus, the precise standard to apply in this particular copyright infringement case may not be obvious.  See Askue v. Aurora Corp. of Am., 2012 WL 843939, at *6 (N.D. Ga. 2012) (reflecting in a products liability case resulting in personal injury that "courts in this circuit and elsewhere continue to stumble around in search of the proper standard").  In any event, the "effects test" under Calder appears to be applied in most cases involving intentional torts.[40]

While the plaintiff bears the initial burden of alleging sufficient facts in the complaint to make a *prima facie* case for personal jurisdiction over a nonresident defendant, the defendant may contest jurisdiction through the use of affidavits, documents, or other evidence.  See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274

---

[40]   See, e.g., Oldfield, 558 F. 3d at 1220 n. 28 (noting that minimum contacts test is applicable to torts of negligence while Calder effects test is applicable to intentional torts); Trans-Siberian Orchestra, 2011 WL 824675, at *5 (stating in a copyright infringement case that effects test is used with intentional torts); Z Prods., Inc. v. SNR Prods., Inc., 2010 WL 5057375, at *7 (M.D. Fla. 2010) (stating that in a case involving creation of competing websites that "[c]ourts employ the Calder effects test when the plaintiff's claim involves an intentional tort.").

(11ᵗʰ Cir. 2009).  Once the defendant submits affidavits, then the burden shifts to the

plaintiff to prove jurisdiction.  Any discrepancies are resolved by drawing all reasonable

inferences in favor of the plaintiff.  See Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264,

1269 (11ᵗʰ Cir. 2002); Cable/Home, 902 F.2d at 855.

YPG

The Court finds that the allegations of the amended complaint, together with the

submissions of the parties, satisfy both Florida's long-arm statute, section 48.193(1)(b),

and due process constitutional minimum contacts and traditional notions of fair play.

*Long-arm jurisdiction*

Long-arm jurisdiction for a tort committed outside the forum state where injury

occurs in the forum state is recognized in Florida.[41]  Licciardello, 544 F.3d at 1283;

Posner v. Essex Ins. Co., 178 F.3d 1209, 1216-17 (11ᵗʰ Cir. 1999); Wendt, 822 So.2d at

1260.[42]  Copyright infringement has been considered an intentional tort for purposes of

---

[41]   Jurisdiction under 48.193(1)(f) requires allegations under subparts 1. and 2.—
that YPG engaged in solicitation or services within Florida or that YPG processed,
serviced, or manufactured products, materials or things to be used within the state.  The
amended complaint does not appear to contain any such allegations regarding these
activities, nor do YPPI's submissions substantiate this finding.  Consequently, the
applicable long-arm statute is section 48.193(1)(b).

[42]   See also Internet Solutions Corp. v. Marshall, 39 So.2d 1201, 1206 (Fla. 2010)
(declining to "decide the broader issue of whether injury alone satisfies the requirement
of 48.193(1)(b)" and recognizing that "the federal courts have adopted this broad
construction of section 48.193(1)(b), holding that the commission of a tortious act out of
state that causes an injury to an in-state resident satisfies Florida's long-arm statute.").

personal jurisdiction,[43] although under copyright law the "intent to infringe is not needed to find copyright infringement." <u>Playboy Enterprises, Inc. v. Frena</u>, 839 F.Supp. 1552, 1559 (M.D. Fla. 1993).  Consequently, an "innocent infringer is liable for infringement." <u>Id</u>.

The situs of the injury in copyright infringement for purposes of personal jurisdiction, has generally been held to be the state where the copyright owner resides. <u>Licciardello</u>, 544 F.3d at 1284 (declining to decide whether trademark injury occurs where owner of mark resides while noting that Florida district courts have held so); <u>Nida Corp. v. Nida</u>, 118 F.Supp.2d 1223, 1228 (M.D. Fla. 2000) (holding that injury from trademark infringement occurs in state where trademark owner resides); <u>J.B. Oxford Holdings, Inc. v. Net Trade, Inc.</u>, 76 F.Supp.2d 1363, 1366 (S.D. Fla. 1999).[44]  Because YPPI is the copyright owner, and YPPI's principal place of business is in Riverview, Florida, the situs of the injury for purposes of section 48.193(1)(b) is Florida.

*Due Process Considerations*

---

[43]   <u>See</u> cases cited at footnote 37 above.

