# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

```
--------------------------------------------------------  )
YELLOW PAGES PHOTOS, INC.,                                 )
                                                           )
                    Plaintiff,                             )
                                                           )
vs.                                                        )    Case No.: 8:12 cv-755
                                                           )
                                                           )
                                                           )
                                                           )
                    Defendants.                            )
--------------------------------------------------------  )
```

## YELLOW PAGES GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT <u>PURSUANT TO FED. R. CIV. P. 12(b)(6) AND REQUEST FOR ORAL ARGUMENT</u>

**Table of Contents**

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT ALLEGATIONS IN THE SECOND AMENDED COMPLAINT .............. 5

III.    ARGUMENT ................................................................................................... 10

      A.     Because YPPI Has Failed Properly to Plead That the Shrink Wrap EULA
Was Accepted, Supported by Consideration, or that YPPI Performed
Under It, YPPI Has Failed to State a Claim for Copyright Infringement ............ 10

      B.     YPPI Has Not Alleged That there was any "Accompanying Compact
Disc" and Therefore Has Failed to State a Claim for Copyright
Infringement ........................................................................................................ 16

IV.    CONCLUSION .............................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
  416 F.3d 1242 (11th Cir. 2005) .......................................................................11

*Amar Shakti Enters., LLC v. Wyndham Worldwide, Inc.*,
  2011 U.S. Dist. LEXIS 93676 (M.D. Fla. Aug. 19, 2011) ......................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662,129 S. Ct. 1937 ...............................................................10, 11, 12

*Ashraf v. Swire Pac. Holdings, Inc.*,
  752 F. Supp. 2d 1266 (S.D. Fla. 2009) ...............................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007)........................................................11, 12, 15

*Bland v. Freightliner LLC*,
  206 F. Supp. 2d 1202 (M.D. Fla. 2002)...............................................................12

*Davidpur v. Counne*,
  972 So. 2d 891 (Fla. 3d DCA 2007) ...................................................................13

*Farrell v. United States Cong.*,
  2009 U.S. Dist. LEXIS 128973 (M.D. Fla. May 21, 2009).........................4, 12, 14

*Farrell v. United States Cong.*,
  2009 U.S. Dist. LEXIS 49360 (M.D. Fla. June 8, 2009)............................4, 12, 14

*Hodge v. Orlando Utilities Comm.*,
  2009 U.S. Dist. LEXIS 770094 (M.D. Fla. Aug. 28, 2009) ............................11, 12

*Holland v. Levy Premium Foodservice Ltd. P'ship*,
  2012 U.S. App. LEXIS 6957 (11th Cir. Apr. 6, 2012) ..................................4, 11, 14

*J.J. Gumberg Co. v. Janis Servs. Inc.*,
  847 So. 2d 1048 (Fla. 4th DCA 2003) ...............................................................12

*MDY Indus., LLC v. Blizzard Entm't , Inc.*,
  2011 U.S. App. LEXIS 3428 (9th Cir. Feb. 17, 2011) ...........................................17

*Pineda v. PRC, LLC*,
  2011 U.S. Dist. LEXIS 80230 (S.D. Fla. July 22, 2011)................................ passim

*Renslow v. Capital One Servs.*,
   343 Fed. Appx. 457 (11th Cir. 2009)...............................................................14

*Sinaltrainal v. Coca-Cola Co.*,
   578 F.3d 1252 (11th Cir. 2009) ...............................................10, 11, 12, 15

*St. Joe Corp. v. McIver*,
   875 So.2d 375 (Fla. 2004)...............................................................12

*Sulkin v. All Florida Pain Management, Inc.*,
   932 So.2d 485 (Fla. 4th DCA 2006)...............................................................12

*Vega v. T-Mobile USA, Inc.*,
   564 F. 3d 1256 (11th Cir. 2009) ...............................................................12

*Warfield v. Stewart*,
   2007 U.S. Dist. LEXIS 99451 (M.D. Fla. Oct. 3, 2007) ...........................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8...............................................................11

## I.    INTRODUCTION[1]

Yellow Pages Photos, Inc.'s ("YPPI") copyright claim against Yellow Pages Group, LLC ("YPG") is based on the premise that Ziplocal entered into a license agreement whereby (1) it was precluded from transferring photos to nonemployees and (2) the putative license agreement automatically terminated when the photos were transferred.  In so claiming, plaintiff relies upon a document that it labels as an "agreement," but this document contains an offer that plaintiff fails to allege was accepted, and, moreover, plaintiff fails to allege that any such agreement would have been supported by consideration.  After *Iqbal/Twombly* merely labeling something as an "agreement" without pleading facts supporting every element is insufficient.  Because YPPI has failed properly to allege any *agreement* between YPPI and Ziplocal containing a bar on transferring photos to nonemployees or an automatic termination provision,  it has failed to state a claim that Ziplocal and YPG became unlicensed to use the photos.

