UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YELLOW PAGES PHOTOS, INC.,

    Plaintiff,

v.                                                      CASE NO: 8:12-cv-755-T-26TBM

ZIPLOCAL, LP, YELLOW PAGES GROUP, LLC,
and YELLOW MEDIA, INC.,

    Defendants.
_____/

## O R D E R

Before the Court is Yellow Media, Inc.'s Renewed Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction (Dkt. 96), and Plaintiff Yellow Pages Photos, Inc'.s Response in Opposition (Dkt. 110). After careful consideration of the allegations of the Second Amended Complaint (Dkt. 56), the submissions of the parties, and the applicable law, the Court concludes that the renewed motion should be granted.

## ALLEGATIONS

Plaintiff Yellow Pages Photos, Inc. (YPPI) was permitted to replead its theory of personal jurisdiction as to Yellow Media, Inc. (Yellow Media), the Canadian parent of Defendant Yellow Pages Group, LLC (YPG). Only vicarious liability is asserted against Yellow Media. Limited discovery addressing personal jurisdiction issues was conducted

with the Court's permission to ascertain the relationship between Yellow Media and YPG.

The second amended complaint alleges personal jurisdiction based on a theory of agency and Fed. R. Civ. P. 4(k)(2) as follows:

> 9.  YPG acts as merely an agent of Yellow Media through which Yellow Media conducts business, subjecting Yellow Media to personal jurisdiction in the State of Florida by virtue of its doing business in the State of Florida through its subsidiary YPG.  Specifically:
>
>   a.  The sole operating segment of Yellow Media and its subsidiaries is their "Directories Segment," comprising their print and online directories as well as performance marketing solutions, real estate, and employment publications.
>   b.  Yellow Media publicly reports its financial results on a fully consolidated basis with its subsidiaries, including YPG.
>   c.  Yellow Media exercises control over YPG.  Yellow Media has and exercises control of the financial and operating policies of YPG so as to obtain economic benefit of YPG's activities.
>   d.  Yellow Media and YPG share the same website at www.ypg.com, through which they jointly disseminate information about their businesses.
>   e.  Yellow Media does business through YPG.
>   f.  YPG performs services primarily, if not exclusively, for other entities owned and/or controlled by Yellow Media.
>   g.  Yellow Media and YPG share employees, including executive officers and in-house attorneys.  The President and Chief Executive Officer of Yellow Media is also the President and Chief Executive Officer of YPG and on the Board of Directors of both companies.
>   h.  Yellow Media and YPG share offices in Canada and the United States.
>   i.  Yellow Media derives substantial revenue from operations in the United States.
>   . . . .

> 11. Further, by virtue of Yellow Media's extensive contacts with the United States, Yellow Media is subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2) in the State of Florida.

(Dkt. 56, paras. 9 & 11).

## BACKGROUND

Yellow Media submits the declaration of Kevin M. Bovard, the attorney for Yellow Media, with several attachments. Two of the attachments are sealed by order of this Court with respect to confidential business information covered by a protective order agreed to by the parties and previously entered in this case. The sealed attachments are the depositions of Gregory Shearer and Treena Cooper. The following facts were developed in the discovery taken regarding personal jurisdiction.

Yellow Media is a Canadian holding company located in Montreal, Canada. It is the parent corporation for its subsidiary, YPG, and other subsidiaries. Gregory Shearer is YPG's Vice President of Business Solutions and he is also a director of YPG.[1] Mr Shearer is neither a director nor officer of Yellow Media. He describes the responsibilities of his position as "ensuring technology solutions" for YPG.[2] Apart from Mr. Shearer, the other two directors are also directors of Yellow Media.[3] Yellow Media,

---

[1] See Shearer Deposition at 61, Exh. 3.

[2] See Shearer Deposition at 9.

