UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YELLOW PAGES PHOTOS, INC.,

    Plaintiff,

v.                                           Case No.: 8:12-CV-755-T-26EAJ

ZIPLOCAL, LP, and YELLOW PAGES
GROUP, LLC,

    Defendants.
_____/

## PLAINTIFF'S RESPONSE TO YELLOW PAGES GROUP, LLC'S MOTION FOR ATTORNEYS' FEES

YPG's motion for attorneys' fees is bereft of factual and legal support. As YPG is well aware, in order to qualify for an award of legal fees under the Copyright Act, it must be "the prevailing party," not on just an isolated, cherry-picked issue, but rather on the infringement claim as a whole. The jury found in favor of Plaintiff on every claim in this case, and specifically found YPG to be a willful copyright infringer. Following the verdict, the Court directed the Clerk to enter judgment against YPG in the amount of $123,000.00. These undisputed facts alone render YPG's motion so baseless that its improper motives in even filing the motion cannot go unnoticed. YPG is simply taking multiple shots at responding to Plaintiff's fees-and-costs claims, a first one in its own fee motion to try to preemptively color the Court's attitude against Plaintiff and its claims and then a second in its soon-to-be-filed response to Plaintiff's own fees-and-costs motion.

This strategy is made glaringly clear by YPG's failure to cite to any authority supporting an argument that it could somehow be the prevailing party while at the same time being a willful

1

infringer. The reason for that is simple—there is no such authority. Indeed, in every case cited by YPG where a defendant recovered fees, the defendant actually prevailed in the case as a whole, by either a motion to dismiss, summary judgment, or at trial. As a result, YPG instead fills its motion with ill-founded attacks on Plaintiff and its counsel, thus revealing its strategic, albeit completely improper purpose.

YPG's motives are highlighted by its failure to seek its costs under Rule 54.[1] If YPG really and truly believed it was the prevailing party in this case, it certainly would not leave thousands of dollars in costs unrecovered, particularly when its current motion throws out endless accusations as to how Plaintiff supposedly drove up the costs in this case. That amount of money would not be ignored even by a company as huge as YPG. If nothing else, YPG's motion provides insight to the Court what Plaintiff, a one-man company, has endured in its fight to protect its copyrights and its business, as well as how this case became so contentious and expensive.

## I. THERE CAN ONLY BE ONE PREVAILING PARTY IN A COPYRIGHT CASE, AND AS A WILLFUL INFRINGER, IT IS CERTAINLY NOT YPG.

The only way YPG could feasibly recover legal fees from Plaintiff is if it was found to be the prevailing party in this case. Specifically, the Copyright Act provides that the Court may award reasonable attorney's fees to "the prevailing party." *See* 17 U.S.C. § 505. There is absolutely no good faith basis under which YPG can claim to be the prevailing party in this case, which is apparent from a quick review of the verdict form and judgment entered against YPG—it lost on the only claim asserted against it by Plaintiff and was found liable for copyright infringement in the amount of $123,000.00. Not only was YPG found liable for copyright

---

[1] Ziplocal similarly did not seek its taxable costs under Rule 54, nor did it seek to recover its legal fees or non-taxable costs even under its contract with Plaintiff, which does not afford the Court discretion, essentially conceding that Plaintiff is the prevailing party.

2

infringement, the jury specifically found it to be a willful infringer. Given the verdict, YPG asks this Court to do something that undoubtedly no court has ever done—award a party found by a jury to be a willful copyright infringer its legal fees.

The Copyright Act states that "the prevailing party" may recover its attorney's fees, not "the prevailing parties" or "a prevailing party;" hence, there can only be one prevailing party. *See e.g., Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F. Supp. 740, 772 (S.D. N.Y. 1988) ("As I understand copyright law, there is only one 'prevailing party' on any one claim for relief in an action"); *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010) ("we agree that there can be, by definition, only one prevailing party" and explaining "the prevailing party" in Rule 54 is "singular"); *Tartaglia v. Big Apple Consulting USA, Inc.*, 2011 WL 6937465, *4 (M.D. Fla. Nov. 22, 2011) ("[T]here also can only be one prevailing party, not two.").

