UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YELLOW PAGES PHOTOS, INC.,

    Plaintiff,

v.                                                                                  CASE NO. 8:12-cv-755-T-26-EAJ

ZIPLOCAL, LP, and YELLOW PAGES
GROUP, LLC,

    Defendants.
                                           /

## O R D E R

**BEFORE THE COURT** is (1) the remanded Memorandum of Law and Evidence in Support of Motion for Attorneys' Fees and Nontaxable Costs Against Ziplocal, LP (Ziplocal) with attachments filed by Yellow Pages Photos, Inc. (YPPI) (Dkts. 518 & 519), Ziplocal's Revised Response with Attachments (Dkt. 532), the Bill of Costs (Dkt. 446), the Objections filed by Yellow Pages Group, LLC (YPG) (Dkt. 457), Ziplocal's Objections (Dkt. 462), Ziplocal's Supplemental Response in opposition (Dkt. 553), and YPPI's Amended Supplemental Response in support (Dkt. 555); and (2) Appellant YPPI's Motion for Attorneys' Fees and Nontaxable Costs (Dkt. 546), Appellee Ziplocal's Objections (Dkt. 547), and the Reply (Dkt. 548).[1] After careful consideration of the

---

[1] See docket 545 (Eleventh Circuit Order dated April 17, 2017, granting Appellant entitlement to appellate attorneys' fees and nontaxable costs in appeal number

submissions and argument of the parties, and the entire file, the Court concludes that both appellate and trial attorneys' fees and nontaxable costs are awarded in the amounts set forth in this order.

**DISTRICT COURT ATTORNEYS' FEES AND NONTAXABLE COSTS**

On remand, this Court must "count hours expended in pursuit of YPPI's copyright claims against Ziplocal in its initial lodestar calculation."[2] After recalculating the lodestar, this Court may "alter the lodestar to reflect attorney success or the lack thereof," but that fee must be reasonable.[3] Awarding the full amount of attorneys' fees and costs sought, as urged by Plaintiff, does not take into consideration the Eleventh Circuit's ruling that "it is appropriate" to adjust the lodestar to reflect the results obtained and that "a reduction in costs can be justified, as least in part, on the grounds of minimal success."[4]

*Attorneys' Fees – Lodestar*

YPPI seeks $1,422,661.75 in attorneys' fees at the district court level, which includes the hours spent on both the contract and the copyright claims.  YPPI contends

---

16-11868-CC) and docket 549 (Eleventh Circuit Mandate issued April 26, 2017, on reversal and remand of order awarding attorneys' fees and nontaxable costs).

[2]  See docket 544, page 7; Yellow Pages Photos, Inc. v. Ziplocal, LP, 846 F.3d 1159, 1163 (11th Cir. 2017).

[3]  Yellow Pages Photos, 846 F.3d at 1164-65.

[4]  Yellow Pages Photos, 846 F.3d at 1164, 1166.

the number reflects a self-imposed reduction in some of the time spent on the copyright claims.[5]  The lodestar is reached by multiplying a reasonable hourly rate by the number of hours reasonably expended.  Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); Norman v. Housing Auth. of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing Hensley).  The reasonable hourly rate has been decided and affirmed.  As for the reasonable number of hours spent, any hours that are "excessive, redundant or otherwise unnecessary" should be excluded.  Norman, 836 F.2d at 1301 (quoting Hensley, 461 U.S. at 434, 103 S.Ct. at 1939-40).

This Court still finds that the number of hours spent is excessively high, based on the block billing practices and the contentiousness of the litigation, primarily on the part of Plaintiff's counsel.  The Court so finds even in view of YPPI's reductions of time spent litigating personal jurisdiction, briefing the definition of a "work" for copyright purposes, and preparing a motion for sanctions at the close of discovery.[6]  The unreasonable hours expended encompass more than the hours already written off for the claims, both breach of contract and copyright infringement.  The cumulative effect of impeding resolution of issues between counsel, refusing to compromise on insignificant matters, and lacking organization in formulating the theory of the case, only served to

---

[5] See docket 555, page 9 ("Given that the Eleventh Circuit held that time spent litigating the copyright claims is compensable, and [YPPI] nonetheless removed a portion of this time from its fee request, no further reduction is warranted to account for the copyright claims or any alleged partial success on these claims.").