[44]   In other jurisdictions, courts have considered that the situs of the injury, for purposes of personal jurisdiction in a copyright infringement action is the location of the copyright holder.  <u>Nu Image, Inc. v. Does 1-23, 322</u>, 799 F.Supp.2d 34, 38 (D. D.C. 2011) (citing <u>Penguin Group (USA) Inc. v. Am. Buddha</u>, 640 F.3d 497, 500-501 (2d Cir. 2011), and explaining that because District of Columbia's long-arm statute is similar to New York's, the reasoning of <u>Am. Buddha</u> is persuasive in identifying situs of injury as location of copyright holder).  The place of injury may be different, however, with respect to an analysis of where the economic injury occurs.  <u>Nu Image, Inc.</u>, 799 F.Supp.2d at 39 (citing <u>Helmer v. Doletskaya</u>, 393 F.3d 201 (D.C. Cir. 2004)).

Applying the <u>Calder</u> effects test, it is not enough to simply allege and show that an intentional tort committed outside Florida results in personal jurisdiction over a defendant who has no other contacts with the forum. <u>Licciardello</u>, 544 F.3d at 1288; <u>HME Providers, Inc. v. Heinrich</u>, 2010 WL 557106, at *4 (M.D. Fla. 2010).[45]  The intentional tort, in this case copyright infringement, must be "expressly aimed at the plaintiff in the forum state." <u>Licciardello</u>, 544 3d at 1288; <u>HME Providers</u>, 2010 WL 557106, at *4. The Court finds that YPG's acts in the commission of the alleged tort of copyright infringement satisfies due process considerations as being expressly aimed at YPPI in Florida.

YPG, a sophisticated company in the publishing industry,[46] was responsible for manipulating the copyrighted photographs in advertisements that were obviously directed at various markets in Florida.  The photographs were placed and positioned on the pages as part of advertisements with Florida businesses and Florida addresses.  YPG created the very advertisements directed at Florida consumers.  This act was more than a general exploitation of an infringing work into the stream of commerce.  Whether YPG did not actually publish the directories, either online or in telephone books, has been sufficiently challenged by YPPI through its submissions.  The Court finds that drawing all reasonable

---

[45]  <u>See</u> <u>Kernel Records Oy v. Mosley</u>, 2010 WL 2813565, at *11 (S.D. Fla. 2010) (finding that general exploitation of infringing work into stream of commerce, without more, does not amount to a purposeful availament).

[46]  YPPI makes a valid point that YPG should have been aware that the photographs may have been copyrighted and should have acted accordingly.

inferences from the somewhat conflicting submissions in favor of the Plaintiff, YPPI, personal jurisdiction exists over YPG and does not offend the notions of fair play and substantial justice.

YELLOW MEDIA

The amended complaint alleges only vicarious liability against Yellow Media.[47] Yellow Media correctly claims that its status, without more, as a shareholder in YPG, and 35% owner of Ziplocal, does not bring it within the reach of Florida's long-arm statute. See Home Design Servs., Inc. v. David Weekley Homes, LLC, 2007 WL 1080001, at * 3 (M.D. Fla. 2007) (holding no personal jurisdiction over individual shareholder of corporation because complaint was devoid of allegations sufficient to warrant piercing corporate veil).  If a subsidiary, however, is acting as an agent of a foreign parent corporation, then the parent corporation is subject to personal jurisdiction by virtue of doing business in the forum through the subsidiary.  Meier, 288 F.3d at 1272.  YPPI has shown through its counter-declarations pertaining to correspondence and the annual reports of Yellow Media that the identities of Yellow Media and YPG are blurred at best. Examples include the following: (1) Indiana's public records list YPG's address in Quebec, Canada, the same as Yellow Media's; (2) emails from Yellow Media's employees Treena Cooper and Jamie Clark to YPPI show YPG (not Yellow Media) in the

---

[47]   YPPI readily admits that its complaint seeks only vicarious, not contributory, liability against Yellow Media.  See docket 36, p. 2 at footnote 1.

signature line; (3) Yellow Media's profile states that it publishes print telephone

directories "through YPG;" (4) at least one individual is both a board member of Yellow

Media and the president and CEO of YPG; (5) Yellow Media advertises office locations

in Indiana and Pennsylvania, the places of business for YPG; and (6) annual reports show

substantial revenues of Yellow Media attributed to U.S. customers.[48]  YPPI should be

given the opportunity to take discovery with respect to the extent of Yellow Media's

control over YPG, contacts with the U.S., and knowledge of YPPI's copyrighted

photographs.