Confusingly, Plaintiff has attached to the Second Amended Complaint ("SAC") documents that make it clear that Ziplocal was and remains licensed to use plaintiff's photos. First, there is a 2004 Purchase Agreement between plaintiff and Ziplocal's predecessor, Phone Directories Company, for which Ziplocal paid about $92,499.93 (9 X $10,277.77) and which provides Phone Directories Company with a permanent and unlimited right to reproduce, use, upload, and publish plaintiff's photos.  SAC ¶ 23 & its Exh. 45 at first unnumbered page; Ex. A hereto.  These rights "remain[] in effect permanently" and apply to "all current titles" as well as future ones sent in 9 monthly installments by plaintiff to Phone Directories Company.  Ex. A. The 2004 Purchase Agreement contains no prohibition on transfer of the photos to nonemployees of Ziplocal's and no automatic termination provision.

---

[1] YPG requests oral argument on this motion.

Next, the 2009 amendment to the 2004 Purchase Agreement ("the 2009 Amendment") confirms that Ziplocal still has a license to the photos.  Ex. 23 & Ex. 45 at 4th-6th unnumbered pages; Ex. B hereto.  The amendment states that "[a]ll images supplied to date are satisfactory and all invoices for images delivered to date have been paid in full" and that Phone Directories Company "may continue to use all images purchased under the terms of the License agreement, which remains unmodified."  *Id.*  Ex. B at second unnumbered page.  It also provides for the purchase of another 2,200 images at a "total purchase price" of $50,160.00.  *Id.*  Based upon a plain reading of these two documents, Ziplocal obtained a permanent, unlimited license to plaintiff's stock photos for about $140,000.

Sandwiched in between the 2004 Purchase Agreement and the 2009 Amendment to the 2004 Purchase Agreement, however, plaintiff has placed an undated, unsigned shrink wrap end user license agreement ("the Shrink Wrap EULA").  SAC Ex. 45 at 2d-3d unnumbered page; Ex. C hereto.  Curiously, plaintiff alleges nothing about this piece of paper.  On its face, the Shrink Wrap EULA is unrelated to the 2004 Purchase Agreement and its 2009 Amendment, and it is puzzling that plaintiff chose to make a "composite exhibit" that would include this document together with the two signed, dated agreements.  Whereas the 2004 Purchase Agreement and the 2009 Amendment pertain to all photos sold by YPPI to Phone Directories Company, by its express terms, the Shrink Wrap EULA only pertains to "the use of the stock photographs *contained on the accompanying Compact Disc,*" yet plaintiff never alleges that there was an "accompanying Compact Disc."  Ex. C.  Also by its express terms, acceptance of this offer can only be made by opening the accompanying package, something that plaintiff does not allege ever took place.  *Id.*

2

Having failed to allege acceptance, plaintiff also fails to allege consideration.  After all, Phone Directories Company had already paid for and received broad rights to all of plaintiff's photos—unlimited and permanent use—pursuant to the 2004 Purchase Agreement and its 2009 Amendment, so it is implausible that Phone Directories Company would ever agree—in exchange for nothing--to impose on itself onerous limitations on its use of the photos for which it had already paid more than $140,000.  Indeed, the effect of the restriction on use by nonemployees in the Shrink Wrap EULA would be to render worthless the 2004 Purchase Agreement and the $140,000 paid for it since Ziplocal did not have the production resources provided by YPG and therefore needed to outsource them.

As noted, plaintiff's claims are based on the unstated premise that the Shrink Wrap EULA *was* somehow in effect:  Plaintiff alleges that "[p]ursuant to the terms of the License Agreement, neither the license nor the licensed Works can be transferred to third parties, and use of the licensed Works is limited to employees of Ziplocal." SAC ¶ 23.  Again, plaintiff's reference to a "License Agreement" is confusing, since no such provision can be found in the 2004 Purchase Agreement or the 2009 Amendment.  The reference is, apparently, to the unaccepted Shrink Wrap EULA.  Similarly, plaintiff's claim that "Ziplocal's license to use the Works terminates automatically and without notice," *id.* at ¶ 25, is not based on any provision in the 2004 Purchase Agreement, and also cannot be found in the unaccepted Shrink Wrap EULA, since its automatic termination provisions only apply to the photos "on the accompanying Compact Disc," not "the Works."[2]