[3] See Shearer Deposition at 61 & Exh. 3 and Cooper Deposition, Exh. 13. Ginette Maille and Mark Tellier are directors of both Yellow Media and YPG.

however, shares the same President and Chief Executive Officer, Mark Tellier.[4] Eleven of YPG's twelve officers hold their same positions with Yellow Media.[5] The positions of President and Chief Executive Officer, Senior Vice President, Secretary, Treasurer, Chief Financial Officer, General Counsel, Vice President Corporate Performance, Vice President Operations and Supply Chain, Chief Technical Officer, Vice President and Corporate Controller, Chief Information Officer, Vice President of Human Resources, and Assistant Secretary are held by the same persons in Yellow Media and YPG.[6] Ms. Cooper is the Director of Legal Affairs at Yellow Media. As legal counsel for Yellow Media, Ms. Cooper provides legal services to all of Yellow Media's subsidiaries, including YPG.

Marc Tellier, as President and CEO and a director of both Yellow Media and YPG, was described as the public figure for Yellow Media presenting the company to investors and the public.[7] His job for YPG is the same. Yellow Media issued a July 2012 press release in which Mr. Tellier was quoted in explaining its recapitalization efforts and

---

[4] See Shearer Deposition at 64.

[5] See Shearer Deposition, Exh. 3 and Cooper Deposition, Exh. 13.

[6] See Shearer Deposition at 61-74 & Exh. 3, and Cooper Deposition, Exh. 13. Some of the eleven individuals hold more than one position.

[7] See Cooper Deposition at 48-49.

was referenced as the "President and Chief Executive Officer of Yellow Pages Group."[8] In addition to the press release, in the fund proxy, Mr. Tellier's responsibilities were listed as "ensuring good day to day management of YPG's operations."[9] Ms. Cooper testified to the contrary, that Mr. Tellier was not responsible for the day-to-day management of the operations of either Yellow Media or YPG.[10] Mr. Shearer testified that YPG, not Yellow Media, deals with Ziplocal in that YPG renders the bills to Ziplocal, negotiates outsourcing agreements, and pays YPG's own employees.[11] Both Ms. Cooper and Mr. Shearer testified that YPG was in charge of its own day-to-day operations and that Yellow Media does not control the day-to-day operations of YPG.[12]

Yellow Media does perform some services for YPG.[13] YPG, not Yellow Media, pays its own expenses, maintains its own human resources department which makes all of the hiring and personnel decisions, and holds its board meetings separate from Yellow

---

[8] See Shearer Deposition at 112-115 & Exh. 5. YPPI argues that this is one example of how Yellow Media and YPG are held out as one and the same.

[9] See Cooper Deposition at 149-54 & Exh. 10 at 81.

[10] See Cooper Deposition at 152-54.

[11] See Shearer Deposition at 110-112, 143 & 174 and Cooper Deposition at 137 & 185-86.

[12] See Shearer Deposition at 149 & 168 and Cooper Deposition at 185-86. Interestingly, Yellow Media's 2011 annual report states that it "exercises control" over its subsidiaries. See Cooper Deposition, Exh. 8.

[13] See Shearer Deposition at 111.

Media's board meetings.[14] Yellow Media, however, does provide legal services and financial reporting services to its subsidiaries at no charge.[15] Yellow Media would have reviewed the outsourcing agreement between YPG and Ziplocal.[16] Yellow Media does not need to approve of YPG's capital expenditures.[17] Yellow Media has not made a loan to YPG, and YPG has never financed Yellow Media.[18] YPG has never received capital infusions from Yellow Media.[19]

Yellow Media touts itself in its annual report and on its website as a leading digital company.[20] Ms. Cooper explained that it is a digital company "through its subsidiaries from an investor relations standpoint."[21] She admitted that Yellow Media itself was not a digital company, but the website is accurate because it assists an investor to understand the business of the subsidiaries it holds.[22] The website further states that Yellow Media

---

[14] See Cooper Deposition at 137, 52 & 186.

[15] See Shearer Deposition at 80-81 & 126 and Cooper Deposition at 30.

[16] See Shearer Deposition at 126.

[17] See Cooper Deposition at 186.

[18] See Cooper Deposition at 128.