The definition of a prevailing party is "well established in [the 11th Circuit]." *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1321 (11th Cir. 2001). "A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). "Generally, the prevailing party under the attorneys' fee authorization of section 505 of the Copyright Act is identified as the party succeeding on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit." *Cable/Home Comm. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 853 (11th Cir. 1990). In other words, a party is the prevailing party if there is: "1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or 2) a judicial *imprimatur* on the change in the legal relationship between the parties." *First Time Videos, LLC v. Oppold*, 2014 WL 1099700, *1 (11th Cir. Mar. 21, 2014).

In this case, there is no question that Plaintiff is the prevailing party. The jury returned a verdict in favor of Plaintiff on every issue presented to it, including a finding that YPG is liable for willful copyright infringement. (Dkt. 422). Following the verdict, the Court directed the Clerk to "enter judgment against Defendant Yellow Pages Group, LLC, in the sum of $123,000.00." (Dkt. 443). YPG did not bring any claim against Plaintiff and did not succeed on a single one of its myriad affirmative defenses. (Dkt. 258).

Although difficult to ascertain, YPG seems to be arguing that, despite being found by the jury to be a willful copyright infringer, it is nevertheless the prevailing party because the Court found "a work" for statutory damages purposes to be each of Plaintiff's 178 collections of photographs as opposed to each of Plaintiff's 10,411 individual photographs. First of all, YPG cannot point to any authority for the concept that if the Court decides "a work" is something different than what a plaintiff argues, then the plaintiff does not prevail even when it goes on to win a willful infringement verdict. That is completely nonsensical under any scenario. *See CrossPointe, LLC v. Integrated Computing, Inc.*, 2005 WL 1677460 (M.D. Fla. July 18, 2005) (denying defendant's fee motion and stating "an award of attorney's fees to infringing parties would undermine one of the primary goals of the Copyright Act, that of discouraging infringement").

Moreover, YPG is not the "prevailing party" even on that singular issue. Glaringly absent from YPG's motion is any acknowledgment that <u>YPG did not even argue that each collection was a work</u>; rather, YPG argued strenuously that Plaintiff's entire library together constituted one single work for statutory damages purposes, with a fallback position that if the Court disagreed, then at most each registration constituted a work, making a total of 44 works. (Dkt. 404). Plaintiff, on the other hand, argued that each of the 10,411 individual photographs

4

was a work, with a secondary position that each of its 178 collections of photographs was a work for statutory damages purposes. (Dkt. 403).[2] The Court disagreed with YPG that all 10,411 photographs constituted a single work, and also disagreed with Plaintiff that each of the 10,411 photographs constituted a separate work. (Dkt. 407). Instead, the Court agreed with Plaintiff's secondary argument that each of the 178 collections constitutes a separate work. *Id.* Therefore, if either party could be found to be the prevailing party on this issue, it would be Plaintiff.

The Court's ruling on the "work" issue does not, in any event, equate to a finding that Plaintiff's success at trial was "purely technical or *de minimis.*" It was a ruling on a singular point of law that had no impact on liability issues, no impact on actual damages issues, and merely set the potential range of statutory damages in the event the jury found infringement. The jury indeed returned a six-figure willful infringement verdict against YPG, and YPG points to no authority for support that such a significant verdict could ever be considered *de minimis* or purely technical. Rather, the sole case cited for this argument awards fees to a plaintiff.[3] *See Cable/Home Comm. Corp.*, 902 F.2d at 853. There is simply no authority under which YPG could be considered the prevailing party in this case, and its motion fails to show otherwise.

---

[2] Contrary to the misimpression YPG created with the Court in briefing this issue during trial, and seeks to compound in its present motion, Plaintiff recognized these alternatives from the beginning of this case. This is revealed by YPG's own motion. *See* YPG's Motion, Exh. C (Plaintiff's initial damages report) at p. 8 (stating "Ziplocal licensed 178 CD's containing approximately 10,411 images. While the determination of what constitutes a 'work' will be determined by the Court, the Plaintiff believes each image constitutes a separate work" and calculating statutory damages range using both alternatives).

[3] YPG also cites to *Warner Bros. Inc. v. Dae Rim Trading, Inc.* 877 F.2d 1120 (2nd Cir. 1989). In that case, the plaintiff was awarded only $100, and the court declined to award fees, specifically noting that the plaintiff was unable to show that the defendant's infringement was willful. This case is obviously completely different given that Plaintiff specifically obtained willful infringement verdicts against both YPG and Ziplocal and received damages from them which nearly equaled the license fees paid by Ziplocal to Plaintiff for the use of the photographs at issue in the first place. The damages were far more than nominal.