[6] Yellow Pages Photos, Inc., 846 F.3d at 1162 n.2.

disrupt the natural flow and increase hours. It is difficult to precisely calculate the additional hours, given this conduct that permeated the case.

Before detailing the history of the stonewalling and general contentious conduct of the case, the Court will address the contract between the parties. Even though YPPI should not lose the benefit of its bargain to recover "its attorneys' fees and costs" pursuant to the parties' contract, such benefit should not extend to hours wholly unreasonably incurred. Granted, the contract language does not limit the recovery of fees to a reasonable amount; yet, neither does it condone excessive discovery and obstructive tactics with little regard to cooperation as well as increased time attributable to a total change in Plaintiff's core theory of copyright "works" in the last amended complaint. The contract is not a license to engage in otherwise unacceptable practices. Civility among lawyers working on opposite sides of a case used to be one touchstone of the practice of law. Very early on in this protracted litigation, this Court reminded the attorneys of the obligation of civility, which is embodied in Local Rule 2.04(h) of the Middle District of Florida.[7] In addition to the local rule, the Middle District's Discovery

---

[7] See docket 166, pages 40-41 (transcript excerpt from hearing on May 20, 2013, regarding motions to compel, after issue of personal jurisdiction had been resolved):
> There's a mountain of paperwork. . . . I'm going to deny your [Plaintiff's] motions, . . . except with regard to the third-party contracts that Ziplocal has. I want them produced within 15 days . . . with the observation that . . . all parties have a continuing obligation to comply with discovery and supplement discovery. . . . I hope I don't have to remind you of this, but the requirement under Local Rule 3.01(g) that you

Handbook provides that "[d]iscovery in this district should be practiced with a spirit of cooperation and civility." Middle District Discovery: A Handbook on Civil Discovery Practice (2015) at I.A.1. The Court's warning was ignored.

It is in this context of lack of civility in which the issue of reasonable hours expended arises. The personal jurisdiction issues concerning the dismissal of Yellow Media, Inc., for which counsel for YPPI excluded its time, reached conclusion on November 16, 2012.[8] The Case Management Report was filed December 17, 2012, and a preliminary pretrial was held on January 3, 2013.[9] In April 2013, a flurry of motions to compel and for other discovery relief were filed with voluminous declarations, briefed, and heard on May 20, 2013.[10] One such motion filed in April 2013 requested a first extension of time for Ziplocal to respond to a third set of interrogatories, which was opposed by Plaintiff's counsel.[11] Such refusal to agree serves no useful purpose and borders on belligerence.

---

> personally confer before filing any type of motion to compel and, . . . *local rule . . . 2.04(h) which reads that attorneys and litigants should conduct themselves with civility and in a spirit of cooperation in order to reduce unnecessary cost and delay*.

(Emphasis added).

[8] See docket 114.

[9] See dockets 118 and 124.

[10] See dockets 135, 139, 144, 156, 157, 158, 159, and 160.

[11] See docket 142.

At one point in July 2013, long after personal jurisdiction had been resolved, Plaintiff's counsel notified Ziplocal's counsel that Ziplocal's "unopposed motion" to take a deposition in Quebec, was in fact opposed, thereby forcing Ziplocal to file a motion for clarification regarding whether the motion was opposed.[12] These motions were followed by more motions to compel and for other relief with numerous attachments.[13] In October 2013, Plaintiff filed a motion for sanctions at the close of business on a Friday afternoon before mediation on Monday, which counsel did not include in the amount of fees requested; nevertheless, this motion was not the first motion for sanctions filed.[14] The motion for sanctions was denied, after a two-hour hearing at which Plaintiff's counsel admitted they did not confer with opposing counsel before filing the motion.[15]

This case is a prime example of Plaintiff's counsel choosing either to engage in unnecessary tactics or refusing to dismiss personal vendettas with opposing counsel or

---

[12] See dockets 178, 179, 180, 181, 182, and 183.