It is also correct that financial or economic injury, standing alone, does not confer

personal jurisdiction over a non-resident defendant for acts occurring outside the state

pursuant to section 48.193(1)(f).  Sculptchair, 94 F.3d at 629 (holding in a patent

infringement case that personal or property injury must accompany the economic

injury).[49]  While a copyright is considered some "form[] of property,"[50] it is generally

_____

[48]  See docket 37, Exhs. 1-7.

[49]  See also Rogers v. Nacchio, 241 Fed. App'x 602, 606 (11th Cir. 2007)
(unpublished opinion) (holding that allegations in securities fraud case did not claim
physical or property damage in Florida); Mainline Info. Sys., Inc. v. Fordham, 2011 WL
2038692, at *4 (N.D. Fla. 2011) (finding no jurisdiction under 48.193(1)(f) in case filed
by former employer against former employee for using trade secrets and violating
noncompete agreement, for failure to plead more than financial or economic injury);
Response Reward Sys., L.C. v. Meijer, Inc., 189 F.Supp.2d 1332, 1337 (M.D. Fla. 2002)
(referring to a case involving patent infringement).

[50]  See Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc., 1998 WL
1759759, at *5 (M.D. Fla. 1998) (citing Borden v. Katzman, 881 F.2d 1035, 1038 (11th
Cir. 1989)).

considered an intangible property.[51]  Whether a copyright would itself be considered the

type of property subject to being injured for purposes of personal jurisdiction under

section 48.193(1)(f) has not been specifically examined.[52]  This Court need not undertake

that exercise based on the allegations of this complaint because it is not alleged under

48.193(1)(f) that Yellow Media "engaged in solicitation or service activities within this

state" or that Yellow Media "processed, serviced or manufactured" products, materials or

things within the state.

The Court finds, however, that YPPI does not sufficiently allege in the amended

complaint the agency relationship between Yellow Media and YPG, and should be given

the opportunity to replead with respect to Yellow Media to clarify the basis of personal

jurisdiction.[53]  YPPI should also be permitted to take limited discovery, as requested, on

personal jurisdiction.  After limited jurisdictional discovery has been completed, should

---

[51]   In a copyright case, a district court noted that "the situs of intangible property is about as intangible a concept as is known to the law."  Films by Jove, Inc. v. Berov, 341 F.Supp.2d 199, 207 (E.D. N.Y 2004) (quoting Tabacalera Severiano Jorge v. Standard Cigar Co., 392 F.2d 706, 714 (5th Cir. 1968)).

[52]   Some courts have found that allegations of copyright infringement by distribution constitute only economic injury.  Nu Image, Inc. v. Does 1-3,932, 2012 WL 1890854, at *4 (M.D. Fla. 2012); Barrocos, 2012 WL 1622988, at *4.  Contra Precision, 1998 WL 1759759, at *5 (finding personal jurisdiction in Florida under 48.193(1)(f) and (1)(b) for copyright infringement where Oregon infringer shipped infringing products to Florida; time and place of injury was when and where product was "passed off").

[53]   See, e.g., Hakky v. Washington Post Co., 2010 WL 2573902 at *7 (M.D. Fla. 2010) (permitting amending complaint to allege theory of liability against holding company of subsidiary based on agency and obtaining discovery to establish personal jurisdiction over holding company).

Yellow Media refile a motion to dismiss any newly-filed amended complaint based on lack of personal jurisdiction, it should be prepared to address why federal jurisdiction under Rule 4(k)(2), if plead in the amended complaint as a basis for personal jurisdiction, would not be appropriate in this case.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)     Defendant Yellow Pages Group, LLC's Motion to Dismiss for Lack of Jurisdiction or for a More Definite Statement (Dkt. 11) is **DENIED.**

(2)     Defendant Yellow Media, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or for a More Definite Statement (Dkt. 28) is **GRANTED**. Plaintiff shall file an amended complaint with respect to Yellow Media within ten (10) days from the date of this order.

(3)     Discovery limited to personal jurisdiction over Yellow Media is hereby granted up to and including sixty (60) days from the date of this order. After the expiration of the limited discovery period, Yellow Media may file a renewed motion to dismiss based on a lack of personal jurisdiction.

(4)     Defendant YPG shall file its answer to the amended complaint within ten (10) days from the date of its filing.

**DONE AND ORDERED** at Tampa, Florida, on July 19 , 2012.

_s/Richard A. Lazzara_
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record