---

[2] Plaintiff defines the "Works" as the thousands of photos it has deposited with the Copyright Office.  SAC ¶ 21 & Exhs. 1-44.  Per the 2004 Purchase Agreement, plaintiff would put only 50 photos on a CD, Ex. A, so even if the Shrink Wrap EULA had been accepted, its automatic termination provision would only have applied to the 50 photos on "the accompanying Compact

To rely on terms in a purported contract, a plaintiff must allege facts sufficient to support the conclusion that all the requirements for a valid contract have been met. *Holland v. Levy Premium Foodservice Ltd. P'ship*, 2012 U.S. App. LEXIS 6957 *2 (11th Cir. Apr. 6, 2012) (affirming dismissal of contract claim where the plaintiffs did not provide factual assertions supporting their contract claim); *Farrell v. United States Cong*., 2009 U.S. Dist. LEXIS 128973, *5-6 (M.D. Fla. May 21, 2009), *adopted at* 2009 U.S. Dist. LEXIS 49360 (dismissing case for failure to state a claim where plaintiff failed to allege all four elements of a valid contract).  This includes acceptance and consideration.  *Pineda v. PRC, LLC*, 2011 U.S. Dist. LEXIS 80230 (S.D. Fla. July 22, 2011) (plaintiff must allege facts supporting all elements of contract claim; failure to allege facts supporting acceptance and consideration warrants dismissal of claim).  Since plaintiff has failed to allege such facts, plaintiff has failed properly to plead that Ziplocal ever agreed to any of the terms in the Shrink Wrap EULA.  To the contrary, Ziplocal paid for and received "unlimited" and "permanent" rights to use the photos under the 2004 Purchase Agreement—an agreement that plaintiff does not allege was ever terminated.  Accordingly, Ziplocal remains licensed and plaintiff has failed to state a claim for copyright infringement against YPG.

Moreover, plaintiff never alleges that there was an "accompanying Compact Disc" and, if so, which photos were on it.  If the Shrink Wrap EULA had been accepted and if it would have been supported by consideration, then—by its express terms--its automatic termination provisions would only have applied to that one particular accompanying disk, and not to the CDs delivered under the 2004 Purchase Agreement and 2009 Amendment.  Although plaintiff has attached to the SAC numerous registrations with the Copyright Office relating to thousands of

---

Disc," not "the Works."  But, as noted, plaintiff never alleges that there was an "accompanying Compact Disc."

photos, SAC ¶¶ 18, 21 and Exhs. 1-44 thereto, plaintiff does not allege that the particular photos

on the "accompanying Compact Disk" (if there was one) are among these thousands of photos or

that they were ever transferred by Ziplocal to YPG.  If Ziplocal did not transfer to YPG any

photos that were on an accompanying compact disc and YPG did not reproduce those photos,

then Ziplocal did not violate any license term and both Ziplocal and YPG remain licensed.  Since

YPPI has failed to allege that any photos on an "accompanying Compact Disc" were transferred

to nonemployees and reproduced by YPG, for this reason as well plaintiff has failed to state a

claim for copyright infringement against YPG.

## II.    RELEVANT ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Plaintiff claims to own many thousands of stock photos for use in phone directories.

SAC ¶¶ 16-23.  Ziplocal is a phone directory publisher.  SAC ¶ 1.  YPG is an outsourcing

provider that creates and procures advertisements for Ziplocal.  *Id.*  YPPI claims that YPG

infringed YPPI's copyright(s) because, although Ziplocal was licensed to use YPPI's photos,

Ziplocal allegedly was not permitted to transfer the licensed photographs to any nonemployees

even for the purpose of preparing the photos for Ziplocal's directories:  "Pursuant to the terms of

the License Agreement, neither the license nor the licensed Works can be transferred to third

parties, and use of the licensed Works is limited to employees of Ziplocal." (SAC ¶ 25).  YPPI

alleges that, once photos were transferred by Ziplocal to YPG so that YPG could help prepare

them for publication, "Ziplocal's license to use the Works terminates automatically and without

notice, whereupon all copies of the Works must be returned to Plaintiff and publishing of the

Works must cease."  SAC ¶ 25.  YPPI then alleges that "Ziplocal has furnished CDs and/or

electronic files including some or all of the Works and/or access to and use of some or all of the

Works to YPG," SAC 26.  Because the YPPI-Ziplocal license supposedly terminated

"automatically and without notice," YPG allegedly became a copyright infringer at the moment that Ziplocal transferred photos to it for prepublication processing.  SAC 27, 28.