[19] See Cooper Deposition at 136.

[20] See Cooper Deposition, Exhs. 8 & 15.

[21] See Cooper Deposition at 93.

[22] See Cooper Deposition at 93-95.

"owns and operates" some of Canada's leading properties and publications.[23] Yellow Media, nevertheless, is "a holding company with the primary purpose of generating investment[s] and getting people to purchase its stocks."[24] YPG provides production, as opposed to publishing, services including "ad manufacturing services, . . . data entry services, . . . graphical services, contract entry services, listing management services, computer operations services, systems support services, [and] software support services."[25] Yellow Media does not provide production services.[26]

Yellow Media's annual report states that Yellow Media "operates in the United States." Yellow Media's website lists Yellow Media's office locations to include YPG's offices in Indiana and Pennsylvania.[27] Ms. Cooper testified that Yellow Media operated in the U.S. only through its subsidiaries and only as the head of all the subsidiaries.[28] Yellow Media was merely advising investors about all affiliated entities for the purpose of assisting them in the decision to invest.[29] She testified that according to a definition in

---

[23] See Cooper Deposition, Exh. 15. Ms. Cooper later in her deposition again testified that Yellow Media's sole purpose is "to obtain finance investments" and manage funds. Id. at 92.

[24] See Cooper Deposition at 37.

[25] See Shearer Deposition at 168.

[26] See Cooper Deposition at 37.

[27] See Shearer Deposition at 49-50 & Exh. 2.

[28] See Cooper Deposition at 115.

[29] See Cooper Deposition at 115.

the notes to the financial statements, Yellow Media should always be read to mean Yellow Media and its subsidiaries.[30] Yellow Media and YPG's officers and directors share the same email addresses.

The issues are (1) whether YPG is a "mere agent" of Yellow Media, thereby making Yellow Media subject to personal jurisdiction on the basis that this Court has already determined it has jurisdiction over YPG, and (2) whether Yellow Media has extensive contacts with the United States, sufficient to confer personal jurisdiction under Fed. R. Civ. P. 4(k)(2). The factual issues involve whether YPG's sharing all but one director with Yellow Media and other indicia of control are sufficient to prove that YPG exists solely to achieve the purpose of Yellow Media, and whether Yellow Media's contacts with the United States are sufficient to comport with due process.

## APPLICABLE LAW

The relationship of parent-subsidiary is insufficient alone to confer personal jurisdiction over the foreign parent corporation in the forum in which the subsidiary acts. Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000); Enic, PLC v. F.F. South & Co., 870 So. 2d 888, 891 (Fla.Dist.Ct.App. 2004). "On the other hand, if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be

---

[30] See Cooper Deposition at 197.

viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1272 (11th Cir. 2002).[31] Jurisdiction is exercised over the parent where "a parent corporation exerts such extensive operational control over a subsidiary that the subsidiary is no more than an agent existing to serve only the parent's needs." Gadea v. Star Cruises, Ltd., 949 So. 2d 1143 (Fla.Dist.Ct.App. 2007). Operational control has also been referenced as the day-to-day control of the internal affairs or basic operations of the subsidiary. Enic, 870 So. 2d at 891-92 (citing Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175 (9th Cir.), cert. denied, 449 U.S. 1062, 101 S.Ct. 785, 66 L. Ed. 2d 604 (1980)).

"The amount of control exercised by the parent must be high and very significant." Enic, 870 So. 2d at 891. Indicia of such control that does not generally constitute the degree of operational control necessary to confer personal jurisdiction over the parent corporation includes sharing of directors and officers, travel by executives of the parent to the subsidiary to render directives and approval of major policy decisions, enjoying a unified or "global" strategy and goals, cross-selling promotional materials, and performing services for one another. Id.; General Cigar Holdings, Inc. v. Altadis, S.A., 205 F. Supp. 2d 1335 (S.D. Fla.), aff'd, 54 Fed. App'x 492 (11th Cir. 2002); Digitech

---

[31] In the specific jurisdiction provision of Florida's long-arm statute, section 48.193(1), the acts of an agent qualify to confer personal jurisdiction. The agency theory applies to both specific and general long-arm jurisdiction. Meier, 288 F.3d at 1270-71.