## II. UNDER A PROPER ANALYSIS OF THE DISCRETIONARY FACTORS SET FORTH IN *FOGERTY V. FANTASY, INC.*, THE COURT SHOULD AWARD PLAINTIFF ITS ATTORNEY'S FEES AND COSTS.

"In deciding whether to award fees, a Court should consider whether the position of the losing party was (1) frivolous or (2) objectively unreasonable, (3) the losing party's motivation in litigating the action, and (4) the need to advance considerations of compensation and deterrence." *Davis v. Tampa Bay Arena, Ltd.*, 2013 WL 4457408, *1 (M.D. Fla. Aug. 16, 2013) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n. 19 (1994)). YPG's analysis of these factors is futile given that it unquestionably is not the prevailing party. Plaintiff is the prevailing party in this case, on all counts. The primary focus for the Court's inquiry in deciding whether to award fees and costs under the Copyright Act is on the positions of the losing parties—YPG and Ziplocal. YPG makes no effort in its preemptive response to Plaintiff's fees-and-costs motion to justify its own litigation strategy, instead trying its best to sling as much mud at Plaintiff and its counsel as possible with gross exaggeration and unsupportable, extreme allegations such as that they engaged in "extortion" and "scorched-earth discovery strategy." Setting all the rhetoric aside, the objective facts of this case paint a clear picture. Plaintiff is the prevailing party; YPG provides the Court with no reason to exercise its discretion to not assess fees and costs against YPG; and what the *Fogerty* factors actually show is that the Court should award Plaintiff its attorney's fees and costs.

### A. Defendants' so-called defenses were frivolous and objectively unreasonable.

This case was commenced on April 10, 2012, and after almost two years of litigation proceeded to trial. Plaintiff's complaint asserted two counts, the first for breach of a license agreement against Ziplocal, and a second for the infringement that directly resulted from Ziplocal's breach against YPG and Ziplocal. (Dkts. 1, 44, 56, and 248). From day one, both

6

Defendants strenuously denied <u>everything</u>, not just infringement, but even basic matters such as that YPG even built advertisements for Ziplocal, fighting everything every step of the way. *Compare* ¶6 of Dkts. 248 (Third Amended Complaint), 258 (YPG's Answer), and 264 (Ziplocal's Answer). YPG and Ziplocal between them asserted 30 affirmative defenses and Ziplocal brought a 2-count counterclaim claiming fraud and seeking punitive damages against Plaintiff. (Dkts. 241, 258, and 264). The counterclaim was abandoned (twice) before trial (Dkts. 313 and 363), and ultimately the jury was instructed on only 2 of the 30 affirmative defenses. (Dkt. 421). After 2 days of deliberations, the jury returned a verdict in favor of Plaintiff on all counts, including findings of breach of the license agreement by Ziplocal and willful infringement of 123 of Plaintiff's 178 collections of photographs by both YPG and Ziplocal. (Dkt. 422). In other words, the jurors unanimously concluded that both Defendants violated Plaintiff's copyrights and did so willfully. After a 6-day trial, the jury completely disbelieved Defendants' stories and rejected every one of their arguments.

YPG now seeks to divert the Court's focus from assessing whether Defendants' utterly defeated positions were frivolous or objectively unreasonable by attacking Plaintiff, its claims, and its counsel in its improper fee motion. Clearly YPG was not the prevailing party, and thus this is a misapplication of the discretionary factors. This is YPG's only defense in this instance, though, because its defense on the merits of Plaintiff's claims was so unsuccessful.

Placing the focus where it belongs, the Court ultimately refused to instruct the jury on 28 of Defendants' 30 affirmative defenses, most notably including Defendants' baseless claims of fraud by which they sought to destroy the very foundation of Plaintiff's business through invalidation of its copyright registrations and further sought punitive damages against Plaintiff.

Yet YPG accuses Plaintiff of "hard-ball litigation tactics." Defendants aggressively pursued these fraud claims all the way through trial before the Court finally put an end to them:

> Well, I find no evidence of fraud. I don't see any evidence of fraud on the copyright office or otherwise. You know, it's just not there. And I think I'd be committing reversible error by letting that go to the jury.