[13] See dockets 173, 174, 186, 187, 195, 200, 219, 221, and 242.

[14] See dockets 242 (motion for finding privilege waiver), 243 (motion for sanctions), and 348 (transcript), page 46 ("[Mr. Scott:] We don't hear one word out of the Plaintiff, you only produced 3,450, you're still missing 6,000 or 7,000. Where are they? We don't hear that. We don't hear that in the spring, we don't hear that in the summer. We don't hear that until the night before the mediation, this motion for sanctions is dropped in our lap."), and 186 (renewed motion to compel and for sanctions).

[15] See docket 243 (motion for sanctions), 276 (minute entry on hearing held November 13, 2013), 297 (order denying sanctions), and 348 (transcript of hearing held November 13, 2013), pages 46-47 ("[Court:] Did all three of you get together and talk about . . .the motion for sanctions? [Mr. Scott:] No. [Mr. Wolfsohn:] Absolutely not.").

both.[16] Obstructing the rhythm of a case by throwing up roadblocks of schedules too busy to calendar depositions, just for the sake of being disagreeable and obstinate, particularly in view of the multiple attorneys working on the case, does not bode well in finding the number of hours incurred was reasonable or acceptable in any sense of the word.[17] It is

---

[16] It is noted that many of the cases use the term "contentious litigation" or "complex litigation" to justify the many docket entries and the grand size of the docket in shear number of pages and then to further bolster a large award of attorneys' fees. See, e.g., Tampa Bay Water v. HDR Engineering, Inc., No. 8:08-cv-2446-T-27TBM, 2012 WL 5387830, at *2 (M.D. Fla. Nov. 2, 2012) (awarding almost $10 million in fees and 678 separate docket entries). Indeed Plaintiff relies on Tampa Bay Water in its memorandum to support the amount of fees and costs. This case, unlike Tampa Bay Water, involves bickering and combative behavior in the interest of conflict alone.

[17] The inability of the attorneys on this case to schedule depositions is just one example of the absence of civility in this case, and it happened numerous times despite warnings. Three instances evidencing the inability of counsel to effectively move the case forward for the benefit of the clients include: (1) YPG's counsel's admission at the hearing in August 2013 that the attempts between Plaintiff and YPG, not Ziplocal, to reach resolution of issues at several "meet and confers" were fruitless; (2) the cross-motions to extend the completion of discovery for the inability to schedule numerous depositions held in September 2013; and (3) the failure of Plaintiff's counsel to confer on the 26-page motion for sanctions with 318 pages of attachments filed just prior to the dispositive motion deadline. See docket 213, pages 20-21, 26 (transcript excerpt of hearing on August 22, 2013):

> [Mr. Wolfsohn:] The Court decided there wasn't jurisdiction over Yellow Media, Inc. As to all those other entities, they [Plaintiff] haven't even brought a claim against them, yet they are asking the one entity that's in this case – Yellow Pages Group, LLC – to designate somebody knowledgeable about a whole bunch of topics with respect to all these other parties and all their employees and all of their attorneys. We pointed that out in the phone call; and they said, okay, yeah, we agree. So we wrote a letter saying, "Okay, you've narrowed that definition." And the response was, "No, we are not going to agree to narrow any definition." So I apologize on behalf of both counsel, . . . I'm sorry we had to bring this motion. I'm

> sorry that the whole meet-and-confer process didn't work and, in fact, took up a huge amount of time; but I really don't see that I have any other choice – or had any other choice other than to file this motion. . . . So in tab E, Mr. Timmerman says, "We are not agreeing to rewrite or otherwise limit the deposition topics." This is after the meet and confer. "They are clear on their face." In tab F, it says, "We are not going to negotiate the language of the notice." And then he repeatedly said that he expected to have fully prepared 30(b)(6) witnesses on the full scope of all the topics. *So the two meet and confers ended up that we could not agree on any compromises of the language*.