For YPPI's theory of copyright infringement by YPG to be tenable, therefore, YPPI needed to have properly alleged that (1) there was a contract entered into by YPPI and Ziplocal, (2) that this contract in fact provided that it would automatically terminate if Ziplocal transferred photos subject to the contract to any nonemployees, and (3) that photos that were in fact subject to that contract were provided by plaintiff to Ziplocal and then transferred by Ziplocal to YPG for use by YPG, in violation of those purported terms of a valid agreement.  The Second Amended Complaint fails, however, properly to make such allegations and it therefore fails to state a claim of copyright infringement against YPG.

The key to understanding this is paragraph 23 of the SAC and Exhibit 45.  As noted, YPPI alleges that the "License Agreement" precludes transfer of the photos by Ziplocal to nonemployees.  In fact, only one of the three documents that comprise Exhibit 45 says anything like that.  But that document, on its face, was only an offer, and plaintiff has not pled that it was ever accepted or that there would have been consideration for such an agreement, even if it had been accepted.

Paragraph 23 of the SAC defines as the "License Agreement" what are, in fact, three separate documents attached as Exhibit 45.  Tellingly, plaintiff alleges nothing about the circumstances relating to these three documents; plaintiff merely attaches them and then defines them as "License Agreement."  Two of the documents are dated and appear to be signed by officers of both respective companies—one in 2004 and one in 2009.  The third document is undated and unsigned.  The signed, dated documents are related, being a 2004 "Site License Purchase Agreement" ("the 2004 Purchase Agreement") and its second amendment, dated April

6

22, 2009 ("the 2009 Amendment").  (For some reason, Plaintiff fails to attach the first

amendment to the Site License Purchase Agreement.  A copy of it is attached hereto as Ex. D.)

In between the 2004 Purchase Agreement and its second amendment, however, there

inexplicably appears at Exhibit 45 the undated, unsigned document entitled "Yellow Pages

Photos, Inc. End User License Agreement For Phone Directories Company" ("the Shrink Wrap

EULA").  Plaintiff does not allege when the document dates from, whether it was ever sent to

Phone Directories Company, when it was sent (if it was), whether anything accompanied it (if it

was sent), and whether what accompanied it (if it was sent with something attached) was among

the "Works" as defined in the SAC.

A review of the terms of the 2004 Purchase Agreement as compared with those of the

undated, unsigned Shrink Wrap EULA makes it immediately clear that, not only are these not

one agreement, but that the Shrink Wrap is only an offer and that several of its material terms are

in direct conflict with those of the 2004 Purchase Agreement.

The 2004 Purchase Agreement is expansive in the granting of its rights to Ziplocal.  First,

it covers "all" sites and an "unlimited" number of users.  Moreover, it expressly authorizes

Ziplocal "to upload all images to a server to facilitate multiple user simultaneous access to

images for all artists."  Ex. A.  Further, the 2004 Purchase Agreement provides that "[t]here is no

restriction as to what type of server or information system is used to facilitate multiple user

simultaneous access so long as the information and images are protected from theft or

unauthorized distribution to unlicensed users."  *Id.*

The 2004 Purchase Agreement also provides that the images "may be used in as many

directories as many times as necessary" and that "[t]here is no limit to the number of times a

particular photo may be used."  Ex. A.  Importantly, the 2004 Purchase Agreement "remains in

effect permanently and is only cancelable upon violation of the license agreement." It notes that "[t]here are no annual or renewal fees associated with this agreement." *Id.* The agreement further provides that "[i]mages are royalty free and may be used in as many directories as many times as necessary." *Id.* As for prices, the charge for permanent, unlimited use of these photos was $875 per CD, with each CD containing fifty images. *Id.* The 2004 Purchase Agreement was signed by the CEO of Phone Directories Company, John Woodall, and the owner of YPPI, Trent Moore. *Id.*

The 2009 Amendment refers expressly to the March 15, 2004 Purchase Agreement: "WHEREAS, Supplier and PDC Pages entered into an agreement on March 15, 2004." *Id.* It then notes that "Supplier and PDC Pages desire to amend the agreement as hereinafter set forth." *Id.* Notably, the amendment does not refer to the Shrink Wrap EULA. The 2009 Amendment then provides that PDC Pages LLC is to pay $50,160.00 more for compilations containing 2,200 images. *Id.* It notes further that "PDC [P]ages may continue to use all images purchased under the terms of the License agreement, which remains unmodified." *Id.* YPPI has not alleged that Ziplocal breached any provision of the 2004 Purchase Agreement or of the 2009 Amendment, nor would an allegation of any such breach be supported by any factual allegations in the complaint.