Info. Sys., Inc. v. BMW Auto Leasing, LLC, No. 6:10-cv-1373-Orl-28KRS, 2011 WL 3841587, at * 4 (M.D. Fla. Aug. 29, 2011); Gadea, 949 So. 2d at 1146. Some control, as opposed to operational control, is insufficient. General Cigar, 205 F. Supp. 2d at 1344 (finding insufficient control despite regular contact between the entities, overlapping duties of the same high-ranking official in both entities, and correspondence indicating subsidiary sought approval on hiring and other management decisions, because subsidiary owned its own production facilities, distributed its own products through its own sales organization, maintained its own accounts, paid its own employees and received no actual marketing or strategic plans from parent). As long as the subsidiary maintains a "semblance" of independence from the parent, the agency relationship will not be established. Meier, 288 F.3d at 1272; General Cigar, 205 F. Supp. 2d at 1344.[32]  Of the

---

[32] See also Abramson v. Walt Disney Co., 132 Fed. App'x 273 (11th Cir. 2005) (unpublished opinion) (finding no agency relationship where day-to-day activities, finances, separate books, records and accounts were maintained by and responsibilities of subsidiaries); Cross Country Home Servs., Inc. v. Home Serv. USA Corp., 08-61456-CIV, 2010 WL 55439 (S.D. Fla. Jan. 6, 2010) (finding that plaintiff could not prove that parent used subsidiary as its agent in using trademark even though parent treated subsidiary as agent in all of its literature and decided what marks subsidiary could use, in face of affidavits stating that day-to-day operations were not controlled by parent and subsidiary controlled what marks were placed on its own website); American Color Graphics, Inc. v. Brooks Pharmacy, Inc., No. 8:05-cv-1512-T-27TBM, 2007 WL 3202748 (M.D. Fla. Oct. 29, 2007) (finding subsidiary was not "mere instrumentality" of parent simply because annual report did not state that the two were different businesses, managed separately); In re Farmland Indus., Inc., No. 3:05-cv-587-J-32MCR, 2007 WL 7694308, * 7 (M.D. Fla. Mar. 30, 2007) (finding no agency relationship because no operational control and parent's sole interest was to file consolidated tax returns for the companies it owns); Faro Technologies, Inc. v. CimCore Corp., No. 6:06-cv-13-19-KRS, 2006 WL 4975982, at *5 (M.D. Fla. Jun. 27, 2006) (finding no agency relationship where

cases holding that an agency relationship was established between the parent corporation and subsidiary, the subsidiary provided the day-to-day accounting services for the parent, purchased goods for the parent, and engaged in collection services for the parent, generally in the coordination of reservations as a booking agent for the parent hotel.  See Meier, 288 F.3d at 1272-73; Universal Carribean Establishment v. Bard, 543 So. 2d 447, 448 (Fla.Dist.Ct.App. 1989).[33]

## ANALYSIS

YPPI argues that the Yellow Media identified itself as YPG as evidenced in the July 2012 press release by referring to Mr. Tellier as the President and CEO of Yellow Pages Group and not Yellow Media[34] and in the fund proxy's description of Mr. Tellier's

---

entities shared same president and CEO, subsidiary did not need permission or authorization before taking action, parent did not have control over the bank accounts; interdependence may exist where corporations nevertheless operate autonomously); Qualley v. International Air Serv. Co., 595 So. 2d 194, (Fla.Dist.Ct.App. 1992) (finding no agency relationship where parent did not assume liability for obligations of the subsidiary).