*See* Mar. 25, 2014 Trial Transcript at 90:24-91:3. The Court refused to instruct the jury on any of the many fraud defenses, and both Defendants acknowledged the Court's decision. *See id.* at 128:6-11. Yet incredibly the next day in closing arguments YPG persisted in pressing its fraud-on-the-Copyright-Office defense, arguing to the jury that some of the photographs Plaintiff registered with the Copyright Office and licensed to Ziplocal belonged not to Plaintiff, but to Getty Images. *See* Mar. 26, 2014 Trial Transcript at 68:5-70:3. Notwithstanding this improper argument, the jury did not buy Defendants' stories. The jurors unanimously, unqualifiedly, and completely rejected their defenses and found that Ziplocal breached its license agreement and that as a direct result of that breach Defendants knowingly violated Plaintiff's copyrights.

Willful infringement of protected works is behavior which by definition is "objectively unreasonable" in light of the requirements of the Copyright Act. *See Close-Up Int'l, Inc. v. Berov*, 2007 WL 4053682, at *1 (E.D.N.Y. Nov. 13, 2007). YPG, by suggesting to the Court that it should find Defendants' positions to have been reasonable, is inviting the Court to not only misapply the discretionary factors, but to essentially displace the jury's willful infringement finding. YPG provides absolutely no justification for its rejected defenses in its improper fee motion, and nothing more is to be expected in YPG's and Ziplocal's responses to Plaintiff's fees-and-costs motion.

### B. Plaintiff's claims were, by definition, objectively reasonable. Plaintiff prevailed on all of them.

Given the lack of a defense, YPG instead goes on the offense. YPG's only substantive argument regarding Plaintiff's claims targets the number of works shown to have been infringed, conveniently (yet confusingly) bouncing back and forth between numbers of photographs in one breath and collections in the next. YPG cannot have it both ways. The Court ruled that each of Plaintiff's collections constituted a "work" for statutory damages purposes. (Dkt. 407). Plaintiff alleged and argued throughout the trial that all 178 collections of its photographs had been infringed, and there was direct evidence of infringement of 134 of them.[4] *See* Mar. 25, 2014 Trial Transcript at 87:18-88:20. The Court ultimately instructed the jury that there were 134 collections at issue for purposes of actual damages, and 123 for purposes of statutory damages. *See* Mar. 26, 2014 Trial Transcript at 110:21-111:1. The jury found that the copyrights in 123 collections had been willfully infringed by both YPG and Ziplocal. (Dkt. 422). Given the success of Plaintiff's claims, they were undeniably reasonable. The focus of YPG's argument is therefore on the collections of photographs for which Plaintiff was unable to uncover direct evidence of infringement in discovery.

In light of what happened at trial, though, YPG walks a fine line arguing in its motion that Plaintiff was unable to prove infringement of certain collections due to its inability to procure evidence of such infringement in discovery and then criticizing Plaintiff for bringing discovery motions against YPG. The primary thrust of Plaintiff's discovery motions (Dkts. 135 and 243) was that YPG and Ziplocal were withholding evidence of electronic files relative to Plaintiff's photographs and ads containing them. YPG's response was that the discovery Plaintiff was complaining of simply did not exist:

---

[4] YPG makes reference to Plaintiff having "abandoned" or "withdrawn" part of its claims. There is no citation to the record for this proposition, because it did not happen.

> We have given them that entire file. Okay? So they now know everything, everything that was transferred as part of this change of production moving from Ziplocal over to YPG. They have a complete record of all the stuff that we got, whether it's ads, whether it's images, whatever.

(Dkt. 166 at 23). At trial, however, the Court saw the following:

1. YPG's main witness, Michelle Meloy, backtracked from her deposition testimony that what had been produced to Plaintiff was in fact "everything" and claimed on the stand that materials had also been sent by Ziplocal to YPG "via e-mail or some other means" and admitted that YPG had also taken other photographs directly from the ziplocal.com website at times. *See* Mar. 20, 2014 Trial Transcript at pp. 129:3-24; 130:23-131:8; 132:22-134:7; 135:8-139:10.