(Emphasis added.); docket 228, pages 9-18 (transcript excerpt from hearing on September 11, 2013):

> [Mr. Wolfsohn:] because they've [Plaintiff] made new allegations about new photos. We all– just last week we received new – thousand of pages of documents from them, last week, from the plaintiff, with new allegations of infringement. And when we investigated, we realized there was somebody with a very modest amount of information, and we added him to the initial disclosures. It's one person, it's not five. It's not true to say that it's five new –
>
> [Court:] Listen. Hold on. . . . I'm tired of all this fighting and all this bickering. You're probably bleeding your clients dry with all this excess work because nobody can get along in this case, and I frankly have had it. Here's what we're going to do – if I have to have another discovery hearing in this case, I'm going to start sanctioning lawyers who are not acting in good faith. . . . Enough is enough. Now, everybody had better get together and come to terms with regard to scheduling the depositions that need to be taken on a date convenient to everybody. . . . What is — is this fourth or fifth time we've been here on these discovery disputes? How many times does it take? Has it been? . . . *Don't let me bring all of you in here tomorrow with your calendars and have me set the deposition dates which will – which will be cast in stone.* You fine lawyers get together within the next five business days and you come to an agreement, or I'll do it for you.

-8-

unacceptable to spend an inordinate amount of time on pleadings, and contemplations of amending pleadings to add parties and claims just prior to the already extended close of pleadings for joinders and amendments, on never-ending discovery coupled with a stark lack of cooperation, and on petty scheduling disputes, which were unproductive to the case and inflated the fees.[18] A third amended complaint was filed in October 2013.[19] Plaintiff raised theories in the third amended complaint for the first time in the litigation, which caused unrealistic expectations for the recovery.[20] Such new theories were not

---

(Emphasis added); and docket 297 (Order denying Plaintiff's motion for sanctions "because it is uncontradicted that Plaintiff's counsel failed to comply with the conferral requirements of Local Rule 3.01(g) before filing the motion."). The purpose of Local Rule 3.01(g) "is to require the parties to communicate and resolve certain types of disputes without court intervention." Desai v. Tire Kingdom, Inc., 944 F.Supp. 876, 878 (M.D. Fla. 1996).

[18] In denying cross-motions for sanctions, a United States magistrate judge noted that "respective delays, obstructionist conduct, lack of cooperation, lack of civility, and outright disdain for each other have unreasonably multiplied the scope and cost of these proceedings to the detriment of [the] clients." Building Materials Corp. of Am. v. Henkel Corp., No. 6:15-cv-548-Orl-22GJK, 2016 WL 7732555, at *2 (M.D. Fla. Jun. 23, 2016).

[19] See docket 248.

[20] See docket 407 (order entered mid-trial on March 23, 2014, regarding what constitutes a single work and how many possible works, 187, were at issue) ("[I]t was not until the Plaintiff filed its third amended complaint did it ever take the position that each photograph constituted a single work, a significant change in its legal theory as to what constituted a work which was wholly unrelated to the discovery of additional facts which the Plaintiff represented was the reason to amend its complaint."). The Court commented on this sudden change at trial:
> Mr. Wolfsohn, I have to commend you about pointing out to me how they change their theory at the 11th hour. I read the first three complaints. And it's clear from your allegations that the Works were the heading. And then all of a sudden,

-9-

revealed in the motion to amend the complaint. As noted in this Court's prior order on attorneys' fees, the barrage of contested motions and depositions did not end with trial.[21] The proceedings were unnecessarily multiplied due to either the obstructionist nature of Plaintiff's counsel or their inability to work with opposing counsel.