The Shrink Wrap EULA is, in contrast to the 2004 Purchase Agreement and the 2009 Amendment, undated and unsigned. Ex. C. Moreover, on its face, it requires Phone Directories Company to accept all the terms and conditions before it goes into effect, with acceptance occurring only upon the opening of the package containing the accompany CD: "YPPI [l]icenses the attached Stock Photo CD's to Phone Directories Company as the end user upon the condition that you accept all of the terms and conditions contained in the Customer License Agreement

(the 'agreement').  Please read all of the conditions set forth with great care, as once the package

is opened this indicates your acceptance of the terms and conditions set forth.  If you do not

agree with these conditions YPPI does not grant license [sic] and you should return the unopened

packages within 10 days for a full refund."  Ex. C.  Notwithstanding the reference to a "refund,"

the Shrink Wrap EULA says nothing about whether and how much Phone Directories Company

is being charged for the "accompanying Compact Disc."

      The Shrink Wrap EULA contains other important terms that are materially different from

those in the 2004 Purchase Agreement.  Whereas the 2004 Purchase Agreement provides that the

number of users is "unlimited" and that "all" sites are covered, the Shrink Wrap Document states

that it is a "40 user unlimited access site license agreement."  *Id.*  Moreover, the Shrink Wrap

EULA is limited to the "stock photographs contained on the accompanying Compact Disc."  *Id.*

By contrast, the 2004 Purchase Agreement applies to all images provided by YPPI to Ziplocal.

Ex. A.

      Finally, while the 2004 Purchase Agreement provided that it "remains in effect

permanently and is only cancelable upon violation of the license agreement," Ex. A, the Shrink

Wrap EULA provides that "failure to comply with any term or condition in this agreement then,

[sic] terminates this agreement automatically and without notice.  Once terminated all copies of

the photos will be returned and publishing will cease."  Ex. C.

      The insertion of the Shrink Wrap Document between the 2004 Purchase Agreement and

its 2009 Amendment naturally raises a number of questions:  Was the Shrink Wrap Document

ever sent to Phone Directories Company?  If so, when and to whom?  If it was sent, which

particular Compact Disc did it accompany?  If it was sent and accompanied one or more

Compact Discs, which ones were opened, thereby arguably indicating acceptance?  Which ones,

if any, of the Compact Discs that were accompanied by a Shrink Wrap Document contained any photos that Ziplocal or YPG is alleged to have infringed? In short, what is this document? None of these questions is answered by the SAC.

## III. ARGUMENT

### A. Because YPPI Has Failed Properly to Plead That the Shrink Wrap EULA Was Accepted, Supported by Consideration, or that YPPI Performed Under It, YPPI Has Failed to State a Claim for Copyright Infringement

The 2004 Purchase Agreement provides that Ziplocal's predecessor Phone Directories Company was licensed to use the photos, and plaintiff never alleges that the 2004 Purchase Agreement was ever terminated. Ex. A. The only reason that YPPI alleges that Ziplocal ceased to be licensed notwithstanding its purchase for over $140,000 of permanent rights for unlimited use of YPPI's stock photos is the provisions in the Shrink Wrap EULA that relate to use by nonemployees and to automatic termination of the EULA. SAC ¶¶ 23, 25, 40. The copyright claims against Ziplocal and YPG depend entirely on the premise that, at some unstated time for some unstated reason, Ziplocal must have agreed to this limitation on its rights, and that it then breached this term by supplying photos to YPG for production services. SAC ¶¶ 39, 40, 41. Yet YPPI does not allege that Ziplocal's predecessor Phone Directories Company ever accepted the terms of the Shrink Wrap EULA or that there would have been consideration for such an agreement. Nor does plaintiff allege that it performed its side of the bargain pursuant to the Shrink Wrap EULA.

Although the Court must accept well-pled facts as true, the Court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662,129 S. Ct. 1937, 1949 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260-1261

10

(11th Cir. 2009); *Hodge v. Orlando Utilities Comm.*, 2009 U.S. Dist. LEXIS 770094 *2 (M.D.

Fla. Aug. 28, 2009). "In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable

inferences in Plaintiff's favor, 'but we are not required to draw plaintiff's inference.'"

*Sinaltrainal,* 578 F.3d at 1260-1261, *quoting Aldana v. Del Monte Fresh Produce, N.A., Inc.*,

416 F.3d 1242, 1248 (11th Cir. 2005). Conclusory allegations and unwarranted deductions of

fact are not entitled to be assumed true. *Sinaltrainal,* 578 F.3d at 1260-1261; *Iqbal*, 556 U.S. at

681.