[33]  See also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F. 3d 1357 (11th Cir. 2006) (finding as in Meier that the subsidiaries existed as the managing and booking department of the resort); Al-Babtain v. Banoub, No. 8:06-cv-1973-T-30TGW, 2008 WL 3982880 (M.D. Fla. Aug. 26, 2008) (finding that subsidiary manifested no separate interests of its own and was created to achieve the purpose of the parent through business development services); John Scott, Inc. v. Munford, Inc., 670 F. Supp. 344 (S.D. Fla. 1987) (finding that subsidiary's power to negotiate and review terms of contract between parent and third party constituted agency relationship for personal jurisdiction).

[34]  See Shearer Deposition, Exh. 5.

responsibilities as including the day-to-day management of YPG's operations.[35]  Other indicia that YPG does not maintain a semblance of independence, argues YPPI, include the sharing of the same "ypg.com" emails, which is actually a domain owned by another subsidiary Yellow Pages Group Corp.[36]  The sharing of the email addresses among all of the subsidiaries, together with Ms. Cooper's holding herself out as legal counsel for "Yellow Pages Group" further gives the appearance to the public that all of the companies are intertwined.  Ms. Cooper attempted to differentiate Mr. Tellier's positions as President and CEO of both Yellow Media and YPG by stating that Yellow Media does not have day-to-day operations and that Mr. Tellier is not responsible for the day-to-day management of either entity, although Mr. Tellier definitely "ensures" that YPG is managed in a good manner on a day-to-day basis.[37]  YPPI essentially argues that the almost 100% sharing of directors and officers by the parent and subsidiary, with the exception of Mr. Shearer, renders the companies virtually identical.

The sharing of officers and directors, standing alone, does not impute day-to-day control to the parent corporation.  In re Farmland Indus., 2007 WL 7694308, at * 7 (holding that overlapping board members without more does not create the necessary

---

[35]  See Cooper Deposition, Exh. 10 at 81.

[36]  See Shearer Deposition at 23-24 and Cooper Deposition at 44.

[37]  See Cooper Deposition at 153-54 & 48-49.

control to establish agency relationship).[38]  One of the basic tenets of corporate law is that shared directors and officers of parents and subsidiaries may hold the same position in both and "change hats" to represent the two corporations separately.  <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 925-26 (9th Cir. 2001) (quoting <u>United States v. Bestfoods</u>, 524 U.S. 51, 69, 118 S.Ct. 1876, 141 L. Ed. 2d 43 (1998)); <u>Vogt v. Greenmarine Holding, LLC</u>, No. Civ.A.1:01-CV0311JOF, 2002 WL 534542, at * 6 (N.D. Ga. Feb. 20, 2002) (quoting <u>Bestfoods</u>).  Mr. Shearer, as the sole officer and director of YPG who does not hold any position in Yellow Media, lives and works in Pennsylvania.  As Vice President of Business Solutions he ensures that YPG has computer operation services, pagination services and billing services.  The services provided in the Indiana office of YPG include listing services, contract entry, billing in commissions for customers, computer operations and software support.  Most of the shared officers are not involved in the day-to-day operations of YPG.  One other officer, Mr. Richmond, works out of Toronto, and he is in charge of graphical services which means website creation.  While there are only two officers, Mr. Shearer and Mr. Richmond, who manage YPG on a daily basis, their jobs

---

[38] See also <u>MeterLogic, Inc. v. Copier Solutions, Inc.</u>, 126 F. Supp. 2d 1346, 1358 (S.D. Fla. 2000) (noting that the overlap of officers is insufficient to find that subsidiary is alter ego of corporate parent); <u>Faro Techs., Inc. v. CimCore Corp.</u>, No. 6:05-cv-1702-Orl-31JGG, 2006 WL 1119223, at * 5 (M.D. Fla. Apr. 27, 2006) (holding that sharing officers or directors or possessing the power to hire and fire the officers and directors of the other, is insufficient for personal jurisdiction to attach); <u>Continental Ins. Co. v. Loewen Group, Inc.</u>, 1998 WL 142380, at * 10 (N.D. Ill. Mar. 17, 1998) (finding that "an interlocking Board of Directors is insufficient to confer jurisdiction over a non-resident defendant").

are particular to the business of YPG, not Yellow Media. Moreover, according to Mr. Shearer, Mr. Tellier is not involved in the day-to-day operations of YPG, and he spends most of his time fulfilling his duties as president of Yellow Media. Under these facts, the person in charge of the day-to-day control of YPG is not affiliated in any way with Yellow Media, despite the fact that almost every other officer and director live and work at the Yellow Media office in Canada, thereby militating against a finding of personal jurisdiction.