2. Then, over the weekend in between trial weeks, YPG panicked and produced 48 pages of documents labeled YPG Exhibit 176-A 001 through 176-G 008 relating to ads that had been discussed on the stand during the first week of trial, only the first 6 pages of which had been previously produced. *See* Exhibit A attached hereto (the Court will note bates numbers on only the first 6 pages of the exhibits). YPG further filed a Fourth Revised Trial Exhibit List over the weekend adding these 7 new exhibits. (Dkt. 406). These exhibits reflect YPG and Ziplocal communicating and exchanging advertisements containing Plaintiff's photographs using some sort of unidentified, private communication system of which Plaintiff was never informed during discovery despite repeated requests for this type of information.

3. Plaintiff raised the issue of these new exhibits with the Court on Monday. *See* Mar. 24, 2014 Trial Transcript at 12:2-9. After hearing the Court's reaction to brand new exhibits during the middle of trial, YPG ultimately decided against trying to enter the exhibits into

10

evidence. Nevertheless, it brought in testimony from Ms. Meloy on the information contained in them. *See id.* at 201:8-204:16 (testimony on same ads as in Exhibit A). This is not the time to re-hash discovery motions, and that is not Plaintiff's purpose. However, YPG obviously thought these particular documents, <u>which are exactly the types of documents YPG claimed did not exist to defeat Plaintiff's discovery motions</u>, were material enough that they might need to be used at trial. They were added to YPG's Exhibit List.

The obvious question is what else was withheld and would it have demonstrated further transfers of Plaintiff's photographs by Ziplocal to YPG? YPG makes reference in its motion to the documents Plaintiff sought in its discovery motions not being used at trial. Of course not, Plaintiff would have to have them to use them. Yet these very same types of documents, strategically handpicked by YPG, surfaced at trial and YPG used them to defend against Plaintiff's claims, and still YPG has the audacity to criticize Plaintiff for seeking assistance from the Court in procuring the documents in discovery.

Otherwise, YPG makes sweeping, general accusations against Plaintiff of discovery abuse, pointing to the fact that Plaintiff served interrogatories and requests for production and took depositions, all discovery devices permitted by the Federal Rules of Civil Procedure. If there were truly discovery issues occurring on Plaintiff's side of the table, there are procedures for addressing them spelled out in Fed. R. Civ. P. 26(c) and 37 and Local Rule 3.01(g). Only a single motion for protective order was filed by YPG, that with respect to its own Rule 30(b)(6) deposition (Dkt. 201), which was denied. (Dkt. 211). Of course, no further motion practice resulted from that deposition, and YPG provides no detail as to <u>any</u> supposed discovery abuse by Plaintiff. Another motion for protective order was filed by Ziplocal. (Dkt. 178). That motion was withdrawn after Plaintiff responded by a Court-ordered deadline the day after the motion

was filed, but before the Court could rule. (Dkt. 182). There is just no basis for a claim that Plaintiff's discovery was anything other than appropriate.

While YPG tries its utmost to create the impression that Plaintiff engaged in efforts to drive up the cost of this litigation, that concept defies common sense. Really, what does a small litigant with limited resources stand to gain from protracted, expensive litigation against much larger opponents represented by multiple law firms? Nothing. Incredibly, YPG presses this allegation in one breath, and then criticizes Plaintiff in the next for not starting further litigation against it in Canada. The record shows that there was simply nothing unreasonable about Plaintiff's claims or its pursuit of them.

### C. Defendants' motive in defending this case in the manner they did was to wear down a much smaller opponent.

Rather than offer any justification for its defense of Plaintiff's claims, YPG asks the Court to attribute an improper motive to Plaintiff, the gist of its argument being that any and every action Plaintiff took in this litigation was designed to pressure YPG into settling.[5] YPG repeatedly encourages the Court to draw unwarranted assumptions as to what occurred outside the courtroom and outside its presence with unsupported, inflammatory accusations. Of course, to determine whether there is any truth to YPG's accusations, the Court would have to drag everyone with their complete files into Court and try to get to the bottom of such matters. This

---

[5] YPG recites in its motion arguments and demands supposedly made by Plaintiff at mediation in this case. *See* YPG's Motion at p. 1. Were there any truth to YPG's statements, this would be a clear violation of Local Rule 9.07(b), which forbids making any part of a mediation proceeding known to the Court. *See also* FRE 408. YPG further recites the general financial terms of settlement agreements entered into in other cases, which contain confidentiality obligations running to the other parties to them and were produced to YPG under the protective order in this case. *See* YPG's Motion at p. 6. By publicly disclosing those financial terms, YPG has violated the protective order in contravention of the rights of Plaintiff and third parties not involved in this case. Plaintiff assumes the Court will assess the necessity to address these violations.

approach is obviously unproductive, when the simple, objective facts of the case and contents of the court file are indisputable.