Given the additional time incurred, as noted from the Court's firsthand recollection and the file, apart from the time not included in the Plaintiff's self-imposed reductions, the Court further finds that the billing entries reflect work performed by multiple attorneys and paralegals, which was unnecessary. Where the billing records are voluminous, the court may employ an across-the-board adjustment rather than an hour-by-hour review. See Alhassid v. Bank of Am., N.A., 2017 WL 2179118, at *2 (11th Cir. May 16, 2017) (unpublished order); Hepsen v. J.C. Christensen & Assocs., Inc., 394 F. App'x, 597, 600 (11th Cir. 2010) (unpublished order); Bivens v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008); Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). This Court found in its prior order that YPPI engaged in block billing.[22]

---

> you come back and say, oh, we need to amend based on certain things we learned in discovery, and then you change the focus. Now it's the photographic images, not the headings. And you should have known from the very get-go what your theory was with regard to headings. Now you want to change in midstream.

See docket 427, pages 9-10.

[21] See docket 533, page 6 n.10.

[22] That ruling was noted, but not discussed, in the order of remand. Yellow Pages Photos, Inc., 846 F.3d at 1162 ("The District Court found that some reduction in YPPI's

Ziplocal specifically argued that many of the time entries consist of block billing by listing the day's tasks as a single entry with no designation of particular tasks to a specific amount of time and by showing redundancy with regard to the review of discovery materials.[23] Ziplocal provided the highlighted entries on the summary of bills submitted by YPPI.[24] Some of the time entries refer to meetings with other attorneys in the firm that do not coincide on the same day. Some of the entries include a block of three to four tasks, such as preparing and editing various motions, telephone conversations with different individuals, and review of discovery or preparation for depositions. Others include responding to and writing emails, drafting papers and conducting research. At least five attorneys and paralegals worked on this file. The Court finds some unnecessary overlap in drafting and discovery review or preparation, even in this copyright case.

An argument that was not raised in the first briefing on attorneys' fees and nontaxable costs is whether the contract of representation between YPPI and its attorneys limits recovery. There is no ceiling, however, on a court-ordered award of attorneys' fees, depending on the language of the fee contract. Cf. Fielder v. Shinseki, 8:07-cv-

---

request for attorney's fees was appropriate based on the block billing practices engaged in by YPPI , . . .").

[23]    See docket 532, pages 3-6. The Court ordered supplemental responses, but those responses were not intended to replace the original arguments on the issue of attorneys' fees and costs.

[24]    See docket 532, pages 35-72, and docket 518-1.

1524-T-TBM, 2010 WL 1708621, at *3 n.8 (M.D. Fla. Apr. 26, 2010) (citing Blanchard v. Bergeron, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989), holding that attorneys' fee is not limited to contingent fee arrangement in civil rights cases). The fee agreement here provides for compensation on a contingent fee basis – "40% of any recovery up to $1million" with an "additional 5% of any recovery after institution of any appellate proceeding is filed . . ."[25] The contingent fee arrangement contemplates a court-ordered higher award based on a statute: "In the event attorneys' fees are recovered pursuant to any state or federal statute, we will be entitled to the greater of either the statutory fee or the contingent fee described above." Attorneys' fees in copyright cases are discretionary, however, and the Court will award fees pursuant to the contract, as those fees would necessarily be higher than any discretionary statutory award this Court would enter and in keeping with YPPI's receiving the benefit of its bargain pursuant to contract between YPPI and Ziplocal.[26] The issue before this Court now, however, focuses on the award that Ziplocal is obligated to pay YPPI's counsel, not what fees are due YPPI's counsel based on its agreement with the client.

---

[25] See docket 553-2.

[26] See 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs . . .[and] award a reasonable attorney's fee to the prevailing party as part of costs."); Fogerty v, Fantasy, Inc., 510 U.S. 517, 533, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994) ("The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion.").