   If a complaint does not allege facts that support a claim that is plausible on its face, it

should be dismissed. *Sinaltrainal,* 578 F.3d at 1260-1261; *Iqbal*, 556 U.S. at 679 (explaining

that "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570, 127 S. Ct. 1955, 1968-69, 1974 (2007)

(retiring  the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts"

standard).  A complaint "requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.  For

purposes of adequately stating a claim under Fed. R. Civ. P. 8, "threadbare recitals" and

"conclusory" allegations are insufficient.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. 544, 555;

*Hodge*, 2009 U.S. Dist. LEXIS 77094 *6 (conclusions in pleadings are not entitled to the

assumption of truth).  "[A] complaint that provides only naked assertions devoid of further

factual enhancement is insufficient as a matter of law." *Holland v. Levy Premium Foodservice

Ltd. P'ship*, 2012 U.S. App. LEXIS 6957 (11th Cir. Apr. 6, 2012) (*quoting Iqbal*, 556 U.S. at

678).

   Although factual allegations are not required to be detailed, they nonetheless "must be

enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Iqbal,*. 556 U.S. at 555 (internal

citations and emphasis omitted); *Sinaltrainal,* 578 F.3d at 1260-1261.  A complaint must state a

plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 663.  "The mere possibility the defendant acted

unlawfully is insufficient to survive a motion to dismiss.  The well-pled allegations must nudge

the claim 'cross the line from conceivable to plausible.'"  *Sinaltrainal,* 578 F.3d at 1260-1261,

*quoting Twombly*, 550 U.S. at 570.

Under Florida law, the elements of a breach of contract claim are (1) a valid contract, (2)

material breach, and (3) damages.  *J.J. Gumberg Co. v. Janis Servs. Inc.*, 847 So. 2d 1048, 1049

(Fla. 4th DCA 2003); *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. 2002);

*Sulkin v. All Florida Pain Management, Inc*., 932 So.2d 485, 486 (Fla. 4th DCA 2006).  A valid

contract requires "offer, acceptance, consideration, and sufficient specification of essential

terms." *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004).  "To allege the first element,

the existence of a valid contract, a Plaintiff must show: '(1) offer; (2) acceptance; (3)

consideration; and (4) sufficient specification of the essential terms.'"  *Pineda*, 2011 U.S. Dist.

LEXIS 80230, *quoting Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1272 (11th Cir. 2009);

*Farrell*, 2009 U.S. Dist. LEXIS 128973 *5-6, *adopted at* 2009 U.S. Dist. LEXIS 49360 (M.D.

Fla., June 8, 2009) (motion to dismiss granted where insufficient facts were alleged to support

claim of breach of contract).  Plaintiff is required to plead factual content that plausibly

establishes each element of its claim.  *Hodge,* 2009 U.S. Dist. LEXIS 77094 *6.

Plaintiff's reliance on the Shrink Wrap EULA without any additional factual allegations

is insufficient to establish that it was a valid contract.  First, the Shrink Wrap EULA states on its

face that it must be accepted in order to go into effect, stating the manner in which acceptance must be made:  "once the package is opened this indicates your acceptance of the terms and conditions set forth.  If you do not agree with these conditions YPPI does not grant license …."  Yet YPPI has not alleged that it ever sent Phone Directories Company either the Shrink Wrap EULA or an "accompanying Compact Disc" in an accompanying package.  Nor has YPPI alleged that Phone Directories Company opened any package accompanying the Shrink Wrap EULA or otherwise accepted its terms.[3]  Without acceptance, a contract is not formed.  *Pineda*, 2011 U.S. Dist. LEXIS 80230 * 10-11.

Second, plaintiff fails to allege consideration for agreeing to the Shrink Wrap EULA.  Given that Phone Directories Company had already received permanent, unlimited rights to the photos, it is difficult to imagine how there could have been consideration for it to agree to a substantial restriction on its rights in exchange for nothing in return.[4]  *Davidpur v. Counne*, 972 So. 2d 891, 892 (Fla. 3d DCA 2007) (an agreement to do what one is already legally bound to do is not sufficient consideration).

Third, plaintiff has failed to allege that it performed pursuant to the Shrink Wrap EULA—i.e., it fails to allege that it delivered the "accompanying Compact Disc" to Phone Directories Company.  *Warfield v. Stewart*, 2007 U.S. Dist. LEXIS 99451 * 16 (M.D. Fla. Oct. 3, 2007) (to maintain an action for breach of contract, claimant must prove performance of its obligations under the contract or a legal excuse for its nonperformance).