As for the statements in the website, annual report, and press release, courts do not rely on such statements as reliable evidence that the parent exercises "operational control" necessary to confer personal jurisdiction. Development Corp. of Palm Beach v. WBC Constr., L.L.C., 925 So. 2d 1156, 1163 (Fla.Dist.Ct.App. 2006);[39] Cross Country Home Servs., Inc. v. Home Serv. USA Corp., 08-61456-CIV, 2010 WL 55439 (S.D. Fla. Jan. 6, 2010). Much like the scenario in Development Corp. where an article in a website described a parent corporation as a member of a joint venture "through its subsidiary," the annual report of Yellow Media stating that it "operates" in the United States and "exercises control" over its subsidiaries cannot be construed as a precise relationship *in*

---

[39] In Development Corp., the parent corporation, BMHC, of a non-related entity, WBC, presented its relationship as a joint venture on its website, in a press release, and in its 10-K filing with the Securities and Exchange Commission. The website contained an article that described BMHC as a member of a joint venture with WBC "*through its subsidiary BMC*." 925 So. 2d at 1160 (emphasis in original). BMC was a wholly-owned subsidiary of BMHC, and owned 60% of WBC.

*fact* with respect to day-to-day control. In Cross Country Home, even though the parent corporation referenced its subsidiary as its agent in all of its literature, the court relied on the two affidavits submitted by officers of the parent and subsidiary stating that the parent did not assert day-to-day control over the subsidiary. In this case, while it is not as clear cut as the recitation of facts above might appear, the testimony of both Ms. Cooper and Mr. Shearer support a finding that the day-to-day operational control of YPG is handled by YPG, not Yellow Media. There is no evidence that the business activities of Yellow Media and YPG overlap.

Although Yellow Media provides some services to its subsidiary YPG, such as legal counsel and preparing taxes for all of its subsidiaries, the relationship between Yellow Media and YPG does not mandate a finding that YPG exists solely to serve Yellow Media. Yellow Media, despite its inability to describe exactly what it means by being a digital company working through its subsidiaries, maintains a purpose separate and apart from YPG— a holding company that generates investments and sells stock.

Yellow Media does not pay YPG's employees, and the two companies do not share offices. YPG deals with its own customers, and Yellow Media does not provide production services as does YPG. Even though legal counsel supplied by Yellow Media would have reviewed the contract between YPPI and Ziplocal, the evidence does not support a finding that Yellow Media engaged in substantial day-to-day control over YPG. Consequently, there is insufficient evidence to show that YPG was a "mere agent" of

Yellow Media, and Yellow Media will not be subjected to personal jurisdiction in this case.[40]

Finally, the record does not support jurisdiction under Rule 4(k)(2) because the proof is insufficient to show that Yellow Media had enough minimum contacts with the United States to comport with due process.

It is therefore **ORDERED AND ADJUDGED** that Yellow Media, Inc.'s Renewed Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction (Dkt. 96) is **GRANTED**. Yellow Media is hereby **DISMISSED** for lack of personal jurisdiction. The remaining parties to this lawsuit shall file a Case Management Report on or before December 17, 2012.

**DONE AND ORDERED** at Tampa, Florida, on November 16, 2012.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

[40] In reaching this conclusion, the Court has not ignored the sealed material submitted in support of YPPI's argument. The decision not to exercise jurisdiction over Yellow Media does not minimize the import of the implications revealed. The decision required a careful weighing of all the factors against the backdrop of the clear mandate that the plaintiff must prove the subsidiary existed to serve only the parent's needs.