As shown in YPG's motion, Plaintiff reached out to YPG before filing suit to try to reach a resolution of this matter by offering YPG a license that would have resolved not only the issues that YPG and Ziplocal had created by virtue of their relationship, but also YPG's use of Plaintiff's images for its own affiliates. *See* YPG's Motion, Exh. E. The cost of that license, about $2 million.[6] By the time the parties filed their Joint Pretrial Statement, well before trial started, YPG and Ziplocal had reportedly spent about $2,200,000.00 between them litigating this case. *See* Joint Pretrial Statement (Dkt. 327) at 16-17. Defendants fought this case every step of the way for two years on defenses that this Court did not at the end of the day even see enough validity in to send to the jury. This included fraud defenses and a fraud counterclaim that sought to destroy the very foundation of Plaintiff's business, yet it is Plaintiff that is accused of "take-no-prisoners tactics." The counterclaim was dropped on summary judgment, then re-asserted, and then finally abandoned just before trial. The only two defenses that were submitted to the jury were soundly rejected. Defendants' defenses in this case were simply not reasonable. Given the lack of any logical financial basis for Defendants' approach to this litigation, their motivation appears to only have been to outspend and wear down Plaintiff, a much smaller opponent.

---

[6] This stands in stark contrast to YPG's claim that Plaintiff ever argued to *anyone* that "it was entitled to over $300 million and even over $1.5 billion from YPG." *See* YPG's Motion at 1. That certainly is the top of the statutory damages range for infringement and willful infringement of 10,411 works, as Plaintiff's damages expert noted in his report (*see* YPG's Motion, Exh. C at p. 8.), but YPG provides no citation to the record for the proposition that Plaintiff ever claimed an entitlement to such an amount, because once again it did not happen.

**D. Given the jury's finding that Defendants' infringement was willful, the Court should award Plaintiff its fees to deter such conduct.**

One of the *Fogerty* factors refers to the need to advance considerations of compensation and deterrence. *Fogerty*, 510 U.S. at 535, n.19. This factor is particularly important in this instance, where: 1) Plaintiff is a one-man company trying to protect its business against two large corporate Defendants, and 2) the jury found both Defendants to be willful infringers. Although it is within the Court's discretion whether to award fees to Plaintiff under the Copyright Act, cases denying a plaintiff its fees where infringement was found to be willful are exceedingly rare; rather, when infringement is willful, fees are generally awarded to the prevailing plaintiff as a matter of course.[7] *See e.g., Clever Covers, Inc. v. Southwest FL Storm Defense, LLC*, 554 F. Supp. 2d 1303, 1310 (M.D. Fla. 2008) ("finding of willful infringement justifies an award of heightened damages and attorney's fees"); *S. Bell Tel. v. Assoc. Tel. Dir. Pub.*, 1983 WL 1143, *6 (N.D. Ga. June 22, 1983) (finding willful infringement to entitle a plaintiff to fees); *Richard Feiner and Co., Inc. v. Turner Enter. Co.*, 2004 WL 2710054, *1 (S.D. N.Y. Nov. 23, 2004) ("[W]here copyright infringements are willful, the need for deterrence and compensation often warrants the payment of attorney's fees" and "courts in this district routinely grant attorney's fees in cases of willful copyright infringement in order to deter."); *see also Arista Records*, 298 F. Supp. 2d at 1316 (attorneys' fees in copyright cases "are the rule rather than the exception and should be awarded routinely" and willfulness "provides further justification for such an award"); *Cable/Home*, 902 F.2d at 854; *Casella v. Morris*, 820 F.2d 362, 366 (11th Cir. 1987); *Broadcast Music, Inc. v. Tex Border Mgmt., Inc.* 2014 WL 1314833, *7-8 (N.D. Tex. Mar. 31, 2014)

---

[7] Notably, the jury's specific finding of willful infringement was based on a strong plethora of evidence, including, but not limited to, the Defendants' knowledge of Plaintiff's copyrights and license terms, ongoing infringement after being put on notice by Plaintiff, and even YPG's in-house counsel's admissions that absolutely no due diligence was done upon receipt of the data from Ziplocal because "it wasn't a concern." *See e.g.*, Mar. 20, 2014 Trial Transcript at 150:23-152:11; 180:21-181:1.