In redetermining the lodestar to include time spent on the copyright claim as well as the breach of contract, the Court concludes that the lodestar should be $1,280,395.57, which is a 10% reduction representative of the excessive, redundant and otherwise unnecessary number of hours expended.[27]

---

[27] Cf. Dial HD, Inc. v. Clearone Commc'ns, Inc., 536 F.App'x 927, 931 (11th Cir. 2013) (unpublished) (affirming 25% across-the-board reduction of fees based on block billing); St. Fleur v. City of Fort Lauderdale, 149 F.App'x 849, 853 (11th Cir. 2005) (*per curiam*) (unpublished) (approving across-the board reduction of thirty percent where district court found duplicated efforts, excessive attorney meetings, and charges for administrative tasks); Ruderman v. Wash. Nat'l Ins. Corp., 465 F.App'x 880, (11th Cir. 2012) (unpublished order) (affirming reduction of hours by twenty percent); Intenze Prod., Inc. v. Dead Man Supplies Corp., No. 8:15-cv-1074-T-36AAS, 2017 WL 759036, at *5-6 (M.D. Fla. Feb. 9, 2017) (reducing attorneys' fees by twenty percent for block billing and excessive time), adopted in 2017 WL 749496 (M.D. Fla. Feb. 27, 2017); Branch Banking & Trust Co. v. Crystal Centre, LLC, No. 8:15-cv-1462-T-30EAJ, 2016 WL 4733278, at * (M.D. Fla. Sept. 12, 2016) (reducing by twenty percent total hours billed); Atlantic Marine Fla., LLC v. Evanston Ins. Co., 2015 WL 12839134, at *5 (M.D. Fla. Nov. 24, 2015) (reducing attorneys' fees for excessive hours by twenty percent across-the-board, and reducing lodestar twenty percent based on statutory factors), adopted in 2016 WL 3407825 (M.D. Fla. Jun. 16, 2016); Sequoia Fin. Solutions, Inc. v. Warren, No. 8:12-cv-2458-T-25EAJ, 2015 WL 13022722, at *3-4 (M.D. Fla. Jan. 28, 2015) (reducing fifteen percent of total hours billed for block billing); Hiscox Dedicated Corporate Member, Ltd. v. Matrix Group Ltd., Inc., No. 8:09-cv-2465-T-33AEP, 2012 WL 2226441, at *5 (M.D. Fla. Jun. 15, 2012) (reducing across-the-board attorneys' fees by twenty percent for block and imprecise billing); Four Green Fields Holdings, LLC v. Four Green Fields, No. 8:10-cv-2800-T-27EAJ, 2011 WL 5360143 at *4 (M.D. Fla. Oct. 17, 2011) (reducing hours billed by ten percent due to block billing), adopted in 2011 WL 5360123 (M.D. Fla. Nov. 2, 2011); BJCC, LLC v. LeFevre, No. 8:09-cv-551-T-17EAJ, 2011 WL 5597305, at *7 (M.D. Fla. Oct. 11, 2011) (awarding ten percent across-the-board reduction for block billing), adopted in 2011 WL 5597349 (M.D. Fla. Nov. 17, 2011); Baby Buddies, Inc. v. Toys R Us, Inc., No. 8:03-cv-1377-T-17MAP, 2011 WL 4382450, at *10 (M.D. Fla. Aug. 9, 2011) (reducing attorneys' fees across-the-board by twenty percent), adopted in 2011 WL 4382285 (M.D. Fla. Sept. 20, 2011); Nipper v. Lakeland Hotel Investors, Ltd., No. 8:10-cv-498-T-33EAJ, 2010 WL 4941718 (M.D. Fla. Nov. 30, 2010) (finding overlap between attorneys and legal research excessive and

### *Attorneys' Fees – Adjustment to Lodestar*

Having determined the lodestar, this Court may now consider altering "the lodestar to reflect attorney success or lack thereof." Yellow Pages Photos, Inc., 846 F.3d 1159, 1164 (11th Cir. 2017) (citing Norman, 836 F.2d at 1302).[28] When only a "partial or limited success" is achieved, the lodestar "may be an excessive amount" because "the most critical factor is the degree of success obtained." United States v. Everglades College, Inc., 855 F.3d 1279, 1292 (11th Cir. 2017) (quoting Hensley, 461 U.S. at 436). To overcome the presumption that the lodestar is a reasonable sum, consideration of all distinct measures of success, in addition to the amount of damages, is required to evaluate whether success was limited. Alhassid, 2017 WL 2179118, at *3 (citing Villano v. City of Boynton Beach, 254 F.3d 1302, 1308 (11th Cir. 2001)).