---

[3] YPG does not concede the validity of the shrink wrap EULA, even if it had been "accepted" as specified therein. For present purposes, that issue need not be addressed, since YPPI has failed to allege acceptance, or consideration.

[4] This is where YPPI's failure to say whether there was an "accompanying Compact Disc" and, if so, what was on it gets interesting.  If that disc had photos that Ziplocal had already received and paid for under the 2004 Purchase Agreement, it was literally getting nothing in exchange for a restriction on its rights.  Even though YPPI must know whether it sent a disc and, if so, what was on it, the SAC says nothing on this subject.

Accordingly, YPPI has failed to provide factual allegations supporting its assertion that the Shrink Wrap EULA was a contract—that it was accepted, that it was supported by consideration, and that YPPI performed under it--and dismissal is therefore warranted. *Holland*, 2012 U.S. App. LEXIS 6957 *2 (affirming dismissal of contract claim where the plaintiffs did not provide factual assertions supporting their contract claim); *Pineda*, 2011 U.S. Dist. LEXIS 80230 (plaintiff must allege facts supporting all the elements of a contract claim; failure to allege facts supporting acceptance and consideration warrants dismissal of claim); *Farrell,* 2009 U.S. Dist. LEXIS 128973, *5-6, *adopted at* 2009 U.S. Dist. LEXIS 49360 (dismissing case for failure to state a claim where plaintiff failed to allege all four elements of a valid contract). Without having properly alleged such an agreement, there is no basis for YPPI's conclusory claim that Ziplocal's rights under the 2004 Purchase Agreement terminated, and no basis for YPPI's claim that the alleged transfer of photos to YPG constituted a breach—there was no agreement that could be breached.

YPG expects that YPPI will point to paragraph 23 of the SAC and argue that it is sufficient that it alleged that there were "a series of agreements attached [to the SAC] as Composite Exhibit 45." Since at least *Iqbal/Twombly*, however, such an argument is not tenable. First, on motions to dismiss, courts go beyond mere labels and conclusions and examine the terms of any contractual documents attached to the complaint to determine whether the claims asserted in the complaint are plausible. *Renslow v. Capital One Servs.*, 343 Fed. Appx. 457, 460 (11th Cir. 2009) (affirming 12(b)(6) dismissal because the unambiguous written contracts foreclose recovery); *Amar Shakti Enters., LLC v. Wyndham Worldwide, Inc*., 2011 U.S. Dist. LEXIS 93676, *14-15 (M.D. Fla. Aug. 19, 2011) (dismissing breach of contract claim where franchise agreements did not contain any language affording remedy); *Ashraf v. Swire Pac.*

*Holdings, Inc.*, 752 F. Supp. 2d 1266, 1270 (S.D. Fla. 2009) (dismissing complaint with prejudice where "insufficient factual allegations" and the "plain language of the Agreement" foreclosed relief).

Here, when one examines the document upon which YPPI's claims is based—the Shrink Wrap EULA—one realizes that it cannot be a contract unless it was accepted and was supported by consideration, elements that are not alleged and certainly not supported by any factual allegations.  Moreover, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.  At best, all YPPI has done is append the label "license agreement" to the Shrink Wrap EULA.  This does not suffice.  Having failed to allege any facts at all about the Shrink Wrap EULA, YPPI has not alleged sufficient facts "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S. Ct. at 1964-65 (internal citations and emphasis omitted); *Sinaltrainal,* 578 F.3d at 1260-1261.

Finally, YPPI has failed to assert facts that would make its claim plausible.  As it stands, the claim is utterly implausible:  It makes no sense that Ziplocal would have agreed to the restrictions on its rights contained in the EULA given that it already had paid over $140,000 for an unlimited, permanent license to all of plaintiff's licensed stock photos.  Since YPPI has alleged nothing at all about the EULA, much less a reason why Ziplocal would have wanted to restrict the rights it had already paid for, plaintiff has failed to "nudge the claim 'across the line from conceivable to plausible.'" *Sinaltrainal,*  578 F.3d at 1260-1261, *quoting* Twombly, 550 U.S. at 570.

As noted, YPPI's claim of copyright infringement is based entirely on the theory that "neither the license nor the licensed Works can be transferred to third parties, and use of the licensed Works is limited to employees of Ziplocal." SAC ¶ 25. The source for this claim is language that appears solely in the Shrink Wrap EULA. But YPPI has not pleaded that (1) the Shrink Wrap EULA was ever sent, (2) that it ever accompanied any disc containing photos that are among the Works, or (3) that it was ever accepted by Ziplocal. Since YPPI has not properly pled that the Shrink Wrap EULA was ever agreed to by Ziplocal, it has not properly alleged that Ziplocal breached a license when it allegedly transferred photos to YPG, and plaintiff has therefore failed to state a claim for copyright infringement.