(awarding plaintiff fees incurred to defend against willful infringement because "owners of copyrights should be able to protect their work"); *Curtis v. Illumination Arts, Inc.*, 2013 WL 6173799, *20 (W.D. Wash. Nov. 21, 2013) (willful infringement is "an important factor favoring an award of those fees"); *Jacobs v. Memphis Convention & Visitors Bureau*, 2012 WL 4468500, *10-11 (W.D. Tenn. Sept. 7, 2012) ("the jury's finding of willfulness is a key factor in recommending that fees be awarded"). Given the jury's specific finding of willful infringement against both Defendants, Plaintiff is entitled to its legal fees.

Plaintiff's six-figure damage award was far from *de minimis* as YPG asserts. However, in a case like this with willful infringers and fees that exceed the award, it becomes all the more important to award Plaintiff its fees not only to deter infringement, but to advance compensation considerations. *See Assessment Tech. v. WIREdata, Inc.*, 361 F.3d 434, 436-37 (7th Cir. 2004) (stating "the smaller the damages, provided there is a real, and especially willful, infringement, the stronger the case for an award of attorneys' fees"); *Gonzales v. Transfer Tech., Inc.*, 301 F.3d 608, 609-10 (7th Cir. 2002) (stating "willful infringements involving small amounts of money cannot be adequately deterred . . . without an award of attorneys' fees"). Indeed the Seventh Circuit has even stated that in a case such as this, the Plaintiff should have a "presumptive entitlement" to fees. *Id.* at 437. In this case, given the amount of fees incurred in a complex two-year case, and the fact that Plaintiff is a one-man company, Plaintiff should undoubtedly be awarded its fees.

## III. CONCLUSION.

YPG, as a willful infringer, is unquestionably not the prevailing party in this action. Its motives for its improper motion, though, are quite clear—to take a preemptive opportunity to smear Plaintiff and its counsel in the hopes of tainting the Court's perception of Plaintiff and

influencing the Court's decision on whether to award Plaintiff its fees and/or lower the amount awarded to Plaintiff. To this end, YPG asserts that its fees in this case are estimated to be $950,000.00. Of course, YPG knew that it would most likely never have to support that number when it gratuitously threw it out to the Court since it is clearly not the prevailing party. Notably, though, Ziplocal represented to the Court in the Joint Pretrial Statement that YPG had demanded that Ziplocal reimburse it for approximately $1,500,000.00 in attorney's fees alone pursuant to an indemnification agreement between the two Defendants. *See* Joint Pretrial Statement (Dkt. 327) at 16-17. This was a month and a half prior to trial even starting, and given the amount of work for all parties since then, YPG's fees have undoubtedly climbed.

YPG's inappropriate tactics should not be condoned by this Court. Indeed, YPG's motion is a perfect example of what Plaintiff has had to endure in its long fight to protect its copyrights and its business, a good indicator of why this case has been so contentious and so expensive. With a willful infringement verdict, Plaintiff should be properly compensated for its fight. YPG's motion should be denied, and the Court should award Plaintiff its attorneys' fees and costs.

Dated: June 9, 2014.

Respectfully submitted,

/s/ Mindi M. Richter
J. Todd Timmerman, Esquire
Florida Bar No. 0956058
ttimmerman@slk-law.com
Mindi M. Richter, Esquire
Florida Bar No. 0044827
mrichter@slk-law.com
C. Philip Campbell, Jr., Esquire
Florida Bar No. 0160973
pcampbell@slk-law.com
Jeffrey B. Fabian, Esquire
Florida Bar No. 0085868
jfabian@slk-law.com
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Boulevard, Suite 2800
Tampa, Florida 33602
Telephone No.: (813) 229-7600
Facsimile No.: (813) 229-1660

Attorneys for Plaintiff, Yellow Pages Photos, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 9, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic filing to all counsel of record.

/s/ Mindi M. Richter
Attorney