There is no question that the success in terms of pure monetary amount was drastically less than and grossly disproportionate to the damages sought. In his report, YPPI's expert Steve Osher opined in October 2013, just before mediation, that statutory

---

unnecessary in FLSA case).

[28] The court may adjust the lodestar to account for other considerations that have not yet figured in its computation, the "most important" being the success of the litigation. Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000) (citing Hensley, 461 U.S. at 434, 103 S.Ct. at 1940).

damages amounted to between $8 million and $312 million against Ziplocal.[29] Mr. Osher found that actual damages should range between $1,041,100.00 and $2,030,145.00.[30] This evidence was not placed before the jury, however, because the number of "works" possibly infringed changed from around 10,000 based on images to 187 based on headings, based on the Plaintiff's significant change in its legal theory during the course of this action.[31] The argument made to the jury at closing was that "178 collections of 50 to 100" registered and protected photographs were infringed.[32] Plaintiff's counsel argued that there were 134 works with respect to actual damages.[33] Although no testimony was elicited regarding the amount of statutory damages, Plaintiff's counsel argued in closing that the range of statutory damages to be considered was between "$750 to $30,000 per infringed collection, and you can even go up to $150,000

---

[29] See docket 553-1, Exhibit C, page 5 ("If the Court decides that a work consists of an image, the statutory damages for unintentional infringement range from $7,808,250 - $312,330,000." At trial, Mr. Scott argued: "[Mr. Timmerman] mentioned something about Mr. Osher's report being done before all of this got decided. Mr. Oscher did a supplemental report in, I believe it was, late October long after the Third Amended Complaint. And Mr. Osher is talking solely about single photographs." See docket 427, page 11.

[30] See docket 553-1, Exhibit C, page 6.

[31] See docket 407 (order dated March 23, 2014).

[32] See docket 429, page 26 (transcript – closing argument).

[33] See docket 429, page 33.

per collection if you find that infringement was willful."[34] With respect to actual damages, the expert testified that the economic damages amounted to a range of "approximately 1 million to $2 million."[35] The jury awarded YPPI as against Defendant Ziplocal a total of $100,001.00 in actual damages, which is broken down to the nominal $1 attributed to direct copyright infringement of 123 works, and $100,000 to contributory infringement.[36]

The damages sought and those awarded evidence a vast discrepancy with a disproportionately low recovery that can neither be overlooked nor rubber-stamped with approval. There is no public policy that would promote giving the Plaintiff a windfall in this case, or, alternatively, punishing Ziplocal for not foreseeing the magnitude of fees that could be visited upon them in what was in Plaintiff's words "a pretty simple case."[37]

---

[34] See docket 429, page 34. Mr. Osher's report states that "[a]s previously noted, for unintentional infringement, the lowest statutory rate per work is $750 with the highest being $30,000. Ziplocal possessed ten thousand four hundred eleven (10,411) images. Statutory damages range from $7,808,250 to $312,330,000." See docket 289-1 (report), page 8.

[35] See docket 427, pages 40-44. Mr. Osher's report stated that "[b]ased on a cost per image of $100 to $195, the actual damages for 10,411 images would be $1,041,110 to $2,030,145." See docket 289-1, page 8.

[36] YPPI recovered $123,000.00 in statutory damages from YPG. See dockets 422, 441, and 442. YPPI may receive a total of $223,001.00, with $100,001.00 from Ziplocal and $123,000.00 from YPG. See docket 443 (order explaining damages), 444 (judgment against Ziplocal), and 445 (judgment against YPG).

[37] See docket 429, pages 15-16 ("[Mr. Timmerman:] But really I think it was a pretty simple case when you boil it all down. . . . It was about Yellow Pages Photo's contract with Ziplocal, this EULA and the Site License Purchase Agreement we've heard

Accordingly, the Court finds that the relative lack of success in this case warrants a downward adjustment of the lodestar of 10% for a total of $1,152,356.01.