**B.      YPPI Has Not Alleged That There Was any "Accompanying Compact Disc" and Therefore Has Failed to State a Claim for Copyright Infringement**

Under the 2004 Purchase Agreement, Ziplocal received permanent, unlimited rights to all photos provided by YPPI thereafter. Ex. A. This was confirmed in the 2009 Amendment, which noted that Ziplocal had made all payments in full, and which provided that additional photos would be provided with the same permanent and unlimited rights. Ex. C. By its terms, the Shrink Wrap EULA applies only to "the accompanying Compact Disc." Even if YPPI had alleged that the Shrink Wrap EULA had been sent with an accompanying compact disc, and even if the Shrink Wrap EULA were accepted, the 2004 Purchase Agreement still remained in effect with respect to all the many other compact discs that did not accompany the Shrink Wrap EULA. But because YPPI never says whether there was an "accompanying Compact Disc," YPPI has not alleged that any photos subject to the shrink wrap EULA were in fact transferred by Ziplocal to YPG. Although YPPI's SAC refers to copyright registrations for over 11,000 images, YPPI never alleges that any of *those* images were sent to Phone Directories Company with the Shrink Wrap EULA on any "accompanying Compact Disc."

The importance of this point is hard to overstate.  The SAC expends great detail in listing the many categories of YPPI's stock photos, and listing numerous copyright office registrations and deposits.  SAC ¶¶ 18, 21 & its Exhs. 1-44.  These registrations involve many thousands of photos.  YPPI vaguely implies, but does not actually allege, that all the "Works" are subject to the Shrink Wrap EULA:  "[U]pon Ziplocal's failure to comply with any term or condition of the License Agreement, Ziplocal's license to use the Works terminates automatically and without notice, whereupon all copies of the Works must be returned to Plaintiff and publishing of the Works must cease."  SAC ¶ 25.  But that is plainly incorrect:  The automatic termination provision is only found in the Shrink Wrap EULA, which plaintiff fails to allege was ever accepted.  And even if it had been accepted, the automatic termination provision only applies to those photos on an "accompanying Compact Disc," not the many thousands of photos comprising "the Works."  Since YPPI never alleges that there was an accompanying Compact Disc, YPPI has not alleged that any of the Works subject to the EULA were transferred by Ziplocal to YPG.  This means that, even if the Shrink Wrap EULA were a binding agreement, it is irrelevant.  Without alleging a transfer by Ziplocal to YPG of photos on the "accompanying Compact Disc," plaintiff has not alleged a violation of the "transfer" restriction; any use therefore remains licensed and not a copyright violation. *MDY Indus., LLC v. Blizzard Entm't , Inc.*, 2011 U.S. App. LEXIS 3428, *17 (9th Cir. Feb. 17, 2011) (to recover for copyright infringement based on breach of a license agreement, copying must exceed scope of defendant's license).

## IV.   CONCLUSION

For the foregoing reasons, YPG respectfully requests that plaintiff's copyright infringement claim against YPG be dismissed.

C. Douglas McDonald
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, Florida  33607-5780

By:   <u>s/ David J. Wolfsohn</u>
David J. Wolfsohn (Pro Hac Vice)
Jacqueline M. Lesser (Pro Hac Vice)
Kevin M. Bovard (Pro Hac Vice)
Woodcock Washburn LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
Telephone: 215-564-2222
Facsimile: 215-568-3439

*Attorneys for Defendant Yellow Pages
Group, LLC*

Dated: August 6, 2012

18

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION**

```
-------------------------------------------------------- )
YELLOW PAGES PHOTOS, INC.,                               )
                                                         )
                Plaintiff,,                              )
                                                         )
vs.                                                      )    Case No.: 8:12 cv-755
                                                         )
ZIPLOCAL, LP, YELLOW PAGES GROUP, )
LLC, AND YELLOW MEDIA INC.,                              )
                                                         )
                                                         )
                Defendants.                              )
-------------------------------------------------------- )
```

<u>**CERTIFICATE OF SERVICE**</u>

I CERTIFY that on August 6, 2012, a true and correct copy of the foregoing Defendant

Yellow Pages Group, LLC's Memorandum of Law in Support of its Motion to Dismiss the

Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Request for Oral Argument

was electronically filed with the Clerk of Court using the CM/ECF system, which will

automatically send notification of such filing to all attorneys of record.


<u>/s/ David J. Wolfsohn</u>
David J. Wolfsohn