*Nontaxable Costs*

YPPI now seeks $296,130.72 for the nontaxable costs incurred at the trial level, which includes the additional $6,118.76 and $20,527 attributable to D4-LLC and e-Hounds, respectively. The items of nontaxable costs are set forth in the bill of costs, motion seeking fees and costs, and the supplemental response.[38] As expressed above, YPPI achieved only minimal success in this lengthy litigation, and minimal success is a ground on which costs may be reduced. Yellow Pages Photos, Inc., 846 F.3d at 1166. Accordingly, the Court will award nontaxable costs of $266,517.65, which is 10% less than the amount sought.[39]

### APPELLATE ATTORNEYS' FEES AND NONTAXABLE COSTS

YPPI seeks $57,419.50 in attorneys' fees and nontaxable costs of $774.60 for prosecuting the appeal of the attorneys' fee and nontaxable costs award on remand. The

---

so much about. . . . It's also about accountability because today we're talking to you about holding these people accountable for what they've done, for violating that agreement.").

[38] See dockets 446, 518-1, 518-2, and 555, page 17.

[39] See Hepsen, 394 F.App'x at 601 (11th Cir. 2010) (affirming ten percent reduction in lodestar in light of results obtained); Holland v. Gee, No. 8:08-cv-2458-T-33AEP, 2012 WL 5845010, at *5-6 (M.D. Fla. Oct. 12, 2012) (reducing lodestar by ten percent for disproportionate success in seeking $142,000 fees for $90,000 damages award), adopted in 2012 WL 5845344 (M.D. Fla. Nov. 19, 2012); Sklar v. Clough, 2008 WL 5381961, at *4 (N.D. Ga. Dec. 23, 2008) (reducing lodestar thirty-five percent for partial success on four causes of action).

Court finds the hourly rates are reasonable but not the number of hours expended on the appeal. The time of 136 hours seems excessive and unnecessary for researching and briefing the issue of attorneys' fees and nontaxable costs. Three of the four attorneys for YPPI were intimately familiar with the facts. The Court does not fault the addition of the fourth lawyer as he is an appellate expert. Nevertheless, the attorneys appear to have duplicated each other's work in the sense that the phrase "work on appeal" does not shed light on the precise tasks so that they are capable of being examined. For example, working on the appeal, which entry occurs at least eight times, could include anything from rereading the record to brain-storming, and from drafting to making final edits. In any event, this appeal should have taken fewer hours to prepare, particularly when the attorneys had already filed an appeal from the trial on damages as to YPG, which resulted in a 62-page affirmance.[40] Even the entry such as "work on brief," which occurs at least seven times, does not adequately specify which task the attorney is performing so as to avoid double billing. It should also be noted that no oral argument was held in the appeal of the fees and costs, so none of the time was spent preparing for oral argument or traveling. Having reviewed the time sheets, the Court finds it necessary to reduce the fees by ten hours at $475/hour, and five hours at $375/hour, for a total amount of $50,794,50. The nontaxable costs of $774.60 are reasonable.

    It is therefore **ORDERED AND ADJUDGED** as follows:

---

[40] See docket 506 (order of affirmance).

(1) On remand, attorneys' fees and nontaxable costs are granted in favor of Plaintiff YPPI and against Defendant Ziplocal in the amount of $1,152,356.01 for attorneys' fees and $266,517.65 in nontaxable costs.

(2) The Clerk is directed to enter a final judgment for attorneys' fees and nontaxable costs in accordance with paragraph (1) of this order.

(3) Appellant Yellow Pages Photos, Inc.'s Motion for Attorneys' Fees and Nontaxable Costs (Dkt. 546), which was transferred from the Eleventh Circuit Court of Appeals to this Court, is **GRANTED.**

(4) Appellate attorneys' fees and nontaxable costs are granted in favor of YPPI and against Ziplocal in the amount of $50,794,50 for attorneys' fees and $774.60 for nontaxable costs.

(5) The Clerk is directed to enter a final judgment for appellate attorneys' fees and nontaxable costs in accordance with paragraph (4) of this order.

**DONE AND ORDERED** at Tampa, Florida, on August 8, 2017.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record